# EXHIBIT 60

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), ANY STATE SECURITIES LAWS, OR THE SECURITIES LAWS OF ANY OTHER JURISDICTION. NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT. THE HOLDER OF THIS SECURITY, BY ITS ACCEPTANCE HEREOF (1) REPRESENTS THAT IT IS A QUALIFIED INSTITUTIONAL BUYER□□ (AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT ("RULE 144A")) THAT IS ACQUIRING THE NOTES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF ANOTHER SUCH QUALIFIED INSTITUTIONAL BUYER, AND (2) AGREES TO OFFER, SELL OR OTHERWISE TRANSFER SUCH SECURITY, PRIOR TO THE EXPIRATION OF THE APPLICABLE HOLDING PERIOD WITH RESPECT TO RESTRICTED SECURITIES SET FORTH IN RULE 144 UNDER THE SECURITIES ACT ONLY (A) TO THE ISSUER OR ANY SUBSIDIARY THEREOF, (B) FOR SO LONG AS THE SECURITIES ARE ELIGIBLE FOR RESALE PURSUANT TO RULE 144A, TO A PERSON IT REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHICH NOTICE IS GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, OR (C) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, IN EACH CASE, SUBJECT TO THE ISSUER'S AND THE TRUSTEE'S OR REGISTRAR'S, AS APPLICABLE, RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSE (C), TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATIONS AND/OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM, AND IN EACH OF THE FOREGOING CASES, A CERTIFICATE OF TRANSFER IN THE FORM APPEARING ON THE OTHER SIDE OF THIS SECURITY IS COMPLETED AND DELIVERED BY THE TRANSFEROR TO THE TRUSTEE OR REGISTRAR.

THE ISSUER HAS THE RIGHT, UNDER THE INDENTURE, TO COMPEL ANY BENEFICIAL OWNER OF AN INTEREST IN A SECURITY (OR ANY INTEREST THEREIN) TO PROVIDE PROOF THAT IT IS A QUALIFIED INSTITUTIONAL BUYER AT ANY TIME.  IF THE ISSUER AND/OR THE TRUSTEE ARE NOT SATISFIED WITH THE PROOF PROVIDED, THE ISSUER MAY REQUIRE, BY NOTICE TO SUCH BENEFICIAL OWNER, THAT SUCH BENEFICIAL OWNER SELL ALL OF ITS RIGHTS, TITLE AND INTEREST TO SUCH NOTE (OR INTEREST THEREIN) TO A PERSON THAT IS A QUALIFIED INSTITUTIONAL BUYER AND A QUALIFIED PURCHASER, WITH SUCH SALE TO BE EFFECTED WITHIN 30 DAYS AFTER NOTICE OF SUCH SALE REQUIREMENT IS GIVEN. IF SUCH BENEFICIAL OWNER FAILS TO EFFECT THE TRANSFER REQUIRED WITHIN SUCH 30-DAY PERIOD, (X) UPON DIRECTION FROM THE ISSUER, THE TRUSTEE UNDER THE INDENTURE, ON BEHALF OF THE ISSUER AND AT THE ISSUER'S EXPENSE, SHALL CAUSE SUCH BENEFICIAL OWNER'S INTEREST IN SUCH NOTE TO BE TRANSFERRED IN A COMMERCIALLY REASONABLE SALE ARRANGED BY THE ISSUER (CONDUCTED BY THE TRUSTEE UNDER THE INDENTURE IN ACCORDANCE WITH SECTION 9-610(B) OF THE

UNIFORM COMMERCIAL CODE AS IN EFFECT IN THE STATE OF NEW YORK AS APPLIED TO SECURITIES THAT ARE SOLD ON A RECOGNIZED MARKET OR THAT MAY DECLINE SPEEDILY IN VALUE) TO A PERSON TO WHOM SUCH NOTE (OR INTEREST THEREIN) MAY BE TRANSFERRED IN ACCORDANCE WITH THE TRANSFER RESTRICTIONS SET FORTH IN THE INDENTURE AND (Y) PENDING SUCH TRANSFER, NO FURTHER PAYMENTS WILL BE MADE IN RESPECT OF SUCH NOTE HELD BY SUCH BENEFICIAL OWNER.

THE INITIAL PURCHASER AND EACH SUBSEQUENT TRANSFEREE OF THIS SECURITY OR ANY BENEFICIAL INTERESTS HEREIN WILL BE DEEMED TO REPRESENT THAT IT AGREES TO COMPLY WITH THE TRANSFER RESTRICTIONS AND MINIMUM DENOMINATION TERMS SET FORTH HEREIN AND WILL NOT TRANSFER THE NOTES OR ANY BENEFICIAL INTERESTS HEREIN EXCEPT TO A TRANSFEREE WHO CAN MAKE THE SAME REPRESENTATIONS AND AGREEMENTS, INCLUDING AS TO MINIMUM DENOMINATIONS, ON BEHALF OF ITSELF AND EACH ACCOUNT FOR WHICH IT IS PURCHASING. TO THE FULLEST EXTENT PERMITTED BY LAW, ANY TRANSFER OF THE NOTES, OR BENEFICIAL INTEREST IN THE NOTES, IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE AND EFFECT AND WILL BE NULL AND VOID AB INITIO AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER.

No. 002                                                                    $19,000,000

12% Second Priority Senior Secured Notes due September 18, 2019

CUSIP No. 66706C AA9
ISIN No. 144A: US66706CAA99

Northstar *GOM Holdings Group LLC*, a Delaware limited liability company (the "Company"), promises to pay to BRE WNIC 2013 LTC Primary, or registered assigns, the principal sum of nineteen million dollars ($19,000,000) on September 18, 2019.

Interest Payment Dates: April 1 and October 1 of each year, beginning April 1, 2015.

Record Dates: March 15 and September 15 of each year.

Additional provisions of this Note are set forth on the other side of this Note.

IN WITNESS WHEREOF, the Company has caused this instrument to be duly executed.

NORTHSTAR GOM HOLDINGS GROUP LLC

By: _____
Name: Daniel Small
Title: Vice President

Dated: 3 / 3 / 18

TRUSTEE'S CERTIFICATE OF
AUTHENTICATION

U.S. BANK NATIONAL ASSOCIATION,
as Trustee, certifies that this is one of the
Notes referred to in the Indenture.

By:_____
Authorized Signatory

## NOTATION OF GUARANTEE

For value received, each Guarantor (which term includes any successor Person under the Indenture (as defined below)) agrees, subject to the provisions in the Indenture dated as of September 18, 2014 (the "*Indenture*") among Northstar GOM Holdings Group LLC, a Delaware limited liability company, the Guarantors party thereto and U.S. Bank National Association, as trustee (in such capacity, the "*Trustee*") and as collateral agent: (a) that the undersigned, jointly and severally with the other Guarantors, fully, irrevocably, absolutely, and unconditionally guarantees to each Holder of Notes and the Trustee the prompt and complete payment and performance when due, and no matter how the same shall become due, of all Guaranteed Obligations subject to any limitation set forth therein; (b) that each reference in the Indenture to a "Guarantor" shall also mean and be a reference to the undersigned; (c) that the obligations of the Guarantors to the Holders of Notes and to the Trustee pursuant to the Indenture are expressly set forth in Article 11 of the Indenture, and reference is hereby made to the Indenture for the precise terms of the Guarantee; (d) to be bound by such provisions; and (e) authorizes and directs the Trustee, on behalf of such Holder, to take such action as may be necessary or appropriate to effectuate such provisions.

NEW YORK LAW TO GOVERN. THE INTERNAL LAW OF THE STATE OF NEW YORK SHALL GOVERN AND BE USED TO CONSTRUE THIS NOTATION OF GUARANTEE.

Capitalized terms used but not defined herein have the meanings given to them in the Indenture.

NORTHSTAR OFFSHORE GROUP, LLC

By: _____
Name: S. Glynn Roberts
Title: President

12% Second Priority Senior Secured Notes due September 18, 2019

Capitalized terms used herein have the meanings assigned to them in the Indenture referred to below unless otherwise indicated.

