Eliot Lauer, Esq.
Jacques Semmelman, Esq.
Gabriel Hertzberg, Esq.
CURTIS, MALLET-PREVOST,
  COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
Telephone: 212-696-6000
Facsimile: 212-697-1559
Email: elauer@curtis.com
        jsemmelman@curtis.com
        ghertzberg@curtis.com

*Attorneys for Defendant David Bodner*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARTIN TROTT and CHRISTOPHER SMITH, as Joint
Official Liquidators and Foreign Representatives of
PLATINUM PARTNERS VALUE ARBITRAGE FUND
L.P. (in OFFICIAL LIQUIDATION) and PLATINUM
PARTNERS VALUE ARBITRAGE FUND L.P. (in
OFFICIAL LIQUIDATION),

                              Plaintiffs,

          v.

PLATINUM MANAGEMENT (NY) LLC, *et al.*,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

No. 18 Civ. 10936 (JSR)

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION
TO DISQUALIFY CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
<u>AS COUNSEL TO DEFENDANT DAVID BODNER</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ......................................................................................................... 3

    A.  Mr. Bodner ....................................................................................................... 3

    B.  Platinum Management ..................................................................................... 4

    C.  The Fund ........................................................................................................... 4

    D.  Curtis's Engagements ..................................................................................... 5

    E.  Beechwood ...................................................................................................... 8

    F.  The 2016 Investigations ................................................................................ 10

    G.  This Motion ...................................................................................................... 11

ARGUMENT ............................................................................................................................... 12

I.   CURTIS IS NOT CONFLICTED .................................................................................. 13

    A.  Curtis Has Not Represented the Fund in Any Matter
         "Substantially Related" to this Action ...................................................... 14

    1.  Exhibits 1, 2, and 3 Do Not Support Plaintiffs' Contention that
        the Fund Paid Curtis's Fees in a Substantially Related Matter ..................... 15

    2.  Exhibit 5 Does Not Support Plaintiffs' Contention that Curtis Represented
        the Fund in an SEC Examination of Platinum Management .......................... 16

    3.  Exhibit 6 Does Not Support Plaintiffs' Contention that Curtis Represented
        the Fund in the 2016 Investigations ............................................................... 16

    4.  The Other Exhibits Do Not Support Plaintiffs' Contentions ......................... 17

    B.  There Was No Relevant Informational Barrier Between the Fund and Bodner ............ 18

II.  THERE IS NO BASIS TO DISQUALIFY CURTIS
      UNDER THE ADVOCATE-WITNESS RULE .................................................................. 22

CONCLUSION ............................................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allegaert v. Perot*,
  565 F.2d 246 (2d Cir. 1977) .......................................................................... 2, 18, 19

*Arista Records LLC v. Lime Grp. LLC*,
  No. 06 Civ. 5936, 2011 U.S. Dist. LEXIS 17434 (S.D.N.Y. Feb. 22, 2011) ..................... 12, 13

*Bacote v. Riverbay Corp.*,
  No. 16 Civ. 1599 (GHW), 2017 U.S. Dist. LEXIS 35098 (S.D.N.Y. Mar. 10, 2017) ............. 12

*Board of Education v. Nyquist*,
  590 F.2d 1241 (2d Cir. 1979) ...................................................................................... 12

*Burda Media, Inc. v. Blumenberg*,
  No. 97 Civ. 7167(RWS), 1999 WL 1021104 (S.D.N.Y. Nov. 8, 1999) ................................ 19

*Ello v. Singh*,
  No. 05-CV-9625, 2006 U.S. Dist. LEXIS 55542 (S.D.N.Y. July 31, 2006) ......................... 23

*Evans v. Artek Systems Corp.*,
  715 F.2d 788 (2d Cir. 1983) ....................................................................................... 13

*Intelstat, Ltd. v. Int'l Telcoms Satellite Org.*,
  No. 06 Civ. 10165 (JSR), 2007 U.S. Dist. LEXIS 23113 (S.D.N.Y. Mar. 16, 2007) ............. 18

*Interpharm, Inc. v. Wells Fargo Bank*,
  No. 08 Civ. 11365, 2010 U.S. Dist. LEXIS 2880 (S.D.N.Y. Mar. 25, 2010) ....................... 22

*Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*,
  542 F. Supp. 2d 296, 315 (S.D.N.Y. 2008) ................................................................... 22

*Moran v. Hurst*,
  32 A.D.3d 909, 822 N.Y.S.2d 564 (2d Dep't 2006) ....................................................... 16

*Priest v. Hennessy*,
  51 N.Y.2d 62 (1980) ................................................................................................ 16

*Prout v. Vladek*,
  316 F. Supp. 3d 784 (S.D.N.Y. 2018) ..................................................................... 22, 23

*Reyes v. Golden Krust Caribbean Bakery, Inc.*,
  No. 15 Civ. 7127, 2016 U.S. Dist. LEXIS 121623 (S.D.N.Y. Sep. 1, 2016) ....................... 24

*Rosman v. Shapiro*,
  653 F. Supp. 1441 (S.D.N.Y. 1987) ........................................................................ 20, 21

*Scantek Med., Inc. v. Sabella*,
  693 F. Supp. 2d 235 (S.D.N.Y. 2008) ......................................................................... 13

Defendant David Bodner, through his counsel Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), respectfully submits this memorandum of law in opposition to Plaintiffs' Motion to Disqualify Curtis from representing Mr. Bodner in this action (the "Motion") [ECF No. 45].

## PRELIMINARY STATEMENT

The Motion is predicated on the fundamental untruth that Curtis previously represented Platinum Partners Value Arbitrage Fund L.P. ("PPVA" or the "Fund") in matters substantially related to the present action. Plaintiffs, the Fund's Joint Official Liquidators, have not submitted any sworn declaration from a Fund representative or from a non-party witness that provides factual support for this false assertion. Instead, Plaintiffs rely entirely on 10 exhibits to try to support the narrative presented in their memorandum of law (the "JOL Mem.") [ECF No. 47]. The exhibits do not support any such narrative, because the tale told in the JOL Mem. is untrue.

