Eliot Lauer
Jacques Semmelman
Gabriel Hertzberg
CURTIS, MALLET-PREVOST,
 COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
Telephone: 212-696-6000
Facsimile: 212-697-1559
Email: elauer@curtis.com
        jsemmelman@curtis.com
        ghertzberg@curtis.com

*Attorneys for Defendant David Bodner*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| MARTIN TROTT and CHRISTOPHER SMITH, as Joint Official Liquidators and Foreign Representatives of PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (in OFFICIAL LIQUIDATION) and PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (in OFFICIAL LIQUIDATION), | : | No. 18 Civ. 10936 (JSR) |
| Plaintiffs, | : | |
| v. | : | |
| PLATINUM MANAGEMENT (NY) LLC, *et al.*, | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DECLARATION OF HARVEY Z. WERBLOWSKY

HARVEY Z. WERBLOWSKY, pursuant to 28 U.S.C. § 1746, declares as

follows:

1.     I am an attorney at law.  I have been admitted to practice in the States of

New York and New Jersey for more than 40 years.  From 2007 to 2016, I was employed by

Platinum Management (NY) LLC ("Platinum Management") and, at various times, its affiliated

investment advisers operating under the "Platinum Partners" trade name.  Prior to that, I was a

partner in the law firm McDermott, Will & Emery LLP for more than 10 years, and an attorney

in the Office of the Inspector General, U.S. Department of Health and Human Services, for 5

years.

      2.     During its period of operation from inception (in or about 2003) to

December 2016, Platinum Management acted as investment adviser to various investment funds.

Platinum Management's employees and officers would identify investment opportunities, invest

the capital of the funds they managed, distribute investment returns on behalf of those vehicles,

and attend to regulatory, accounting, and administrative functions.  Platinum Management was a

robust operating company with a substantial staff of personnel serving functions such as

investment management, investor relations, accounting, information technology, administrative

services, human resources, and legal and compliance.

      3.     Among the investment funds managed by investment managers and

advisers at Platinum Management was Platinum Partners Value Arbitrage Fund LP, a limited

partnership organized under the laws of the Cayman Islands (the "Fund").  The Fund was formed

in or about 2003.  Platinum Management was the general partner of the Fund.

      4.     The Fund never employed personnel.  It held interests in various

investments chosen by investment managers and advisors at Platinum Management.  All

decisions to invest the Fund's assets, to have the Fund transact with other persons or entities, or

to have the Fund divest from any investment, were made by investment managers and advisers at

Platinum Management.  These investment managers and advisers included Mark Nordlicht,

David Levy and others, several of whom have been named as defendants in the Complaint in this

action.

5.      The Complaint alleges that some of these Platinum Management investment managers and advisers, acting together with other persons who had beneficial interests in Platinum Management, caused the Fund to engage in transactions for improper purposes.  Merits aside, and simply taking these allegations at face value, the decisions to engage in these transactions were not made by the Fund itself (which had no decision makers of its own), but by others on behalf of the Fund, at and acting through Platinum Management.

6.      All Fund-related emails, letters, agreements, drafts, financial records, regulatory filings, and other documents of the type normally generated by a business were created and maintained by personnel at Platinum Management.  When the Fund was a party to contracts and legal instruments, the signatures on those documents were affixed by Platinum Management personnel on behalf of the Fund.  The Fund had no confidential information independently of Platinum Management.  To the contrary, because the Fund was an entity with no personnel, and was managed by investment advisers at Platinum Management, Platinum Management (through its investment managers and advisors, including those identified above) necessarily had all information pertaining to or belonging to the Fund.

7.      Since its founding, David Bodner has held a minority beneficial interest in Platinum Management.  Mr. Bodner was never employed by Platinum Management, or any of its affiliates, in any capacity, and he never held a management, officer or director-level position with any of them.

8.      Likewise, from the Fund's very inception, Mr. Bodner's family-owned entities have held limited partnership interests in the Fund, in addition to his beneficial interest in Platinum Management.

9.      On several occasions during my tenure at Platinum Management, we selected Eliot Lauer of Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis") to act as counsel on litigation matters.  In only two matters was Curtis appointed to represent the Fund:  (i) in 2009, in connection with claims asserted against the Fund by a chapter 11 trustee in the Southern District of Florida bankruptcy of the law firm Rothstein, Rosenfeldt & Adler, and in related proceedings, all of which terminated by early 2014; and (ii) in 2012, to represent the interests of the Fund in connection with an investigation by the SEC into investments by a Fund affiliate into certain variable annuity insurance contracts, which investigation concluded in 2014.  On any of those matters (i.e., the two mentioned above as well as the ones where Curtis represented persons or entities other than the Fund), Mr. Bodner could have called me (or others at Platinum Management) to be debriefed as to those matters.  From time to time, Mr. Bodner did in fact call me for such debriefings, and I shared information with him openly and without restriction. Likewise, I always knew that Mr. Bodner could call Mr. Lauer or others at Curtis for such debriefings.  Neither I, nor to my knowledge anyone else at Platinum Management, imposed any restriction on Curtis's ability to keep Mr. Bodner as informed as he wished to be with respect to such litigation matters.

10.     In June 2016, Platinum Management received subpoenas and requests for information from several federal agencies and authorities (the "2016 Investigations").  I asked Mr. Lauer and Curtis to represent Platinum Management in connection with the 2016 Investigations.  I did not ask Curtis to represent the Fund in the 2016 Investigations; nor, to my knowledge, did anyone else at Platinum Management.  Mr. Lauer and Gabriel Hertzberg, also of Curtis, specifically advised me that Curtis was also representing Mr. Bodner in connection with some of the same investigations.  We discussed a joint representation of Platinum Management

and Mr. Bodner.  Mr. Lauer and Mr. Hertzberg advised me of the possibility that conflicts could

arise between Platinum Management and Mr. Bodner, and requested Platinum Management's

consent that Curtis could, in its discretion, and at any time, discontinue its representation of

either client and continue with the other one, even in a manner adverse to the other client.  In that

scenario, they advised me, Platinum Management would be deemed to have waived any

conflicts.  On behalf of Platinum Management, I consented to such joint representation.


I declare under penalty of perjury of the laws of the United States that the foregoing is true and

correct.  Executed on January 1, 2019.

HARVEY Z. WERBLOWSKY