1.      Interest

Northstar GOM Holdings Group LLC, Delaware limited liability company (the "Company"), promises to pay interest on the principal amount of this Note at the rate per annum shown above. The Company shall pay interest semiannually on October 1 and April 1 of each year, commencing April 1, 2015. Interest on the Notes shall accrue from the most recent date to which interest has been paid or duly provided for or, if no interest has been paid or duly provided for, from September 18, 2014 until the principal hereof is due. Interest shall be computed on the basis of a 360-day year of twelve 30-day months. The Company shall pay interest on overdue principal at the rate borne by the Notes, and it shall pay interest on overdue installments of interest at the same rate to the extent lawful.

2.      Method of Payment

The Company shall pay interest on the Notes (except defaulted interest) to the Persons who are registered Holders at the close of business on the September 15 or March 15 (whether or not a Business Day) next preceding the interest payment date even if Notes are canceled after the record date and on or before the interest payment date. The Holders must surrender Notes to a Paying Agent to collect principal payments. The Company shall pay principal, premium, if any, and interest in money of the United States of America that at the time of payment is legal tender for payment of public and private debts. Payments in respect of the Notes represented by a Global Note (including principal, premium, if any, and interest) shall be made by wire transfer of immediately available funds to the accounts specified by The Depository Trust Company ("DTC") or any successor depositary. The Company will make all payments in respect of a certificated Note (including principal, premium, if any, and interest), at the office of each Paying Agent, except that, at the option of the Company, payment of interest may be made by mailing a check to the registered address of each Holder thereof; provided, however, that payments on the Notes may also be made, in the case of a Holder of at least $5 million aggregate principal amount of Notes, by wire transfer to a U.S. dollar account maintained by the payee with a bank in the United States if such Holder elects payment by wire transfer by giving written notice to the Trustee or a Paying Agent to such effect designating such account no later than 30 days immediately preceding the relevant due date for payment (or such other date as the Trustee may accept in its discretion).

3.      Paying Agent and Registrar

Initially, U.S. Bank National Association (the "Trustee") will act as Paying Agent and Registrar. The Company may appoint and change any Paying Agent or Registrar without notice. The Company or any of their domestically-organized wholly owned Subsidiaries may act as Paying Agent or Registrar.

4.      Indenture

The Company issued the Notes under an Indenture dated as of September 18, 2014 (the "Indenture"), among the Company, the Guarantors and the Trustee. Terms defined in the Indenture and not defined herein have the meanings ascribed thereto in the Indenture. The Notes are subject to all terms and provisions of the Indenture, and the Holders are referred to the Indenture for a statement of such terms and provisions. To the extent any provision of this Note conflicts with the express provisions of the Indenture, the provisions of the Indenture shall govern and be controlling.

The Notes are second priority senior secured obligations of the Company. This Note is one of a duly authorized issue of Notes of the Company designated as its 12% Second Priority Senior Secured Notes due September 18, 2019. The Company shall be entitled to issue Additional Notes pursuant to Article 2 of the Indenture. The Notes and Additional Notes shall be treated as a single class of securities for all purposes under the Indenture.

5.    Optional Redemption

The Company may redeem some or all of the Notes at anytime, or from time to time. If the Company chooses to redeem any Notes, it will pay a redemption price equal to the percentage of principal amount hereof as set forth below:

| Year | Percentage |
|------|-----------|
| September 18, 2014 and thereafter | 104.000% |
| September 18, 2015 and thereafter | 103.000% |
| September 18, 2016 and thereafter | 102.000% |
| September 18, 2017 and thereafter | 100.000% |

If the Company choose to redeem any Notes, the Company will deliver a notice of redemption to Holders of Notes not less than 30 nor more than 60 days before the redemption date. If the Company is redeeming less than all of the Notes, the particular Notes to be redeemed will be selected in accordance with the applicable procedures of the Trustee and, so long as the Notes are registered to DTC or its nominee, DTC; provided, however, that no such partial redemption shall reduce the portion of the principal amount of a Note not redeemed to less than $2,000. Unless the Company default in payment of the redemption price, on and after the redemption date, interest will cease to accrue on the Notes or portions of the Notes called for redemption.

6.    Sinking Fund

The Notes are not subject to any sinking fund.

7.    Notice of Redemption

Notice of redemption will be sent electronically or mailed by first-class mail at least 30 days but not more than 60 days before the redemption date to each Holder of Notes to be redeemed at his, her or its registered address or provided otherwise in accordance with the

procedures of The Depository Trust Company. Notes in denominations larger than $2,000 may be redeemed in part but only in whole multiples of $1,000 to the extent practicable. If money sufficient to pay the redemption price of and accrued and unpaid interest on all Notes (or portions thereof) to be redeemed on the redemption date is deposited with a Paying Agent on or before the redemption date and certain other conditions are satisfied, on and after such redemption date, interest ceases to accrue on such Notes (or such portions thereof) called for redemption.

8.    Offer to Repurchase Upon a Change of Control

Upon the occurrence of a Change of Control, each Holder shall have the right, subject to certain conditions specified in the Indenture, to require the Company to repurchase all or any part of such Holder's Notes at a purchase price in cash equal to 100% of the principal amount thereof, plus accrued and unpaid interest, if any, to, but excluding, the date of repurchase (subject to the right of the Holders of record on the relevant record date to receive interest due on the relevant interest payment date), as provided in, and subject to the terms of, the Indenture.

9.    Denominations; Transfer; Exchange

The Notes are in registered form, without coupons, in denominations of $2,000 and any integral multiple of $1,000 in excess thereof. A Holder shall register the transfer of or exchange of Notes in accordance with the Indenture. Upon any registration of transfer or exchange, the Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements or transfer documents and to pay any taxes required by law or permitted by the Indenture. The Registrar need not register the transfer of or exchange any Notes selected for redemption (except, in the case of a Note to be redeemed in part, the portion of the Note not to be redeemed) or to transfer or exchange any Notes for a period of 15 days prior to the mailing of a notice of redemption of Notes to be redeemed.

10.    Persons Deemed Owners

The registered Holder of this Note shall be treated as the owner of it for all purposes.

11.    Unclaimed Money

If money for the payment of principal or interest remains unclaimed for two years, the Trustee and a Paying Agent shall pay the money back to the Company at their written request unless an abandoned property law designates another Person. After any such payment, the Holders entitled to the money must look to the Company for payment as general creditors and the Trustee and a Paying Agent shall have no further liability with respect to such monies.

12.    Discharge and Defeasance

Subject to certain conditions, the Company at any time may terminate some of or all its obligations under the Notes and the Indenture if the Company deposit with the Trustee money or Government Securities or a combination thereof for the payment of principal of, and interest on the Notes to redemption, or maturity, as the case may be.

13.    Amendment, Waiver

The Indenture and the Notes may be amended or supplemented as provided in the Indenture.

14.    Defaults and Remedies

*If an Event of Default (other than an Event of Default relating to certain events of bankruptcy and insolvency) occurs and is continuing, then and in every such case, the Trustee or the Holders of at least 67% in principal amount of the outstanding Notes may declare the entire principal amount of Notes to be due and immediately payable, by a notice in writing to the Company (and to the Trustee if given by the Holders), and upon any such declaration such principal or specified portion thereof shall become immediately due and payable. Notwithstanding the foregoing, in the case of the events of bankruptcy or insolvency, the principal of and accrued and unpaid interest on the Notes will automatically become due and payable.*

At any time after a declaration of acceleration with respect to the Notes has been made and before a judgment or decree for payment of the money due has been obtained by the Trustee, the holders of a majority in principal amount of the outstanding Notes, by written notice to the Company and the Trustee, may rescind and annul such declaration and its consequences if (i) the Company have paid or deposited with the Trustee a sum sufficient to pay all overdue installments of interest, if any, on all outstanding Notes, the principal of (and premium, if any, on) all outstanding Notes that have become due otherwise than by such declaration of acceleration and interest thereon at the rate or rates borne by or provided for in such Notes, to the extent that payment of such interest is lawful interest upon overdue installments of interest at the rate or rates borne by or provided for in such Notes, and all sums paid or advanced by the Trustee and the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, and (ii) all Events of Default with respect to the Notes, other than the nonpayment of the principal of (or premium, if any, on) or interest on such Notes that have become due solely by such declaration of acceleration, have been cured or waived. No such rescission will affect any subsequent default or impair any right consequent thereon.