The only sworn declarations in this case that set forth the actual facts are (i) the Declaration of Jacques Semmelman, a senior partner at Curtis, and (ii) the Declaration of Harvey Z. Werblowsky, a former in-house counsel at Platinum Management. Mr. Werblowsky is not a party to this action. Those declarations establish, *inter alia*, that Curtis has historically represented the Fund in exactly two matters, neither of which is related — much less "substantially related" — to this action. One matter involved litigation arising out of the bankruptcy of a Florida law firm. The other matter involved an SEC investigation into certain variable annuity insurance contracts. Both matters concluded in 2014. Plaintiffs cannot and do not claim that either of these matters is substantially related to this action.

Instead, without evidentiary support, and contrary to the evidence of record, Plaintiffs claim that Curtis has represented the Fund in other matters, including a series of U.S.

government investigations starting in June 2016 (the "2016 Investigations"), which Plaintiffs

assert are substantially related to this action.  But Curtis did not represent the Fund in the 2016

Investigations.  Curtis's affiant has expressly denied it, and there is no evidence of such a

representation.  In the 2016 Investigations, Curtis represented David Bodner and Platinum

Management (NY) LLC ("Platinum Management") — no one else.

Under governing Second Circuit law, these facts alone defeat the Motion.  But

even if one were to indulge the Plaintiffs and pretend that Curtis *had* represented the Fund in the

2016 Investigations, the Motion would fail for another reason:  Mr. Bodner, who Curtis

indisputably represented in the 2016 Investigations, had access to Curtis's information, including

information related to the Fund.  There was no information barrier that shielded Fund-related

information from Mr. Bodner.  As a result, there is no confidential Fund information in the

possession of Curtis that was unavailable to Mr. Bodner.  Under the line of cases that derive

from *Allegaert v. Perot*, 565 F.2d 246 (2d Cir. 1977), these facts also defeat the Motion.

The Fund is a limited partnership.  The Fund never had employees of its own, but

was operated entirely by and through its general partner Platinum Management.  All Fund

information was generated by Platinum Management.  Platinum Management was a long-time

Curtis client, which Curtis represented in the 2016 Investigations, along with Mr. Bodner.  Mr.

Bodner held a minority beneficial interest in Platinum Management.  In addition, Mr. Bodner's

family-owned entities held limited partnership interests in the Fund.  With the consent of

Platinum Management, Curtis allowed Mr. Bodner access to any litigation-related information it

had that pertained to Platinum Management or the Fund.  Mr. Bodner sought and obtained such

information from Curtis.

As shown below, and as explained in the accompanying expert report of Prof. Bruce Green, a prominent authority in legal ethics, since the Fund had no legitimate expectation that Mr. Bodner would be denied access to information about the Fund that Curtis learned while representing Mr. Bodner and Platinum Management, the fact that Curtis obtained confidential information about the Fund would not warrant Curtis's disqualification, even if (counterfactually) Curtis had represented the Fund in the 2016 Investigations.  The Motion fails on this ground as well.

Plaintiffs also argue, in the alternative, that Curtis should be disqualified because a witness from Curtis may be called to testify at trial.  Plaintiffs have not identified any testimonial evidence that can only be provided by a Curtis witness, let alone testimonial evidence that will be prejudicial to Mr. Bodner, as required for disqualification.  Even if such evidence were to surface (and there is no reason to believe it will), Mr. Bodner would still be entitled to at least have Curtis, his chosen counsel, represent him during pretrial proceedings.

Plaintiffs bear a heavy burden to establish that Curtis, which has represented Mr. Bodner in various matters since 2000, including in the 2016 Investigations, should now be disqualified from continuing to represent him.  Plaintiffs have not met that burden.  The Motion should be denied.

## STATEMENT OF FACTS

### A.    Mr. Bodner

David Bodner has been a client of Curtis since 2000.  (Declaration of Jacques Semmelman, dated January 2, 2019 ("Semmelman Decl.") ¶ 4).  Curtis has represented Mr. Bodner and his family in an array of business transactions and litigation matters.  (*Id.*).

- 3 -

B.   **Platform Management**

At relevant times, Mr. Bodner has held a minority beneficial interest (through family trusts) in Platinum Management, a Delaware limited liability company.  (Declaration of Harvey Werblowsky, dated January 1, 2019 ("Werblowsky Decl.") ¶ 7; Complaint [ECF No. 1], ¶ 37).  In the early 2000s, Curtis helped form Platinum Management for the indirect benefit of Mr. Bodner and his business partners Mark Nordlicht and Murray Huberfeld.  (Semmelman Decl. ¶ 5).

During its period of operation from inception to December 2016, Platinum Management acted as investment adviser to various investment funds.  (Semmelman Decl. ¶ 6; Werblowsky Decl. ¶ 2).  Platinum Management's employees and officers would identify investment opportunities, invest the capital of the vehicles they managed, distribute investment returns on behalf of those vehicles, and attend to regulatory, accounting, and administrative functions.  (Werblowsky Decl. ¶ 2).  Platinum Management was a robust operating company with a substantial staff of personnel serving functions such as investment management, investor relations, accounting, information technology, administrative services, human resources, and legal and compliance.  (Werblowsky Decl. ¶ 2).

C.   **The Fund**

Among the investment vehicles managed by investment managers and advisers at Platinum Management was the Fund, a limited partnership organized under the laws of the Cayman Islands.  (Semmelman Decl. ¶ 6; Werblowsky Decl. ¶ 3).  From the Fund's very inception in or about 2005, Mr. Bodner's family-owned entities have held limited partnership interests in the Fund.  (Werblowsky Decl. ¶ 8).

*The Fund never had any personnel.*  (Werblowsky Decl. ¶ 4).  It was strictly an entity that held interests in various investments chosen by investment managers and advisors at

Platinum Management, the Fund's general partner.  All decisions to invest the Fund's assets, to have the Fund transact with other persons or entities, or to have the Fund divest from any investment, were made by investment managers and advisers at Platinum Management.  These investment managers and advisers included Mr. Nordlicht, David Levy, Dan Small, and others, several of whom have been named as defendants in the Complaint, and all of whom are therefore now adverse to the Fund's Liquidators.  (Werblowsky Decl. ¶ 4).

The Complaint alleges that some of these Platinum Management investment managers and advisers, acting together with others, caused the Fund to engage in transactions for improper purposes.  Merits aside, and simply taking these allegations at face value, the decisions to engage in these transactions were not made by the Fund itself (which had no decision makers of its own), but by others on behalf of the Fund, at and acting through Platinum Management. (Werblowsky Decl. ¶ 4).