15.    Trustee Dealings with the Company

Subject to certain limitations imposed by the Indenture, the Trustee under the Indenture, in its individual or any other capacity, may become the owner or pledgee of Notes and may otherwise deal with and collect obligations owed to it by the Company or their Affiliates and may otherwise deal with the Company or their Affiliates with the same rights it would have if it were not Trustee.

16.    No Personal Liability of Directors, Officers, Employees, Members and Equity Holders

No director, officer, member, partner, employee, affiliate, incorporator or holder of equity interests of the Company or any subsidiary or any of their parent companies shall have any liability for any obligations of the Company under the Notes or for any claim based on, in respect of, or by reason of such obligations or their creation. Each Holder by accepting a note

waives and releases all such liability. The waiver and release are part of the consideration for issuance of the notes.

17.    Authentication

This Note shall not be valid until an authorized signatory of the Trustee (or an authenticating agent) manually signs the certificate of authentication on the other side of this Note.

18.    Abbreviations

Customary abbreviations may be used in the name of a Holder or an assignee, such as TEN COM (=tenants in common), TEN ENT (=tenants by the entireties), JT TEN (=joint tenants with rights of survivorship and not as tenants in common), CUST (=custodian), and U/G/M/A (=Uniform Gift to Minors Act).

19.    Governing Law

**THIS SECURITY SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN SUCH STATE WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES THEREOF TO THE EXTENT THE LAW OF ANOTHER JURISDICTION WOULD BE APPLIED THEREBY.**

20.    CUSIP Numbers and ISINs

The Company have caused CUSIP numbers and ISINs to be printed on the Notes and have directed the Trustee to use CUSIP numbers and ISINs.  No representation is made as to the accuracy of such numbers either as printed on the Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

**The Company will furnish to any Holder of Notes upon written request and without charge to the Holder a copy of the Indenture which has in it the text of this Note.**

ASSIGNMENT FORM

To assign this Note, fill in the form below:

I or we assign and transfer this Note to:

_____
(Print or type assignee's name, address and zip code)

_____
(Insert assignee's soc. sec. or tax I.D. No.)

and irrevocably appoint _____ agent to transfer this Note on the books of the Company. The agent may substitute another to act for him.

Date: _____     Your Signature: _____

Sign exactly as your name appears on the other side of this Note.

Signature Guarantee:

Date: _____                    _____

Signature must be guaranteed by a          Signature of Signature Guarantee.
Signature of Signature Guarantee
participant in a recognized signature
guaranty medallion program or other
signature guarantor program reasonably
acceptable to the Trustee

CERTIFICATE TO BE DELIVERED UPON EXCHANGE OR
REGISTRATION OF TRANSFER RESTRICTED NOTES

This certificate relates to $_____ principal amount of Notes held in (check applicable space) _____ book-entry or _____ definitive form by the undersigned.

The undersigned:

☐   has requested the Trustee by written order to deliver in exchange for its beneficial interest in the Global Note held by the Depository a Note or Notes in definitive, registered form of authorized denominations and an aggregate principal amount equal to its beneficial interest in such Global Note (or the portion thereof indicated above)

☐   has requested the Trustee by written order to exchange or register the transfer of a Note or Securities

In connection with any transfer of any of the Notes evidenced by this certificate, the undersigned confirms that such Notes are being transferred:

CHECK ONE BOX BELOW

(1)   ☐   to one of the Company; or

(2)   ☐   to the Registrar for registration in the name of the Holder, without transfer; or

(3)   ☐   to a "Qualified Institutional Buyer" (as defined in Rule 144A of the Notes Act) that is acquiring the Notes for its own account or for the account of another such Qualified Institutional Buyer.

Date: _____   Your Signature: _____

Signature Guarantee:

Date: _____             _____
        Signature must be guaranteed by a          Signature of Signature Guarantee.
        Signature of Signature Guarantee
        participant in a recognized signature
        guaranty medallion program or other
        signature guarantor program reasonably
        acceptable to the Trustee

## OPTION OF HOLDER TO ELECT PURCHASE

Submit this form if you want to elect to have this Note purchased by the Company pursuant to Section 4.10 or Section 4.12 of the Indenture.

If you want to elect to have only part of this Note purchased by the Company pursuant to Section 4.10 or Section 4.12 of the Indenture, state the amount ($[_____] and any integral multiples of $[_____] in excess thereof):

$

Date: _____    Your Signature: _____

Sign exactly as your name appears on the
other side of this Note.

Signature Guarantee: _____

Signature must be guaranteed by a participant in a recognized signature guaranty medallion program or other signature guarantor program reasonably acceptable to the Trustee.

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), ANY STATE SECURITIES LAWS, OR THE SECURITIES LAWS OF ANY OTHER JURISDICTION. NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF *THE SECURITIES ACT. THE HOLDER OF THIS SECURITY, BY ITS ACCEPTANCE HEREOF* (1) REPRESENTS THAT IT IS A QUALIFIED INSTITUTIONAL BUYER□□ (AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT ("RULE 144A")) THAT IS ACQUIRING THE NOTES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF ANOTHER SUCH QUALIFIED INSTITUTIONAL BUYER, AND (2) AGREES TO OFFER, SELL OR OTHERWISE TRANSFER SUCH SECURITY, PRIOR TO THE EXPIRATION OF THE APPLICABLE HOLDING PERIOD WITH RESPECT TO RESTRICTED SECURITIES SET FORTH IN RULE 144 UNDER THE SECURITIES ACT ONLY (A) TO THE ISSUER OR ANY SUBSIDIARY THEREOF, (B) FOR SO LONG AS THE SECURITIES ARE ELIGIBLE FOR RESALE PURSUANT TO RULE 144A, TO A PERSON IT REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHICH NOTICE IS GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, OR (C) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, IN EACH CASE, *SUBJECT TO THE ISSUER'S AND THE TRUSTEE'S OR REGISTRAR'S, AS* APPLICABLE, RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSE (C), TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATIONS AND/OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM, AND IN EACH OF THE FOREGOING CASES, A CERTIFICATE OF TRANSFER IN THE FORM APPEARING ON THE OTHER SIDE OF THIS SECURITY IS COMPLETED AND DELIVERED BY THE TRANSFEROR TO THE TRUSTEE OR REGISTRAR.