All Fund-related emails, letters, agreements, drafts, financial records, regulatory filings, and other documents of the type normally generated by a business were created and maintained by personnel at Platinum Management.  When the Fund was a party to contracts and legal instruments, the signatures on those documents were affixed by Platinum Management personnel on behalf of the Fund.  In short, ***the Fund had no confidential information independently of Platinum Management***.  (Werblowsky Decl. ¶ 6).

**D.** **Curtis's Engagements**

At various times, Platinum Management required the services of outside counsel, sometimes on its own behalf, sometimes on behalf of the Fund (or another vehicle it managed), and sometimes on behalf of both itself and the Fund.  (Semmelman Decl. ¶ 7).  In exactly two matters, Curtis represented the Fund (along with Platinum Management and other persons and entities):

- In 2009, Platinum Management appointed Curtis as litigation counsel for the Fund in connection with claims asserted against the Fund by a chapter 11 trustee in the Southern District of Florida bankruptcy of the law firm Rothstein, Rosenfeldt & Adler, and in related proceedings, all of which terminated by early 2014; and

- In 2012, Platinum Management appointed Curtis to represent the interests of the Fund in connection with an investigation by the SEC of investments by a Fund affiliate in certain variable annuity insurance contracts, which investigation concluded in 2014. (Semmelman Decl. ¶ 7; Werblowsky Decl. ¶ 9).

**These are the only two matters in which Curtis represented the Fund**.  Any suggestion that Curtis represented the Fund in other matters is incorrect.  (Semmelman Decl. ¶ 8; Werblowsky Decl. ¶ 9).[1]

Neither of those matters is "substantially related" to – or is even mentioned in – the allegations in the Complaint.  (Semmelman Decl. ¶ 9).  Plaintiffs do not contend otherwise.

Because the Fund had no personnel, all communications between Curtis and the Fund were conducted with Platinum Management personnel.  These included Mr. Nordlicht and Mr. Levy, both of whom are named as defendants in this action.  (Semmelman Decl. ¶ 11).

Separate and apart from those two engagements, Curtis represented Platinum Management – *but not the Fund* – in a variety of litigation, regulatory, and business matters.[2]

---

[1] Curtis had also agreed to represent the Fund and other entities in an arbitration commenced by a Fund investor (the "Stadtmauer Arbitration").  While Platinum Management initially requested that Curtis represent the Fund in the Stadtmauer Arbitration, and Curtis was ready to do so, Platinum Management subsequently informed Curtis that the JOLs' counsel, Holland & Knight LLP, would represent the Fund in that matter.  Curtis continued as counsel in the Stadtmauer Arbitration solely on behalf of its non-Fund clients.  (Semmelman Decl. ¶ 8, n.1).

(Semmelman Decl. ¶ 10).  In the course of its numerous representations, Curtis obtained from

Platinum Management documents and information relevant to Curtis's representation.  To the

extent those representations were related in any way to Platinum Management's management of

the Fund, Curtis's sole source of access to documents and information relating to the Fund was

through Platinum Management and its personnel.  (Semmelman Decl. ¶ 12).  Thus, it is

impossible that Curtis learned anything about the Fund in the course of its representations that

was not also known to, or at least accessible by, many individual defendants in this action,

including Messrs. Nordlicht, Levy, and others.  (Semmelman Decl. ¶ 12).

      Moreover, because Mr. Bodner held a beneficial interest in Platinum

Management, and because his family-owned entities held limited partnership interests in the

Fund, Mr. Bodner would inquire of Curtis from time to time about litigation matters (including

government investigations) that Curtis was handling on behalf of Platinum Management, the

Fund, or both.  (Semmelman Decl. ¶ 13).  Curtis would respond openly and without restriction.

Any information known to Curtis about these litigation matters was available to Mr. Bodner.

This sharing of information was known to, and approved by, a Platinum Management in-house

counsel, Harvey Werblowsky, and by senior persons at Platinum Management, including Mr.

Nordlicht.  (Semmelman Decl. ¶ 13; Werblowsky Decl. ¶ 9).

      Additionally, Mr. Bodner was able to call Mr. Werblowsky (or others at Platinum

Management) to be debriefed as to any matters handled by Curtis.  (Werblowsky Decl. ¶ 9).

---

[2] Plaintiffs incorrectly assert that "as of this date, Plaintiffs do not know the full extent of Curtis
Mallet's representations. Plaintiffs have asked Curtis Mallet to identify all such matters and to
provide all related engagement letters and billings, but Curtis Mallet has yet to do so. Thus, there
may be additional substantially related representations beyond what is identified herein."  (JOL
Mem. n.2).  To the contrary, on July 21, 2017, Curtis wrote to counsel for the JOLs, listing and
describing each of Curtis's prior representations of Platinum entities.  (Semmelman Decl. Ex. A).
Curtis referred Plaintiffs' counsel to this letter in correspondence dated December 13 and 18,
2018 (Semmelman Decl. Exs. C & F).

From time to time, Mr. Bodner did in fact call Mr. Werblowsky for such debriefings, and Mr. Werblowsky shared information with him openly and without restriction.  Likewise, Mr. Werblowsky always knew that Mr. Bodner could call Curtis for debriefings.  Neither Mr. Werblowsky, nor anyone else at Platinum Management, imposed any restriction on Curtis's ability to keep Mr. Bodner as informed as he wished to be with respect to such litigation matters. (Werblowsky Decl. ¶ 9).

**E.      Beechwood**

In 2016, Curtis was retained by Mr. Bodner, as well as Messrs. Nordlicht, Levy, and Huberfeld, in connection with their sale of stock in a reinsurance business called "Beechwood" to entities owned or controlled by Beechwood principals Mark Feuer and Scott Taylor.  (Semmelman Decl. ¶ 15).  *The Fund was neither a Curtis client nor a party to that transaction.*  Curtis has *never* represented Platinum Management, any individual, or the Fund in any transaction between the Fund and Beechwood.  (Semmelman Decl. ¶ 15).