THE ISSUER HAS THE RIGHT, UNDER THE INDENTURE, TO COMPEL ANY BENEFICIAL OWNER OF AN INTEREST IN A SECURITY (OR ANY INTEREST THEREIN) TO PROVIDE PROOF THAT IT IS A QUALIFIED INSTITUTIONAL BUYER AT ANY TIME. IF THE ISSUER AND/OR THE TRUSTEE ARE NOT SATISFIED WITH THE PROOF PROVIDED, THE ISSUER MAY REQUIRE, BY NOTICE TO SUCH BENEFICIAL OWNER, THAT SUCH BENEFICIAL OWNER SELL ALL OF ITS RIGHTS, TITLE AND INTEREST TO SUCH NOTE (OR INTEREST THEREIN) TO A PERSON THAT *IS A QUALIFIED INSTITUTIONAL BUYER AND A QUALIFIED PURCHASER, WITH* SUCH SALE TO BE EFFECTED WITHIN 30 DAYS AFTER NOTICE OF SUCH SALE REQUIREMENT IS GIVEN. IF SUCH BENEFICIAL OWNER FAILS TO EFFECT THE TRANSFER REQUIRED WITHIN SUCH 30-DAY PERIOD, (X) UPON DIRECTION FROM THE ISSUER, THE TRUSTEE UNDER THE INDENTURE, ON BEHALF OF THE ISSUER AND AT THE ISSUER'S EXPENSE, SHALL CAUSE SUCH BENEFICIAL OWNER'S INTEREST IN SUCH NOTE TO BE TRANSFERRED IN A COMMERCIALLY REASONABLE SALE ARRANGED BY THE ISSUER (CONDUCTED BY THE TRUSTEE UNDER THE INDENTURE IN ACCORDANCE WITH SECTION 9-610(B) OF THE

UNIFORM COMMERCIAL CODE AS IN EFFECT IN THE STATE OF NEW YORK AS APPLIED TO SECURITIES THAT ARE SOLD ON A RECOGNIZED MARKET OR THAT MAY DECLINE SPEEDILY IN VALUE) TO A PERSON TO WHOM SUCH NOTE (OR INTEREST THEREIN) MAY BE TRANSFERRED IN ACCORDANCE WITH THE TRANSFER RESTRICTIONS SET FORTH IN THE INDENTURE AND (Y) PENDING SUCH TRANSFER, NO FURTHER PAYMENTS WILL BE MADE IN RESPECT OF SUCH NOTE HELD BY SUCH BENEFICIAL OWNER.

THE INITIAL PURCHASER AND EACH SUBSEQUENT TRANSFEREE OF THIS SECURITY OR ANY BENEFICIAL INTERESTS HEREIN WILL BE DEEMED TO REPRESENT THAT IT AGREES TO COMPLY WITH THE TRANSFER RESTRICTIONS AND MINIMUM DENOMINATION TERMS SET FORTH HEREIN AND WILL NOT TRANSFER THE NOTES OR ANY BENEFICIAL INTERESTS HEREIN EXCEPT TO A TRANSFEREE WHO CAN MAKE THE SAME REPRESENTATIONS AND AGREEMENTS, INCLUDING AS TO MINIMUM DENOMINATIONS, ON BEHALF OF ITSELF AND EACH ACCOUNT FOR WHICH IT IS PURCHASING. TO THE FULLEST EXTENT PERMITTED BY LAW, ANY TRANSFER OF THE NOTES, OR BENEFICIAL INTEREST IN THE NOTES, IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE AND EFFECT AND WILL BE NULL AND VOID AB INITIO AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER.

No. 003                                                                 $20,200,000

12% Second Priority Senior Secured Notes due September 18, 2019

CUSIP No. 66706C AA9
ISIN No. 144A: US66706CAA99

Northstar GOM Holdings Group LLC, a Delaware limited liability company (the "Company"), promises to pay to Senior Health Insurance Company of Pennsylvania, or registered assigns, the principal sum of twenty million, two hundred thousand dollars ($20,200,000) on September 18, 2019.

Interest Payment Dates: April 1 and October 1 of each year, beginning April 1, 2015.

Record Dates: March 15 and September 15 of each year.

Additional provisions of this Note are set forth on the other side of this Note.

IN WITNESS WHEREOF, the Company has caused this instrument to be duly executed.

NORTHSTAR GOM HOLDINGS GROUP LLC

By: _____
Name: Daniel Small
Title: Vice President

Dated: 3/3/15

TRUSTEE'S CERTIFICATE OF
AUTHENTICATION

U.S. BANK NATIONAL ASSOCIATION,
as Trustee, certifies that this is one of the
Notes referred to in the Indenture.

By: _____
Authorized Signatory

## NOTATION OF GUARANTEE

For value received, each Guarantor (which term includes any successor Person under the Indenture (as defined below)) agrees, subject to the provisions in the Indenture dated as of September 18, 2014 (the "*Indenture*") among Northstar GOM Holdings Group LLC, a Delaware limited liability company, the Guarantors party thereto and U.S. Bank National Association, as trustee (in such capacity, the "*Trustee*") and as collateral agent: (a) that the undersigned, jointly and severally with the other Guarantors, fully, irrevocably, absolutely, and unconditionally guarantees to each Holder of Notes and the Trustee the prompt and complete payment and performance when due, and no matter how the same shall become due, of all Guaranteed Obligations subject to any limitation set forth therein; (b) that each reference in the Indenture to a "Guarantor" shall also mean and be a reference to the undersigned; (c) that the obligations of the Guarantors to the Holders of Notes and to the Trustee pursuant to the Indenture are expressly set forth in Article 11 of the Indenture, and reference is hereby made to the Indenture for the precise terms of the Guarantee; (d) to be bound by such provisions; and (e) authorizes and directs the Trustee, on behalf of such Holder, to take such action as may be necessary or appropriate to effectuate such provisions.

NEW YORK LAW TO GOVERN. THE INTERNAL LAW OF THE STATE OF NEW YORK SHALL GOVERN AND BE USED TO CONSTRUE THIS NOTATION OF GUARANTEE.

Capitalized terms used but not defined herein have the meanings given to them in the Indenture.

NORTHSTAR OFFSHORE GROUP, LLC

By: _____
Name: S. Glynn Roberts
Title: President

12% Second Priority Senior Secured Notes due September 18, 2019

Capitalized terms used herein have the meanings assigned to them in the Indenture referred to below unless otherwise indicated.

1.      Interest

Northstar GOM Holdings Group LLC, Delaware limited liability company (the "Company"), promises to pay interest on the principal amount of this Note at the rate per annum shown above. The Company shall pay interest semiannually on October 1 and April 1 of each year, commencing April 1, 2015. Interest on the Notes shall accrue from the most recent date to which interest has been paid or duly provided for or, if no interest has been paid or duly provided for, from September 18, 2014 until the principal hereof is due. Interest shall be computed on the basis of a 360-day year of twelve 30-day months. The Company shall pay interest on overdue principal at the rate borne by the Notes, and it shall pay interest on overdue installments of interest at the same rate to the extent lawful.

2.      Method of Payment

The Company shall pay interest on the Notes (except defaulted interest) to the Persons who are registered Holders at the close of business on the September 15 or March 15 (whether or not a Business Day) next preceding the interest payment date even if Notes are canceled after the record date and on or before the interest payment date. The Holders must surrender Notes to a Paying Agent to collect principal payments. The Company shall pay principal, premium, if any, and interest in money of the United States of America that at the time of payment is legal tender for payment of public and private debts. Payments in respect of the Notes represented by a Global Note (including principal, premium, if any, and interest) shall be made by wire transfer of immediately available funds to the accounts specified by The Depository Trust Company ("DTC") or any successor depositary. The Company will make all payments in respect of a certificated Note (including principal, premium, if any, and interest), at the office of each Paying Agent, except that, at the option of the Company, payment of interest may be made by mailing a check to the registered address of each Holder thereof; *provided, however*, that payments on the Notes may also be made, in the case of a Holder of at least $5 million aggregate principal amount of Notes, by wire transfer to a U.S. dollar account maintained by the payee with a bank in the United States if such Holder elects payment by wire transfer by giving written notice to the Trustee or a Paying Agent to such effect designating such account no later than 30 days immediately preceding the relevant due date for payment (or such other date as the Trustee may accept in its discretion).

3.      Paying Agent and Registrar

Initially, U.S. Bank National Association (the "Trustee") will act as Paying Agent and Registrar. The Company may appoint and change any Paying Agent or Registrar without notice. The Company or any of their domestically-organized wholly owned Subsidiaries may act as Paying Agent or Registrar.

4.      Indenture

The Company issued the Notes under an Indenture dated as of September 18, 2014 (the "Indenture"), among the Company, the Guarantors and the Trustee. Terms defined in the Indenture and not defined herein have the meanings ascribed thereto in the Indenture. The Notes are subject to all terms and provisions of the Indenture, and the Holders are referred to the Indenture for a statement of such terms and provisions. To the extent any provision of this Note conflicts with the express provisions of the Indenture, the provisions of the Indenture shall govern and be controlling.