On one occasion in March 2016, Curtis provided to the U.S. Attorney's Office for the Southern District of New York an oral summary, by telephone, of historical transactions between Beechwood and entities advised by Platinum Management, including the Fund. (Semmelman Decl. ¶ 16).  The inquiry arose in the context of the government's investigation, which started in 2015 (the "SDNY Investigation"), into alleged improper payments made to the head of the Corrections Officers Benevolent Association ("COBA").  In the SDNY Investigation, Curtis represented Platinum Management and Murray Huberfeld.  (Semmelman Decl. ¶ 16).



To follow up on Mr. Capone's request for historical transactional information,

Mr. Hertzberg consulted with Mr. Werblowsky and an accountant at Platinum Management, and,

on March 9, 2016, reported back to Mr. Capone what he had learned from Platinum Management

about historical transactions between Platinum funds and Beechwood entities, namely the dates,

parties, and assets transferred in both directions.  (Semmelman Decl. ¶ 18).  There was no other

---

[3] Ms. Sareva took contemporaneous notes of the calls, and memorialized them by email to Mr. Hertzberg.  (Semmelman Decl. ¶ 17 n.3).  Mr. Hertzberg forwarded Ms. Sareva's email summaries to Mr. Werblowsky at Platinum Management on March 3, 2016 with a cover memo. Without the consent of either Platinum Management or Curtis, Plaintiffs have included Ms. Sareva's privileged (and work product) notes as part of their Motion.  (*See* Exhibit 6 to the Declaration of Plaintiff Martin Trott ("Trott Decl.")).  Curtis has inquired of Plaintiffs' counsel how it obtained privileged communications between Curtis and its then-client, Platinum Management.  (Semmelman Decl. Ex. H).  Plaintiffs' counsel has told Curtis that it lacks standing to even ask the question, and Curtis has not received a satisfactory response to its inquiry.  (Semmelman Decl. Ex. I).  As officers of the Court, given the potential seriousness of the issue, Curtis is making the Court aware of it.  Mr. Bodner reserves all rights.

occasion during the SDNY Investigation in which Curtis was asked about Beechwood. (Semmelman Decl. ¶ 18).

**F.**    **The 2016 Investigations**

On June 8, 2016, Mr. Huberfeld was indicted in the COBA matter, and Curtis, following his arraignment, brought in separate counsel for Mr. Huberfeld, and continued representing Platinum Management in several investigatory and regulatory matters. (Semmelman Decl. ¶ 19).  Specifically: (i) Mr. Capone in the SDNY Investigation sought additional information from Platinum Management by grand jury subpoena; (ii) prosecutors in the Eastern District of New York served grand jury subpoenas on Platinum Management and certain individuals (the "EDNY Investigation"); (iii) Platinum Management received subpoenas or requests from the Commodities and Futures Trading Commission ("CFTC"); and (iv) the SEC's Office of Compliance, Inspection and Examinations ("OCIE") opened a new examination of Platinum Management under Section 204 of the Investment Advisers Act of 1940.  (The investigations referenced in (i) – (iv) are referred to herein as the "2016 Investigations"). (Semmelman Decl. ¶ 19; Werblowsky Decl. ¶ 10).  The Fund did not receive any subpoenas or requests in connection with the 2016 Investigations.  (Semmelman Decl. ¶ 19).

In connection with the 2016 Investigations, Platinum Management retained Dechert LLP, and directed Curtis and Dechert to divide the representations.  (Semmelman Decl. ¶ 20).  ***Curtis did not represent the Fund in the 2016 Investigations.***  (Semmelman Decl. ¶¶ 20, 23; Werblowsky Decl. ¶ 10).

In the course of its work on the 2016 Investigations, Curtis's sole source of documents and information relating to the Fund was through Platinum Management personnel. There was no Fund-related information obtained by Curtis that did not come through Platinum Management.  (Semmelman Decl. ¶ 21).

Curtis represented Mr. Bodner and Platinum Management in the EDNY Investigation, and no one else.  Curtis attorneys specifically addressed the potential for conflict with both Mr. Bodner and with Platinum Management, and both consented to the joint representation.  (Semmelman Decl. ¶ 22; Werblowsky Decl. ¶ 10).  With respect to Platinum Management, Curtis discussed the matter with Mr. Werblowsky and with Platinum Management's Chief Legal Officer, Suzanne Horowitz.  Curtis specifically advised them of the potential for conflict in joint representations, and proposed that if a conflict arose between Platinum Management and Mr. Bodner, Curtis could discontinue representing Platinum Management and continue representing Mr. Bodner even in matters where the two were adverse. (Semmelman Decl. ¶ 22; Werblowsky Decl. ¶ 10).  Mr. Werblowsky and Ms. Horowitz consented to Curtis proceeding under those terms of engagement.[4]  (Semmelman Decl. ¶ 22; Werblowsky Decl. ¶ 10).

**G.    This Motion**

On December 13, 2018, counsel for Plaintiffs sent Curtis a letter demanding that Curtis withdraw from its representation of Mr. Bodner, due to a supposed "clear conflict of

---

[4] Plaintiffs unfairly criticize Curtis for failing to obtain a conflict waiver from "non-conflicted agents of PPVA."  (JOL Mem. at 12).  Curtis did not seek a waiver from PPVA (the Fund) for four independent reasons:  (i) the Fund, which had not received any subpoenas or requests, was not the firm's client in connection with the 2016 Investigations, so there was no reasonable expectation of any conflict between that entity and the firm's clients Platinum Management and Mr. Bodner; (ii) Curtis had no reason to believe (and still has no reason to believe) that Ms. Horowitz or Mr. Werblowsky were "conflicted" in any respect or disloyal to the Fund; (iii) the Fund had no employees and was solely managed and operated by its general partner, Platinum Management, so there was no one other than Platinum Management's duly appointed officers and personnel for Curtis to advise; and (iv) within weeks of Curtis's retention in connection with the 2016 Investigations, Platinum Management placed the Fund into a voluntary liquidation, resulting in the appointment of the JOLs (independent fiduciaries for the Fund) and the retention by the JOLs of Holland & Knight LLP to represent the Fund's interests.  Holland & Knight and Curtis communicated on many matters in the course of the 2016 Investigations; neither the JOLs nor Holland & Knight ever expressed the view that Curtis was counsel to the Fund, or that Curtis was in any way conflicted.  (Semmelman Decl. ¶ 22 n.5 & Ex. J).

interest[.]"  (Semmelman Decl. Ex. C at 1).  The letter falsely alleged that Curtis had represented

the Fund in an SEC investigation related to this action, and in the "capitalization and withdrawal

of capital in respect of Beechwood."  (*Id*. at 2).  The letter threatened that "any resistance to a

motion to disqualify would be frivolous under Rule 11."  (*Id*. at 3).