The Notes are second priority senior secured obligations of the Company. This Note is one of a duly authorized issue of Notes of the Company designated as its 12% Second Priority Senior Secured Notes due September 18, 2019. The Company shall be entitled to issue Additional Notes pursuant to Article 2 of the Indenture. The Notes and Additional Notes shall be treated as a single class of securities for all purposes under the Indenture.

5.   Optional Redemption

The Company may redeem some or all of the Notes at anytime, or from time to time. If the Company chooses to redeem any Notes, it will pay a redemption price equal to the percentage of principal amount hereof as set forth below:

| Year | Percentage |
|------|-----------|
| September 18, 2014 and thereafter | 104.000% |
| September 18, 2015 and thereafter | 103.000% |
| September 18, 2016 and thereafter | 102.000% |
| September 18, 2017 and thereafter | 100.000% |

If the Company choose to redeem any Notes, the Company will deliver a notice of redemption to Holders of Notes not less than 30 nor more than 60 days before the redemption date. If the Company is redeeming less than all of the Notes, the particular Notes to be redeemed will be selected in accordance with the applicable procedures of the Trustee and, so long as the Notes are registered to DTC or its nominee, DTC; provided, however, that no such partial redemption shall reduce the portion of the principal amount of a Note not redeemed to less than $2,000. Unless the Company default in payment of the redemption price, on and after the redemption date, interest will cease to accrue on the Notes or portions of the Notes called for redemption.

6.   Sinking Fund

The Notes are not subject to any sinking fund.

7.   Notice of Redemption

Notice of redemption will be sent electronically or mailed by first-class mail at least 30 days but not more than 60 days before the redemption date to each Holder of Notes to be redeemed at his, her or its registered address or provided otherwise in accordance with the

procedures of The Depository Trust Company.  Notes in denominations larger than $2,000  may be redeemed in part but only in whole multiples of $1,000 to the extent practicable.  If money sufficient to pay the redemption price of and accrued and unpaid interest on all Notes (or portions thereof) to be redeemed on the redemption date is deposited with a Paying Agent on or before the redemption date and certain other conditions are satisfied, on and after such redemption date, interest ceases to accrue on such Notes (or such portions thereof) called for redemption.

       8.     Offer to Repurchase Upon a Change of Control

          Upon the occurrence of a Change of Control, each Holder shall have the right, subject to certain conditions specified in the Indenture, to require the Company to repurchase all or any part of such Holder's Notes at a purchase price in cash equal to 100% of the principal amount thereof, plus accrued and unpaid interest, if any, to, but excluding, the date of repurchase (subject to the right of the Holders of record on the relevant record date to receive interest due on the relevant interest payment date), as provided in, and subject to the terms of, the Indenture.

       9.     Denominations; Transfer; Exchange

          The Notes are in registered form, without coupons, in denominations of $2,000 and any integral multiple of $1,000 in excess thereof.  A Holder shall register the transfer of or exchange of Notes in accordance with the Indenture.  Upon any registration of transfer or exchange, the Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements or transfer documents and to pay any taxes required by law or permitted by the Indenture.  The Registrar need not register the transfer of or exchange any Notes selected for redemption (except, in the case of a Note to be redeemed in part, the portion of the Note not to be redeemed) or to transfer or exchange any Notes for a period of 15 days prior to the mailing of a notice of redemption of Notes to be redeemed.

      10.     Persons Deemed Owners

          The registered Holder of this Note shall be treated as the owner of it for all purposes.

      11.     Unclaimed Money

          If money for the payment of principal or interest remains unclaimed for two years, the Trustee and a Paying Agent shall pay the money back to the Company at their written request unless an abandoned property law designates another Person.  After any such payment, the Holders entitled to the money must look to the Company for payment as general creditors and the Trustee and a Paying Agent shall have no further liability with respect to such monies.

      12.     Discharge and Defeasance

          Subject to certain conditions, the Company at any time may terminate some of or all its obligations under the Notes and the Indenture if the Company deposit with the Trustee money or Government Securities or a combination thereof for the payment of principal of, and interest on the Notes to redemption, or maturity, as the case may be.

13. Amendment, Waiver

The Indenture and the Notes may be amended or supplemented as provided in the Indenture.

14. Defaults and Remedies

If an Event of Default (other than an Event of Default relating to certain events of bankruptcy and insolvency) occurs and is continuing, then and in every such case, the Trustee or the Holders of at least 67% in principal amount of the outstanding Notes may declare the entire principal amount of Notes to be due and immediately payable, by a notice in writing to the Company (and to the Trustee if given by the Holders), and upon any such declaration such *principal or specified portion thereof shall become immediately due and payable.* Notwithstanding the foregoing, in the case of the events of bankruptcy or insolvency, the principal of and accrued and unpaid interest on the Notes will automatically become due and payable.

At any time after a declaration of acceleration with respect to the Notes has been made and before a judgment or decree for payment of the money due has been obtained by the Trustee, the holders of a majority in principal amount of the outstanding Notes, by written notice to the Company and the Trustee, may rescind and annul such declaration and its consequences if (i) the Company have paid or deposited with the Trustee a sum sufficient to pay all overdue installments of interest, if any, on all outstanding Notes, the principal of (and premium, if any, on) all outstanding Notes that have become due otherwise than by such declaration of acceleration and interest thereon at the rate or rates borne by or provided for in such Notes, to the extent that payment of such interest is lawful interest upon overdue installments of interest at the rate or rates borne by or provided for in such Notes, and all sums paid or advanced by the Trustee and the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, and (ii) all Events of Default with respect to the Notes, other than the nonpayment of the principal of (or premium, if any, on) or interest on such Notes that have become due solely by such declaration of acceleration, have been cured or waived. No such rescission will affect any subsequent default or impair any right consequent thereon.

15. Trustee Dealings with the Company

Subject to certain limitations imposed by the Indenture, the Trustee under the Indenture, in its individual or any other capacity, may become the owner or pledgee of Notes and may otherwise deal with and collect obligations owed to it by the Company or their Affiliates and may otherwise deal with the Company or their Affiliates with the same rights it would have if it were not Trustee.

16. No Personal Liability of Directors, Officers, Employees, Members and Equity Holders

No director, officer, member, partner, employee, affiliate, incorporator or holder of equity interests of the Company or any subsidiary or any of their parent companies shall have any liability for any obligations of the Company under the Notes or for any claim based on, in respect of, or by reason of such obligations or their creation. Each Holder by accepting a note

waives and releases all such liability. The waiver and release are part of the consideration for issuance of the notes.

17.    Authentication

This Note shall not be valid until an authorized signatory of the Trustee (or an *authenticating agent*) manually signs the certificate of authentication on the other side of this Note.

18.    Abbreviations

Customary abbreviations may be used in the name of a Holder or an assignee, such as TEN COM (=tenants in common), TEN ENT (=tenants by the entireties), JT TEN (=joint *tenants with rights of survivorship and not as tenants in common*), CUST (=custodian), and U/G/M/A (=Uniform Gift to Minors Act).

19.    Governing Law

**THIS SECURITY SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN SUCH STATE WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES THEREOF TO THE EXTENT THE LAW OF ANOTHER JURISDICTION WOULD BE APPLIED THEREBY.**

20.    CUSIP Numbers and ISINs

The Company have caused CUSIP numbers and ISINs to be printed on the Notes and have directed the Trustee to use CUSIP numbers and ISINs.  No representation is made as to the accuracy of such numbers either as printed on the Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

**The Company will furnish to any Holder of Notes upon written request and without charge to the Holder a copy of the Indenture which has in it the text of this Note.**

ASSIGNMENT FORM

To assign this Note, fill in the form below:

I or we assign and transfer this Note to:

_____

(Print or type assignee's name, address and zip code)

_____

(Insert assignee's soc. sec. or tax I.D. No.)

and irrevocably appoint _____ agent to transfer this Note on the books of the Company. The agent may substitute another to act for him.