      Curtis responded with good faith efforts to correct Plaintiffs' erroneous view of

the facts, advising that the firm (i) never represented the Fund in the capitalization and

withdrawal of capital from Beechwood, (ii) had only represented the Fund in two matters that

were not substantially related to this action, and (iii) there was never an informational barrier that

shielded the Fund's information from Platinum Management, and that Mr. Bodner likewise had

access to Fund information obtained by Curtis.  (Semmelman Decl. Exs. D & F).

      Nonetheless, on December 26, 2018, Plaintiffs filed their Motion.

## ARGUMENT

      Under well-established principles in this Circuit, disqualification motions are

generally disfavored, strictly scrutinized, and infrequently granted.  *See Board of Education v.

Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (a court should be hesitant to disqualify counsel

unless it believes that "an attorney's conduct tends to taint the underlying trial") (internal citation

omitted); *see also Arista Records LLC v. Lime Grp. LLC*, No. 06 Civ. 5936, 2011 U.S. Dist.

LEXIS 17434, at *18-19 (S.D.N.Y. Feb. 22, 2011) ("District courts have broad discretion to

disqualify attorneys, but it is a drastic measure that is viewed with disfavor in this Circuit. . .

[m]otions to disqualify . . . are generally disfavored in this Circuit. . . .") (internal citation and

quotation marks omitted).  Indeed, the "party seeking disqualification must meet a heavy burden

in order to prevail."  *Bacote v. Riverbay Corp.*, No. 16 Civ. 1599 (GHW), 2017 U.S. Dist.

LEXIS 35098, at *15 n.6 (S.D.N.Y. Mar. 10, 2017) (internal citation and quotation marks

omitted); *see also Arista Records LLC*, 2011 U.S. Dist. LEXIS 17434, at *19; Declaration of

Prof. Bruce Green, dated January 2, 2019 (the "Green Decl.") ¶ 10.

> The Second Circuit has explained that:

> there is a particularly trenchant reason for requiring a high standard of
> proof on the part of one who seeks to disqualify his former counsel, for in
> disqualification matters we must be solicitous of a client's right freely to
> choose his counsel -- a right which of course must be balanced against the
> need to maintain the highest standards of the profession.

*Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (internal citation omitted).

Further, disqualification motions "are often interposed for tactical reasons[.]" *Id.* at 792 (internal

citation and quotations omitted); Green Decl. ¶ 10.  Accordingly, "[i]n view of their potential for

abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict

scrutiny." *Scantek Med., Inc. v. Sabella*, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008).

Plaintiffs seek disqualification of Curtis on two grounds.  First, Plaintiffs allege

that, in the course of representing the Fund, Curtis acquired relevant information that Curtis is

duty-bound to keep confidential, but could use in this litigation for the benefit of Mr. Bodner and

to the detriment of the Plaintiffs.  Second, Plaintiffs argue that Curtis must be disqualified in

accordance with the advocate-witness rule.  Both arguments fail.

## I.      CURTIS IS NOT CONFLICTED

A disqualification motion may only be granted if:  (1) the moving party is a

former client of its opponent's counsel; (2) there is a "substantial relationship" between the

subject matter of the counsel's prior representation of the moving party and the issues in the

present lawsuit; and (3) counsel is likely to have had access to relevant privileged information

during its prior representation.  *See Evans*, 715 F.2d at 791 (2d Cir. 1983).  Plaintiff has failed to

carry its heavy burden in showing any "substantial relationship" between Curtis's prior two

representations of the Fund and the issues in this action.

- 13 -

Moreover, even if (counterfactually) Curtis had represented the Fund in the course of the 2016 Investigations, the Motion would fail for an additional reason:  Mr. Bodner, who Curtis indisputably represented in the 2016 Investigations, had access to all of Curtis's information, including any information related to the Fund.  There was no information barrier that shielded any Fund-related information from Mr. Bodner.  As a result, there is no confidential Fund information in the possession of Curtis that was unavailable to Mr. Bodner. As shown below, this would defeat the Motion even if Curtis had represented the Fund in the untrue manner described by Plaintiffs.

A.    **Curtis Has Not Represented the Fund in Any
Matter "Substantially Related" to this Action**

Curtis has only represented the Fund in two matters, neither of which is any way related – let alone "substantially related" – to this action.  (Semmelman Decl. ¶¶ 8-9; Werblowsky Decl. ¶ 9; Green Decl. ¶¶ 12, 24).  The first matter involved a litigation in Florida arising out of the bankruptcy of a law firm; the second involved an SEC investigation into a Fund affiliate's investment in variable annuity insurance contracts; both matters concluded in 2014.  (Semmelman Decl. ¶ 7; Werblowsky Decl. ¶ 9).  Plaintiffs do not argue that there is any "substantial relationship" between either of these matters and this action.

Instead, Plaintiffs invent the claim that Curtis represented the Fund in other matters, focusing mainly on the 2016 Investigations.  But that is demonstrably untrue, and Plaintiffs have offered no evidence to support that contention.

Importantly, Plaintiffs' Motion is not supported by any sworn factual narrative. And even though Plaintiffs have somehow obtained access to the entirety of Platinum Management's document and email server — including *privileged* communications between Curtis and its clients Platinum Management and some of its members and employees — they

- 14 -

have identified only a handful of documents with which they try to support their failed claim of conflict.

1.    *Exhibits 1, 2, and 3 Do Not Support Plaintiffs' Contention that the Fund Paid Curtis's Fees in a Substantially Related Matter*

Plaintiffs contend that Curtis must have represented the Fund in connection with the 2016 Investigations because the Fund paid a portion of Curtis's bills: "In total, Curtis Mallet billed approximately $15,000,000.00 in fees and expenses to Platinum-related entities and individuals for legal services, with at least $9,379,277.43 of this amount attributable to legal work performed for PPVA by Curtis Mallet from April 2009 through August 2016." (JOL Mem. at 2).  For factual support, they cite to Exhibits 1, 2, and 3 to the Trott Declaration.