Date: _____  Your Signature: _____

Sign exactly as your name appears on the other side of this Note.

Signature Guarantee:

Date: _____  _____

Signature must be guaranteed by a
Signature of Signature Guarantee
participant in a recognized signature
guaranty medallion program or other
signature guarantor program reasonably
acceptable to the Trustee

Signature of Signature Guarantee.

## CERTIFICATE TO BE DELIVERED UPON EXCHANGE OR
## REGISTRATION OF TRANSFER RESTRICTED NOTES

This certificate relates to $_____ principal amount of Notes held in (check applicable space) _____ book-entry or _____ definitive form by the undersigned.

The undersigned:

☐  has requested the Trustee by written order to deliver in exchange for its beneficial interest in the Global Note held by the Depository a Note or Notes in definitive, registered form of authorized denominations and an aggregate principal amount equal to its beneficial interest in such Global Note (or the portion thereof indicated above)

☐  has requested the Trustee by written order to exchange or register the transfer of a Note or Securities

In connection with any transfer of any of the Notes evidenced by this certificate, the undersigned confirms that such Notes are being transferred:

CHECK ONE BOX BELOW

(1)  ☐  to one of the Company; or

(2)  ☐  to the Registrar for registration in the name of the Holder, without transfer; or

(3)  ☐  to a "Qualified Institutional Buyer" (as defined in Rule 144A of the Notes Act) that is acquiring the Notes for its own account or for the account of another such Qualified Institutional Buyer.

Date: _____   Your Signature: _____

Signature Guarantee:

Date: _____   _____
      Signature must be guaranteed by a       Signature of Signature Guarantee.
      Signature of Signature Guarantee
      participant in a recognized signature
      guaranty medallion program or other
      signature guarantor program reasonably
      acceptable to the Trustee

## OPTION OF HOLDER TO ELECT PURCHASE

Submit this form if you want to elect to have this Note purchased by the Company pursuant to Section 4.10 or Section 4.12 of the Indenture.

If you want to elect to have only part of this Note purchased by the Company pursuant to Section 4.10 or Section 4.12 of the Indenture, state the amount ($[_____] and any integral multiples of $[_____] in excess thereof):

$

Date: _____   Your Signature: _____

Sign exactly as your name appears on the
other side of this Note.

Signature Guarantee: _____

Signature must be guaranteed by a participant in a recognized signature guaranty medallion program or other signature guarantor program reasonably acceptable to the Trustee.

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), ANY STATE SECURITIES LAWS, OR THE SECURITIES LAWS OF ANY OTHER JURISDICTION.  NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT.  THE HOLDER OF THIS SECURITY, BY ITS ACCEPTANCE HEREOF (1) REPRESENTS THAT IT IS A QUALIFIED INSTITUTIONAL BUYER      (AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT ("RULE 144A")) THAT IS ACQUIRING THE NOTES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF ANOTHER SUCH QUALIFIED INSTITUTIONAL BUYER, AND (2) AGREES TO OFFER, SELL OR OTHERWISE TRANSFER SUCH SECURITY, PRIOR TO THE EXPIRATION OF THE APPLICABLE HOLDING PERIOD WITH RESPECT TO RESTRICTED SECURITIES SET FORTH IN RULE 144 UNDER THE SECURITIES ACT ONLY (A) TO THE ISSUER OR ANY SUBSIDIARY THEREOF, (B) FOR SO LONG AS THE SECURITIES ARE ELIGIBLE FOR RESALE PURSUANT TO RULE 144A, TO A PERSON IT REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHICH NOTICE IS GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, OR (C) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, IN EACH CASE, SUBJECT TO THE ISSUER'S AND THE FISCAL AGENT'S OR REGISTRAR'S, AS APPLICABLE, RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSE (C), TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATIONS AND/OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM, AND IN EACH OF THE FOREGOING CASES, A CERTIFICATE OF TRANSFER IN THE FORM APPEARING ON THE OTHER SIDE OF THIS SECURITY IS COMPLETED AND DELIVERED BY THE TRANSFEROR TO THE FISCAL AGENT OR REGISTRAR.

THE ISSUER HAS THE RIGHT, UNDER THE FISCAL AGENCY AGREEMENT, TO COMPEL ANY BENEFICIAL OWNER OF AN INTEREST IN A SECURITY (OR ANY INTEREST THEREIN) TO PROVIDE PROOF THAT IT IS A QUALIFIED INSTITUTIONAL BUYER AT ANY TIME.  IF THE ISSUER AND/OR THE FISCAL AGENT ARE NOT SATISFIED WITH THE PROOF PROVIDED, THE ISSUER MAY REQUIRE, BY NOTICE TO SUCH BENEFICIAL OWNER, THAT SUCH BENEFICIAL OWNER SELL ALL OF ITS RIGHTS, TITLE AND INTEREST TO SUCH NOTE (OR INTEREST THEREIN) TO A PERSON THAT IS A QUALIFIED INSTITUTIONAL BUYER AND A QUALIFIED PURCHASER, WITH SUCH SALE TO BE EFFECTED WITHIN 30 DAYS AFTER NOTICE OF SUCH SALE REQUIREMENT IS GIVEN.  IF SUCH BENEFICIAL OWNER FAILS TO EFFECT THE TRANSFER REQUIRED WITHIN SUCH 30-DAY PERIOD, (X) UPON DIRECTION FROM THE ISSUER, THE FISCAL AGENT UNDER THE FISCAL AGENCY AGREEMENT, ON BEHALF OF THE ISSUER AND AT THE ISSUER'S EXPENSE, SHALL CAUSE SUCH BENEFICIAL OWNER'S INTEREST IN SUCH NOTE TO BE TRANSFERRED IN A COMMERCIALLY REASONABLE SALE ARRANGED BY THE ISSUER (CONDUCTED

BY THE FISCAL AGENT UNDER THE FISCAL AGENCY AGREEMENT IN ACCORDANCE WITH SECTION 9-610(B) OF THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN THE STATE OF NEW YORK AS APPLIED TO SECURITIES THAT ARE SOLD ON A RECOGNIZED MARKET OR THAT MAY DECLINE SPEEDILY IN VALUE) TO A PERSON TO WHOM SUCH NOTE (OR INTEREST THEREIN) MAY BE TRANSFERRED IN ACCORDANCE WITH THE TRANSFER RESTRICTIONS SET FORTH IN THE FISCAL AGENCY AGREEMENT AND (Y) PENDING SUCH TRANSFER, NO FURTHER PAYMENTS WILL BE MADE IN RESPECT OF SUCH NOTE HELD BY SUCH BENEFICIAL OWNER.

THE INITIAL PURCHASER AND EACH SUBSEQUENT TRANSFEREE OF THIS SECURITY OR ANY BENEFICIAL INTERESTS HEREIN WILL BE DEEMED TO REPRESENT THAT IT AGREES TO COMPLY WITH THE TRANSFER RESTRICTIONS AND MINIMUM DENOMINATION TERMS SET FORTH HEREIN AND WILL NOT TRANSFER THE NOTES OR ANY BENEFICIAL INTERESTS HEREIN EXCEPT TO A TRANSFEREE WHO CAN MAKE THE SAME REPRESENTATIONS AND AGREEMENTS, INCLUDING AS TO MINIMUM DENOMINATIONS, ON BEHALF OF ITSELF AND EACH ACCOUNT FOR WHICH IT IS PURCHASING. TO THE FULLEST EXTENT PERMITTED BY LAW, ANY TRANSFER OF THE NOTES, OR BENEFICIAL INTEREST IN THE NOTES, IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE AND EFFECT AND WILL BE NULL AND VOID AB INITIO AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER.

No. 006              $10,800,000

12% Second Priority Senior Secured Notes due September 18, 2019

CUSIP No. 66706C AA9
ISIN No. 144A: US66706CAA99

Northstar GOM Holdings Group LLC, a Delaware limited liability company (the "Company"), promise to pay to Senior Health Insurance Company of Pennsylvania, or registered assigns, the principal sum of ten million, eight hundred thousand dollars on September 18, 2019.