These exhibits prove the exact opposite.  According to Plaintiffs, Exhibit 1 shows how Platinum Management internally allocated legal expenses among funds and entities it advised and managed.  The most recent Curtis charge allocated to the Fund (Column I in the spreadsheet) was in April 2016, the sum of $521 for "audit letters," *i.e.*, Curtis's response to an audit request from the Fund's auditors.  [ECF 46-1 at 10].  Prior to that, the last charge was in August 2015, the sum of $103.21 for an old payable due under what the spreadsheet calls "Banyon" – which is how Platinum Management referred to the unrelated Florida bankruptcy matter that concluded in 2014.  [ECF 46-1 at at 9].  Thus, according to Exhibit 1, *not a single charge associated with the 2016 Investigations was ever allocated to the Fund.*[5]

---

[5] Plaintiffs presented Exhibit 1 to the Court in a misleading format.  [ECF 46-1].  For the Court to see how Platinum Management allocated expenses to the Fund in 2016 — which was the precise purpose for which Plaintiffs offered the document — the Court would have to puzzle together side by side pages 1, 5, 6, 9, 10 and 14.  Curtis will have a readable version of the document available to the Court at oral argument.

Exhibits 2 and 3 [ECF 46-2 and -3] show payments to Curtis in 2011 and 2014 in respect of prior matters that Plaintiffs do not contend were substantially related to this Action. All of these exhibits underscore the falsity of Plaintiffs' contention.[6]

2.    *Exhibit 5 Does Not Support Plaintiffs' Contention that Curtis Represented the Fund in an SEC Examination of Platinum Management*

Exhibit 5 is an email chain from 2014 that includes a plainly marked "Privileged and Confidential Communication" between Joshua Kramer-Eisenbud and Curtis.  Platinum Management's Mr. Werblowsky is among those copied.  As shown in the email chain, Mr. Kramer-Eisenbud was Director of Operations at Platinum Credit Management LP ("PCM"), another entity *that was not the Fund*.  PCM was a "relying adviser" for regulatory purposes, *i.e.*, a sub-adviser to Platinum Management, which advised Platinum Partners Credit Opportunities Master Fund LP, an entirely separate fund that is outside the jurisdiction of the JOLs.  Mr. Kramer-Eisenbud's draft response – which he prepared in connection with an examination by OCIE of "Platinum Management and Relying Advisers" (again, *not the Fund*) – was prepared on behalf of PCM and Platinum Management.  (Semmelman Decl. ¶ 25 & Ex. A at 3).

3.    *Exhibit 6 Does Not Support Plaintiffs' Contention that Curtis Represented the Fund in the 2016 Investigations*

In another attempt to falsely portray Curtis as representing the Fund in connection with the 2016 Investigations (JOL Mem. at 4), Plaintiffs quote from Exhibit 6 – one of the privileged March 2016 emails written by Curtis's Ms. Sareva.  That email, which Plaintiffs falsely portray as arising in the EDNY Investigation, was sent three months *before* the EDNY

---

[6] Moreover, even assuming (counterfactually) that the Fund had paid Curtis for its work for Platinum Management, that would establish nothing.   (Green Decl. ¶ 13) (citing *Priest v. Hennessy*, 51 N.Y.2d 62, 70-71 (1980) ("Nor does the payment of legal fees by a third person, in and of itself, create an attorney-client relationship between the attorney and his client's benefactor sufficient to sustain a claim of privilege") and *Moran v. Hurst*, 32 A.D.3d 909, 911-12, 822 N.Y.S.2d 564 (2d Dep't 2006) (same)).

Investigation surfaced in June 2016.  (Semmelman Decl. ¶ 24).  The email arose earlier in the separate SDNY Investigation.  More importantly, in that email (sent on March 2, 2016 at 5:31pm), Ms. Sareva refers twice to "Platinum *employees*."  (Trott Decl. Ex. 6 at 2) (emphasis added).  Plaintiffs block quote that email, and then assert that it shows "that PPVA (Platinum) was, through 2006 [*sic*], just prior to the Cayman Liquidation, considered by Curtis Mallet to be Curtis Mallet's primary client."  (JOL Mem. at 6).  But Ms. Sareva's email is referring to Platinum Management, not the Fund.  (Semmelman Decl. ¶ 24).  The proof is that at the time, Platinum Management had employees, and the Fund never did.[7]

4.      *The Other Exhibits Do Not Support Plaintiffs' Contentions*

Finally, none of Plaintiffs' remaining exhibits support Plaintiffs' contentions. Exhibit 4 is a set of engagement letters that involve unrelated matters and that do not reflect any engagement of Curtis by the Fund in connection with anything substantially related to this action.  Exhibit 7, a privileged and work product communication between Curtis and Dechert, does not show any work done by Curtis on behalf of the Fund.  Exhibit 8 is a set of Dechert invoices, not Curtis invoices.  Exhibits 9 and 10 relate to Curtis's work on behalf of Mr. Bodner in connection with the Beechwood stock sale, and Plaintiffs expressly concede that Curtis did not represent the Fund in that regard.  (JOL Mem. at 8-9).

---

[7] In a similar effort to confuse the timing and context of Exhibit 6, Plaintiffs tell the Court that Ms. Sareva's email memorializes a conversation between Mr. Hertzberg and a lawyer at Dechert. (JOL Mem. at 5) ("Ms. Sareva tells Hertzberg that co-counsel at Dechert '…. asked if any Platinum employees are officers of any Beechwood entities'")).  This is demonstrably false. Dechert did not join the legal team until June 2016.  (Semmelman Decl. ¶ 24 n.6).  As is evident on its face, Ms. Sareva's email is memorializing a conversation between Mr. Hertzberg and SDNY AUSA Russell Capone, not anyone at Dechert.

In sum, as noted above, Plaintiffs somehow have gained access to privileged Curtis communications.  Even so, they have uncovered no evidence that establishes that Curtis represented the Fund in anything other than the two unrelated matters described above.[8]

B.      **There Was No Relevant Informational<br>Barrier Between the Fund and Bodner**

Even if one were to pretend that Curtis had represented the Fund in the manner falsely characterized by Plaintiffs, Curtis would still not be disabled from representing Mr. Bodner because there was never an informational barrier between the Fund and Mr. Bodner as to matters where Curtis was counsel.