Interest Payment Dates: October 1 and April 1 of each year, beginning April 1, 2015.

Record Dates: September 15 and March 15 of each year.

Additional provisions of this Note are set forth on the other side of this Note.

IN WITNESS WHEREOF, the Company has caused this instrument to be duly executed:

NORTHSTAR GOM HOLDINGS GROUP LLC

By:

Name:

Title:

Dated:

FISCAL AGENT'S CERTIFICATE OF
AUTHENTICATION

P ADMINISTRATIVE SERVICES LLC,
as Fiscal Agent, certifies that this is one of the
Notes referred to in the Fiscal Agency Agreement.

By:

Authorized Signatory

NY1341997.1
666666-66666

FORM OF NOTATION OF GUARANTEE

For value received, each Guarantor (which term includes any successor Person under the Fiscal Agency Agreement (as defined below)) agrees, subject to the provisions in the Fiscal Agency Agreement dated as of September 18, 2014 (the "*Fiscal Agency Agreement*") among Northstar GOM Holdings Group LLC, a Delaware limited liability company, the Guarantors party thereto and P Administrative Services, LLC, as fiscal agent (in such capacity, the "*Fiscal Agent*") and as collateral agent: (a) that the undersigned, jointly and severally with the other Guarantors, fully, irrevocably, absolutely, and unconditionally guarantees to each Holder of Notes and the Fiscal Agent the prompt and complete payment and performance when due, and no matter how the same shall become due, of all Guaranteed Obligations subject to any limitation set forth therein; (b) that each reference in the Fiscal Agency Agreement to a "Guarantor" shall also mean and be a reference to the undersigned; (c) that the obligations of the Guarantors to the Holders of Notes and to the Fiscal Agent pursuant to the Fiscal Agency Agreement are expressly set forth in Article 11 of the Fiscal Agency Agreement, and reference is hereby made to the Fiscal Agency Agreement for the precise terms of the Guarantee; (d) to be bound by such provisions; and (e) authorizes and directs the Fiscal Agent, on behalf of such Holder, to take such action as may be necessary or appropriate to effectuate such provisions.

NEW YORK LAW TO GOVERN. THE INTERNAL LAW OF THE STATE OF NEW YORK SHALL GOVERN AND BE USED TO CONSTRUE THIS NOTATION OF GUARANTEE.

Capitalized terms used but not defined herein have the meanings given to them in the Fiscal Agency Agreement.

NORTHSTAR OFFSHORE GROUP, LLC

By: _____
Name: _____
Title: _____

NY1341997.1

12% Second Priority Senior Secured Notes due September 18, 2019

Capitalized terms used herein have the meanings assigned to them in the Fiscal Agency Agreement referred to below unless otherwise indicated.

1.    Interest

Northstar GOM Holdings Group LLC, Delaware limited liability company (the "Company"), promises to pay interest on the principal amount of this Note at the rate per annum shown above. The Company shall pay interest semiannually on April 1 and October 1 of each year, commencing April 1, 2015. Interest on the Notes shall accrue from the most recent date to which interest has been paid or duly provided for or, if no interest has been paid or duly provided for, from September 18, 2014 until the principal hereof is due. Interest shall be computed on the basis of a 360-day year of twelve 30-day months. The Company shall pay interest on overdue principal at the rate borne by the Notes, and it shall pay interest on overdue installments of interest at the same rate to the extent lawful.

2.    Method of Payment

The Company shall pay interest on the Notes (except defaulted interest) to the Persons who are registered Holders at the close of business on the September 15 or March 15 (whether or not a Business Day) next preceding the interest payment date. The Holders must surrender Notes to a Paying Agent to collect principal payments. The Company shall pay principal, premium, if any, and interest in money of the United States of America that at the time of payment is legal tender for payment of public and private debts. Payments in respect of the Notes represented by a Global Note (including principal, premium, if any, and interest) shall be made by wire transfer of immediately available funds to the accounts specified by The Depository Trust Company ("DTC") or any successor depositary. The Company will make all payments in respect of a certificated Note (including principal, premium, if any, and interest), at the office of each Paying Agent, except that, at the option of the Company, payment of interest may be made by mailing a check to the registered address of each Holder thereof; provided, however, that payments on the Notes may also be made, in the case of a Holder of at least $5 million aggregate principal amount of Notes, by wire transfer to a U.S. dollar account maintained by the payee with a bank in the United States if such Holder elects payment by wire transfer by giving written notice to the Fiscal Agent or a Paying Agent to such effect designating such account no later than 30 days immediately preceding the relevant due date for payment (or such other date as the Fiscal Agent may accept in its discretion).

3.    Paying Agent and Registrar

Initially, P Administrative Services LLC (the "Fiscal Agent") will act as Paying Agent and Registrar. The Company may appoint and change any Paying Agent or Registrar without notice. The Company or any of their domestically-organized wholly owned Subsidiaries may act as Paying Agent or Registrar.

NY1341997.1
666666-66666

4.    Fiscal Agency Agreement

The Company issued the Notes under a Fiscal Agency Agreement dated as of September 18, 2014 (the "Fiscal Agency Agreement"), among the Company, the Guarantors and the Fiscal Agent. Terms defined in the Fiscal Agency Agreement and not defined herein have the meanings ascribed thereto in the Fiscal Agency Agreement. The Notes are subject to all terms and provisions of the Fiscal Agency Agreement, and the Holders are referred to the Fiscal Agency Agreement for a statement of such terms and provisions. To the extent any provision of this Note conflicts with the express provisions of the Fiscal Agency Agreement, the provisions of the Fiscal Agency Agreement shall govern and be controlling.

The Notes are second priority senior secured obligations of the Company. This Note is one of a duly authorized issue of Notes of the Company designated as its 12% Second Priority Senior Secured Notes due September 18, 2019. The Company shall be entitled to issue Additional Notes pursuant to Article 2 of the Fiscal Agency Agreement. The Notes and Additional Notes shall be treated as a single class of securities for all purposes under the Fiscal Agency Agreement.

5.    Optional Redemption

The Company may redeem some or all of the Notes at any time, or from time to time. If the Company chooses to redeem any Notes, it will pay a redemption price equal to the percentage of principal amount hereof as set forth below:

| Year | Percentage |
|------|------------|
| September 18, 2014 and thereafter | 104.000% |
| September 18, 2015 and thereafter | 103.000% |
| September 18, 2016 and thereafter | 102.000% |
| September 18, 2017 and thereafter | 100.000% |

If the Company choose to redeem any Notes, the Company will deliver a notice of redemption to Holders of Notes not less than 30 nor more than 60 days before the redemption date. If the Company is redeeming less than all of the Notes, the particular Notes to be redeemed will be selected in accordance with the applicable procedures of the Fiscal Agent and, so long as the Notes are registered to DTC or its nominee, DTC; provided, however, that no such partial redemption shall reduce the portion of the principal amount of a Note not redeemed to less than $2,000. Unless the Company default in payment of the redemption price, on and after the redemption date, interest will cease to accrue on the Notes or portions of the Notes called for redemption.

6.    Sinking Fund

The Notes are not subject to any sinking fund.

7.    Notice of Redemption

Notice of redemption will be sent electronically or mailed by first-class mail at least 30 days but not more than 60 days before the redemption date to each Holder of Notes to be redeemed at his, her or its registered address or provided otherwise in accordance with the procedures of The Depository Trust Company. Notes in denominations larger than $2,000 may be redeemed in part but only in whole multiples of $1,000 to the extent practicable. If money sufficient to pay the redemption price of and accrued and unpaid interest on all Notes (or portions thereof) to be redeemed on the redemption date is deposited with a Paying Agent on or before the redemption date and certain other conditions are satisfied, on and after such redemption date, interest ceases to accrue on such Notes (or such portions thereof) called for redemption.