In the leading case *Allegaert v. Perot*, 565 F.2d 246 (2d Cir. 1977), the Second Circuit affirmed  a decision denying a motion to disqualify.  The Court of Appeals held that "before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he *could* have received information which his former client might reasonably have assumed the attorney would withhold from his present client."  *Id.* at 250 (emphasis in original).  In affirming the district court's denial of the motion to disqualify, the Second Circuit found that the movant could not have thought "that any information given to the law firms conceivably would have been held confidential from the primary clients of the firms."  *Id.*; *see also Intelstat, Ltd. v. Int'l Telcoms Satellite Org.*, No. 06 Civ. 10165 (JSR), 2007 U.S. Dist. LEXIS 23113, at *3 (S.D.N.Y. Mar. 16, 2007) (Rakoff, J.) (denying motion to disqualify where "whatever confidential information [the law firm] may have acquired in the course of its

---

[8] Lacking evidence, Plaintiffs resort to rhetoric, seeking to conflate the Fund with Platinum Management by arguing that Curtis performed continuous work "on behalf of the Platinum Partners enterprise" (JOL Mem. at 2); that Curtis "represented the Platinum Partners enterprise in connection with" the EDNY Investigation (*id.* at 4); and that the Sareva email (Trott Decl. Ex. 6) "illustrates the breadth and scope of Curtis Mallet's representation of the Platinum Partners enterprise" (JOL Mem. at 5).  Plaintiffs' rhetoric cannot change the facts.  Curtis represented the Fund in only two matters, neither of which is related in any way to this action.

representation of the parent is no more than what [the current client's] current employees, carried

over from the parent, already know") (citing *Allegaert*, 565 F.2d at 250.).  The Second Circuit

also took into account that the law firms had a longstanding relationship with their client, and

that they had "not changed sides from a former client to a current, adverse client[.]"  *Allegaert*,

565 F.2d at 251.

These decisions are dispositive.  Mr. Bodner has been a Curtis client since 2000.

(Semmelman Decl. ¶ 4).  Indeed, Mr. Bodner was represented by Curtis with respect to the 2016

Investigations, the main focus of Plaintiff's Motion.  (Semmelman Decl. ¶ 22; Werblowsky Decl.

¶ 10).  Curtis is not switching sides.  It is beyond dispute that at all relevant times, the Fund's

information was fully accessible by Platinum Management and Mr. Bodner; Mr. Bodner had the

practical ability to access any Fund information in connection with litigation matters in which

Curtis served as counsel, and duly exercised this right.  (Semmelman Decl. ¶ 13; Werblowsky

Decl. ¶ 9; Green Decl. ¶¶ 16, 20).  As a result, there is no confidential Fund information in the

possession of Curtis that was unavailable to Mr. Bodner.

Plaintiffs argue that, insofar as the Fund previously consented to sharing

information with Platinum Management and its employees and members, as well as with

investors such as Mr. Bodner, the Fund was not adequately informed of the risks, and that

consent was not given on the Fund's behalf by a disinterested representative.  (JOL Mem. at 7,

11-12) (citing *Burda Media, Inc. v. Blumenberg*, No. 97 Civ. 7167(RWS), 1999 WL 1021104

at*4 (S.D.N.Y. Nov. 8, 1999).  Again, this is all in the counterfactual context, since Curtis did

not represent the Fund in any substantially related matter.  In actuality, Curtis was attentive to its

disclosure obligations:  it provided disclosures to Platinum Management (its client) with respect

to its joint representation of Mr. Bodner (its only other client), and provided mirror-image

- 19 -

disclosures to Mr. Bodner.  (Semmelman Decl. ¶ 22; Werblowsky Decl. ¶ 10).  But assuming

hypothetically it had also represented the Fund, the fact remains that the Fund had no personnel

to inform.  (Semmelman Decl. ¶ 11; Werblowsky Decl. ¶ 4).  The sole possible channel of

communication between Curtis and the Fund was through the Fund's general partner, Platinum

Management.  If the Fund now believes that individuals at its general partner were not

trustworthy because they were involved in an alleged "looting" of the Fund (JOL Mem. at 12),

the Fund can pursue that claim against Platinum Management.  But this does not retroactively

render improper Curtis's handling of its representational duties to its clients.  Nor does it warrant

disqualification of Curtis.

 In a further attempt to distinguish *Allegaert*, Plaintiffs argue that, because Mr.

Bodner owed fiduciary duties to the Funds, rather than the other way around, it would be

inappropriate to describe Mr. Bodner as the "primary client" in accordance with *Allegaert*.  (JOL

Mem. at 12).  That is not correct.  Mr. Bodner has been a Curtis client since 2000.  (Semmelman

Decl. ¶ 4).  Plaintiffs claim that the Fund only became a Curtis client in 2009, nearly a decade

later.  (JOL Mem. at 2).  And Plaintiffs do not explain what fiduciary obligations Mr. Bodner

owed the Fund, where he was neither an employee, officer or director of the Fund or of Platinum

Management.  (Werblowsky Decl. ¶ 7).

 Nor is there case law support for Plaintiffs' position.  Plaintiffs rely upon *Rosman

v. Shapiro*, 653 F. Supp. 1441 (S.D.N.Y. 1987), but that case repudiates their position.

 In *Rosman*, two individuals formed a closely-held corporation, and jointly

consulted with counsel.  The individuals subsequently had a falling out, and litigation ensued.

Counsel appeared in the litigation on behalf of one of the individuals.  The district court

(Sprizzo, J.) correctly refused to disqualify counsel on the basis of Canon 4, which provided that

a "lawyer should preserve the confidence and secrets of a client." *Rosman*, 653 F. Supp. at 1445. Quoting *Allegaert*, the court noted that disqualification under Canon 4 was "only warranted when the 'attorney was in a position where he *could* have received information which his former client might reasonably have assumed the attorney would withhold from his present client.'" *Id.* at 1446 (emphasis in original).  Since there was no such expectation, the court refused to disqualify counsel on that basis.