8.      Offer to Repurchase Upon a Change of Control

Upon the occurrence of a Change of Control, each Holder shall have the right, subject to certain conditions specified in the Fiscal Agency Agreement, to require the Company to repurchase all or any part of such Holder's Notes at a purchase price in cash equal to 100% of the principal amount thereof, plus accrued and unpaid interest, if any, to, but excluding, the date of repurchase (subject to the right of the Holders of record on the relevant record date to receive interest due on the relevant interest payment date), as provided in, and subject to the terms of, the Fiscal Agency Agreement.

9.      Denominations; Transfer; Exchange

The Notes are in registered form, without coupons, in denominations of $2,000 and any integral multiple of $1,000 in excess thereof. A Holder shall register the transfer of or exchange of Notes in accordance with the Fiscal Agency Agreement. Upon any registration of transfer or exchange, the Registrar and the Fiscal Agent may require a Holder, among other things, to furnish appropriate endorsements or transfer documents and to pay any taxes required by law or permitted by the Fiscal Agency Agreement. The Registrar need not register the transfer of or exchange any Notes selected for redemption (except, in the case of a Note to be redeemed in part, the portion of the Note not to be redeemed) or to transfer or exchange any Notes for a period of 15 days prior to the mailing of a notice of redemption of Notes to be redeemed.

10.     Persons Deemed Owners

The registered Holder of this Note shall be treated as the owner of it for all purposes.

11.     Unclaimed Money

If money for the payment of principal or interest remains unclaimed for two years, the Fiscal Agent and a Paying Agent shall pay the money back to the Company at their written request unless an abandoned property law designates another Person. After any such payment, the Holders entitled to the money must look to the Company for payment as general creditors and the Fiscal Agent and a Paying Agent shall have no further liability with respect to such monies.

12.    Discharge and Defeasance

Subject to certain conditions, the Company at any time may terminate some of or all its obligations under the Notes and the Fiscal Agency Agreement if the Company deposit with the Fiscal Agent money or Government Securities or a combination thereof for the payment of principal of, and interest on the Notes to redemption, or maturity, as the case may be.

13.    Amendment, Waiver

The Fiscal Agency Agreement and the Notes may be amended or supplemented as provided in the Fiscal Agency Agreement.

14.    Defaults and Remedies

If an Event of Default (other than an Event of Default relating to certain events of bankruptcy and insolvency) occurs and is continuing, then and in every such case, the Fiscal Agent or the Holders of at least 67% in principal amount of the outstanding Notes may declare the entire principal amount of Notes to be due and immediately payable, by a notice in writing to the Company (and to the Fiscal Agent if given by the Holders), and upon any such declaration such principal or specified portion thereof shall become immediately due and payable. Notwithstanding the foregoing, in the case of the events of bankruptcy or insolvency, the principal of and accrued and unpaid interest on the Notes will automatically become due and payable.

At any time after a declaration of acceleration with respect to the Notes has been made and before a judgment or decree for payment of the money due has been obtained by the Fiscal Agent, the holders of a majority in principal amount of the outstanding Notes, by written notice to the Company and the Fiscal Agent, may rescind and annul such declaration and its consequences if (i) the Company have paid or deposited with the Fiscal Agent a sum sufficient to pay all overdue installments of interest, if any, on all outstanding Notes, the principal of (and premium, if any, on) all outstanding Notes that have become due otherwise than by such declaration of acceleration and interest thereon at the rate or rates borne by or provided for in such Notes, to the extent that payment of such interest is lawful interest upon overdue installments of interest at the rate or rates borne by or provided for in such Notes, and all sums paid or advanced by the Fiscal Agent and the reasonable compensation, expenses, disbursements and advances of the Fiscal Agent, its agents and counsel, and (ii) all Events of Default with respect to the Notes, other than the nonpayment of the principal of (or premium, if any, on) or interest on such Notes that have become due solely by such declaration of acceleration, have been cured or waived. No such rescission will affect any subsequent default or impair any right consequent thereon.

15.    Fiscal Agent Dealings with the Company

Subject to certain limitations imposed by the Fiscal Agency Agreement, the Fiscal Agent under the Fiscal Agency Agreement, in its individual or any other capacity, may become the owner or pledgee of Notes and may otherwise deal with and collect obligations owed to it by the Company or their Affiliates and may otherwise deal with the Company or their Affiliates with the same rights it would have if it were not Fiscal Agent.

16.    No Personal Liability of Directors, Officers, Employees, Members and Equity Holders

No director, officer, member, partner, employee, affiliate, incorporator or holder of equity interests of the Company or any subsidiary or any of their parent companies shall have any liability for any obligations of the Company under the Notes or for any claim based on, in respect of, or by reason of such obligations or their creation. Each Holder by accepting a note waives and releases all such liability. The waiver and release are part of the consideration for issuance of the notes.

17.    Authentication

This Note shall not be valid until an authorized signatory of the Fiscal Agent (or an authenticating agent) manually signs the certificate of authentication on the other side of this Note.

18.    Abbreviations

Customary abbreviations may be used in the name of a Holder or an assignee, such as TEN COM (=tenants in common), TEN ENT (=tenants by the entireties), JT TEN (=joint tenants with rights of survivorship and not as tenants in common), CUST (=custodian), and U/G/M/A (=Uniform Gift to Minors Act).

19.    Governing Law

THIS SECURITY SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN SUCH STATE WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES THEREOF TO THE EXTENT THE LAW OF ANOTHER JURISDICTION WOULD BE APPLIED THEREBY.

20.    CUSIP Numbers and ISINs

The Company have caused CUSIP numbers and ISINs to be printed on the Notes and have directed the Fiscal Agent to use CUSIP numbers and ISINs.  No representation is made as to the accuracy of such numbers either as printed on the Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

The Company will furnish to any Holder of Notes upon written request and without charge to the Holder a copy of the Fiscal Agency Agreement which has in it the text of this Note.

ASSIGNMENT FORM

To assign this Note, fill in the form below:

I or we assign and transfer this Note to:

_____

(Print or type assignee's name, address and zip code)

_____

(Insert assignee's soc. sec. or tax I.D. No.)

and irrevocably appoint _____ agent to transfer this Note on the books of the Company. The agent may substitute another to act for him.

Date: _____    Your Signature: _____

Sign exactly as your name appears on the
other side of this Note.

Signature Guarantee:

Date: _____    _____

Signature must be guaranteed by a          Signature of Signature Guarantee.
Signature of Signature Guarantee
participant in a recognized signature
guaranty medallion program or other
signature guarantor program reasonably
acceptable to the Fiscal Agent

### CERTIFICATE TO BE DELIVERED UPON EXCHANGE OR
### REGISTRATION OF TRANSFER RESTRICTED NOTES

This certificate relates to $_____ principal amount of Notes held in (check applicable space) _____ book-entry or _____ definitive form by the undersigned.

The undersigned:

☐     has requested the Fiscal Agent by written order to deliver in exchange for its beneficial interest in the Global Note held by the Depository a Note or Notes in definitive, registered form of authorized denominations and an aggregate principal amount equal to its beneficial interest in such Global Note (or the portion thereof indicated above)

☐     has requested the Fiscal Agent by written order to exchange or register the transfer of a *Note or Securities*

In connection with any transfer of any of the Notes evidenced by this certificate, the undersigned confirms that such Notes are being transferred:

CHECK ONE BOX BELOW

(1)    ☐    to one of the Company; or

(2)    ☐    to the Registrar for registration in the name of the Holder, without transfer; or

(3)    ☐    to a "Qualified Institutional Buyer" (as defined in Rule 144A of the Notes Act) that is acquiring the Notes for its own account or for the account of another such Qualified Institutional Buyer.

Date: _____   Your Signature: _____

Signature Guarantee:

Date: _____   _____

       **Signature must be guaranteed by a**      Signature of Signature Guarantee.
       **Signature of Signature Guarantee**
       **participant in a recognized signature**
       **guaranty medallion program or other**
       **signature guarantor program reasonably**
       **acceptable to the Fiscal Agent.**