The court found, however, that on the facts of the case there was an "appearance of impropriety" under Canon 9, and disqualified counsel on that ground.  The court acknowledged that the Second Circuit had cautioned that courts should be "quite hesitant" to disqualify counsel under Canon 9, *id.* at 1446 n.10, and took pains to note that "the Court concludes that this is one of those rare cases where disqualification is appropriate solely on Canon 9 grounds." *Id.*  Here, Plaintiffs have not invoked Canon 9 or any analogous contemporary ethical rule as a basis for disqualification, and there is no basis for doing so.[9]

In sum, inasmuch as there was never any information barrier between the Fund and Mr. Bodner with respect to Curtis's work, the Fund had no expectation that any of its information would be withheld from Mr. Bodner.  Accordingly, even if (counterfactually) Curtis

---

[9] In explaining why, unlike in *Allegaert*, Canon 9 warranted disqualification, the *Rosman* court distinguished its facts from those in *Allegaert*: "unlike the instant case, in *Allegaert* there was no appearance of impropriety when, after a dispute arose between the two joint venturers, the law firm continued to represent its long-standing clients against the other joint venturer." *Rosman* at 1446 n.9.

had represented the Fund in the manner characterized by Plaintiffs, their Motion would still fail, and would still have to be denied.[10]

## II.      THERE IS NO BASIS TO DISQUALIFY CURTIS UNDER THE ADVOCATE-WITNESS RULE

Alternatively, Plaintiffs argue that Curtis should be disqualified from representing Mr. Bodner in accordance with the advocate-witness rule.  At this early juncture in the case, Plaintiffs' argument is, at best, premature.  *See Prout v. Vladek*, 316 F. Supp. 3d 784, 809-10 (S.D.N.Y. 2018) (Rakoff, J.) ("The witness-advocate rule is concerned with preventing potential taint at trial.  Thus, where there has been only limited discovery and it is not yet clear the extent to which an attorney's testimony might be necessary or prejudicial, . . . motions to disqualify counsel are premature.") (internal citation and quotation marks omitted); *see also Interpharm, Inc. v. Wells Fargo Bank*, No. 08 Civ. 11365, 2010 U.S. Dist. LEXIS 2880, at *17 (S.D.N.Y. Mar. 25, 2010) ("[T]he matter is still a long way from trial.  Discovery has yet to be completed, and, in all probability, summary judgment motions will have to be resolved before the matter is ready for trial.").

Plaintiffs acknowledge that their request is premature (JOL Mem. at 14), and speculate that Curtis attorneys will provide crucial trial testimony at a later juncture in the case. But any conjecture of this sort, at this early stage, does not justify disqualifying a party's chosen counsel.  (Green Decl. ¶ 31).

---

[10] Curtis' disqualification is unwarranted for the additional reason that any Fund information obtained by Curtis through its prior representations, including with respect to the 2016 Investigations, will likely be disclosed in routine discovery, and/or shared among the defendants in accordance with a joint defense agreement.  (Green Decl. ¶ 23) (citing *Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*, 542 F. Supp. 2d 296, 315 (S.D.N.Y. 2008) (disqualification is not warranted where "there is no indication that [counsel] had access to confidential information that would not otherwise be available through the discovery process")).

Plaintiffs have likewise failed to satisfy their heavy burden of showing both that Curtis's testimony is both necessary and prejudicial to Mr. Bodner.  (Green Decl. ¶ 29) (citing *Prout*, 316 F. Supp. 3d at 809 ("Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to strict scrutiny, particularly motions under the witness advocate rule.") (internal citation and quotation marks omitted)).  Plaintiffs offer no sworn declaration that sets forth how Curtis's testimony will be necessary *or* prejudicial to Mr. Bodner. Instead, Plaintiffs merely assert:  "it seems clear enough, at least to Plaintiffs, that there will have to be trial testimony from one or more Curtis Mallet lawyers and that at least some of the testimony will of necessity be harmful to Mr. Bodner."  (JOL Mem. at 14).  Plaintiffs do not explain that statement.  It is not at all clear.

Despite conceding that Curtis did not represent the Fund in connection with the Beechwood stock sale, Plaintiffs have included as Exhibit 10 to the Trott Declaration an invoice that the firm sent to Mr. Levy at his Platinum Management email address.  (JOL Mem. at 8; Trott Decl. Ex. 10).  Plaintiffs claim that the Curtis attorneys are fact witnesses with respect to that matter, but fail to explain why the principals to that transaction could not testify for themselves, such that the Curtis attorneys' recollection of the transaction would be merely cumulative.  *See Ello v. Singh*, No. 05-CV-9625, 2006 U.S. Dist. LEXIS 55542, at *22-23 (S.D.N.Y. July 31, 2006) ("A lawyer's testimony is necessary *only* if there are no other witnesses to the circumstances at issue.") (internal citation and quotations omitted) (emphasis in original). Plaintiffs further speculate that "a number of the Defendants may assert the Fifth Amendment right against self-incrimination" (JOL Mem. at 12), but that conjecture, again, is entirely unsupported.  The only two principals in that transaction to have been charged criminally in

connection with Beechwood — where the charges have nothing to do whatsoever with the stock sale referenced in Exhibit 10 — are Messrs. Nordlicht and Levy.  (Semmelman Decl. ¶ 15 n.2).

Finally, Plaintiffs have failed to demonstrate that any Curtis attorney's testimony would be prejudicial to Mr. Bodner.  *See Reyes v. Golden Krust Caribbean Bakery, Inc.*, No. 15 Civ. 7127, 2016 U.S. Dist. LEXIS 121623, at *29 (S.D.N.Y. Sep. 1, 2016) ("Prejudice exists where [counsel's] testimony would be sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.") (internal citations and quotation marks omitted).  Plaintiffs have not even attempted to explain how a Curtis attorney could have testimony adverse to Mr. Bodner.  They have thus failed to carry their burden in demonstrating that Curtis should be disqualified (even later on this litigation) in accordance with the advocate-witness rule.

## **CONCLUSION**

Mr. Bodner respectfully requests that the Court deny the Motion.

Dated:   New York, New York
         January 2, 2019

Respectfully submitted,

CURTIS, MALLET-PREVOST,
  COLT & MOSLE LLP

By:   */s/ Jacques Semmelman*
      Eliot Lauer
      Jacques Semmelman
      Gabriel Hertzberg
      101 Park Avenue
      New York, New York 10178-0061
      (212) 696-6000

      *Attorneys for Defendant David Bodner*