**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒

IN RE PLATINUM-BEECHWOOD LITIGATION,          Case No.: 1:18-cv-6658-JSR

‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒

MARTIN TROTT and CHRISTOPHER SMITH, as          Case No.: 1:18-cv-10936-JSR
Joint Official Liquidators and Foreign Representatives
of PLATINUM PARTNERS VALUE ARBITRAGE
FUND L.P. (in OFFICIAL LIQUIDATION), *et ano.*,

Plaintiffs,

v.

PLATINUM MANAGEMENT (NY) LLC, *et al.*,

Defendants.

‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒

<u>**Memorandum of Law in Support of Defendant Michael Katz's Motion to Dismiss**</u>

THOMPSON & KNIGHT LLP
Stuart J. Glick
   stuart.glick@tklaw.com
Brittney M. Edwards
   brittney.edwards@tklaw.com
900 Third Avenue, 20th Floor
New York, New York 10022
Tel.: 212-751-3392
Fax: 214-880-3290

Nicholas S. Davis
   nick.davis@tklaw.com
777 Main Street, Suite 3300
Fort Worth, Texas 76102
Tel.: (817) 347-1700
Fax: (817) 347-1799

*Attorneys for Defendant Michael Katz*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

    A.  The Platinum Defendants Dominated PPVA and Used It to Commit Fraud...................... 2

    B.  The Allegations Against Michael Katz.................................................................... 3

ARGUMENT ......................................................................................................................6

    I.  Plaintiffs' Claim Against Katz Is Barred by the *In Pari Delicto* Doctrine
       and the *Wagoner* Rule........................................................................................ 6

       A.  The Platinum Defendants' Bad Acts and Knowledge Are Imputed to
          Plaintiffs........................................................................................................ 7

       B.  No Exceptions Apply........................................................................................ 8

          1. The Adverse-Interest Exception .................................................................. 8

             (a)  The SAC Alleges No Sole Benefit to the Platinum Defendants...................... 9

             (b)  The SAC Alleges the Platinum Defendants Exercised
                Complete Control over PPVA. ................................................................ 10

          2. The "Insider" Exception ........................................................................... 10

    II.  Plaintiffs Fail to Adequately Plead the Elements of Aiding and Abetting
       Breach of Fiduciary Duty Against Katz.................................................................. 11

       A.  The SAC Does Not Allege Actual Knowledge of Breach of Fiduciary Duty. ........... 12

       B.  The SAC Does Not Allege Substantial Assistance.................................................... 14

       C.  The SAC Does Not Allege Causation........................................................................ 16

    III. Plaintiffs Are Not Entitled to Punitive Damages from Katz............................................ 18

CONCLUSION....................................................................................................................19

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................ 11

*Barbagallo v. Marcum LLP*,
    820 F. Supp. 2d 429 (E.D.N.Y. 2011) ........................................................................... 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 11

*Breeden v. Kirkpatrick & Lockhart, LLP*,
    268 B.R. 708 (Bankr. S.D.N.Y. 2001) ........................................................................... 10

*Concord Capital Mgmt., LLC v. Bank of Am., N.A.*,
    958 N.Y.S.2d 93 (1st Dep't 2013) ................................................................................... 9

*Cromer Finance Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001) ........................................................................... 16

*Devaney v. Chester*,
    813 F.2d 566 (2d Cir. 1987) ........................................................................................... 12

*Dubai Islamic Bank v. Citibank, N.A.*,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003) ........................................................................... 19

*Dumont v. Litton Loan Servicing, LP*,
    No. 12-CV-2677-ER-LMS, 2014 WL 815244 (S.D.N.Y. Mar. 3, 2014) ........................... 5

*Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    No. 00 Civ. 8688, 2003 WL 22218643 (S.D.N.Y. Sept. 25, 2003) ................................. 15

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
    759 F. Supp. 2d 363 (S.D.N.Y. 2010) ........................................................................... 10

*In re Bernard L. Madoff Inv. Sec., LLC*,
    721 F.3d 54 (2d Cir. 2013) ......................................................................................... 7, 10

*In re CBI Holding Co.*,
    529 F.3d 432 (2d Cir. 2008) ............................................................................................. 8

*In re ICP Strategic Income Fund, Ltd.*,
    730 F. App'x 78 (2d Cir. 2018) ................................................................................. 6, 7, 9

*In re Karta Corp.*,
    342 B.R. 45 (S.D.N.Y. 2006) ......................................................................................... 16

*In re Lehr Constr. Corp.*,
  551 B.R. 732 (S.D.N.Y.) ................................................................................ 10, 11

*In re Lehr Constr. Corp.*,
  666 F. App'x 66 (2d Cir. 2016) .............................................................................. 11

*In re Mediators, Inc.*,
  105 F.3d 822 (2d Cir. 1997) .............................................................................. 7, 10

*In re Platinum-Beechwood Litig.*,
  No. 18-CV-10936 (JSR), 2019 WL 1570808 (S.D.N.Y. Apr. 11, 2019) .................... 12, 13, 15

*In re Sharp Int'l Corp.*,
  403 F.3d 43 (2d Cir. 2005) ...................................................................................... 14

*Joyce v. Cuccia*,
  No. 14953, 1997 WL 257448 (Del.Ch. May 14, 1997) .......................................... 16

*Kaufman v. Cohen*,
  760 N.Y.S.2d 157 (1st Dep't 2003) ........................................................................ 13

*Kaufman v. Cohen*,
  760 N.Y.S.2d 157 (N.Y. App. Div. 2003) .............................................................. 14

*KDW Restructuring & Liquidation Servs. LLC v. Greenfield*,
  874 F. Supp. 2d 213 (S.D.N.Y. 2012) .................................................................... 16

*Kirschner v. KPMG, LLP*,
  15 N.Y.3d 446 (2010) ................................................................................. 6, 7, 8, 9

*Kirschner v. KPMG, LLP*,
  626 F.3d 673 (2d Cir. 2010) ..................................................................................... 7

*Krys v. Butt*,
  486 F. App'x 153 (2d Cir. 2012) ........................................................................... 12

*Krys v. Klejna*,
  658 F. App'x 1 (2d Cir. 2016) ............................................................................... 13

*Krys v. Pigott*,
  749 F.3d 117 (2d Cir. 2014) ............................................................... 12, 13, 14, 16

*Landy v. Fed. Deposit Ins. Corp.*,
  486 F.2d 139 (3d Cir. 1973) ................................................................................... 15

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ............................................................................ 12, 13

*Meridian Horizon Fund, LP v. KPMG (Cayman)*,
    487 F. App'x 636 (2d Cir. 2012) ................................................................... 15

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
    431 F. App'x 17 (2d Cir. 2011) ..................................................................... 14

*New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Europe) B.V.*,
    41 N.Y.S.3d 1 (1st Dep't 2016) ...................................................................... 9

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) .......................................................................... 10

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006) .......................................................... 13

*Pereira v. United Jersey Bank, N.A.*,
    201 B.R. 644 (S.D.N.Y. 1996) ..................................................................... 15

*Prozeralik v. Capital Cities Commc'ns, Inc.*,
    82 N.Y.2d 466 (1993) .................................................................................... 18

*Robles v. Cox & Co.*,
    841 F. Supp. 2d 615 (E.D.N.Y. 2012) ............................................................ 2

*Rocanova v. Equitable Life Assurance Soc.*,
    83 N.Y.2d 603 (1994) .............................................................................. 18, 19

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996) .............................................................................. 5

*Shearson Lehman Hutton, Inc. v. Wagoner*,
    944 F.2d 114 (2d Cir. 1991) ............................................................................ 6

*Silverman Partners, L.P. v. First Bank*,
    687 F. Supp. 2d 269 (E.D.N.Y. 2010) .......................................................... 14

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) .......................................................................... 17

*Teras Int'l Corp. v. Gimbel*,
    No. 13–cv–6788–VEC, 2014 WL 7177972 (S.D.N.Y. Dec. 17, 2014).................... 10

*Weshnak v. Bank of Am., N.A.*,
    451 F. App'x 61 (2d Cir. 2012) ..................................................................... 15

**<u>Rules</u>**

Fed. R. Civ. P. 9(b) ................................................................................................... 12

Fed. R. Civ. P. 12(b)(6)..............................................................................................................11

Fed. R. Civ. P. 44.1...................................................................................................................12

## INTRODUCTION

It is now known that Plaintiff Platinum Partners Value Arbitrage Fund L.P. ("PPVA") was a large fraudulent investment scheme operated by Platinum Management (NY) LLC ("Platinum") and the people who ran Platinum. The Second Amended Complaint (ECF No. 285) (the "SAC") refers to those schemers as the Platinum Defendants.[1] Defendant Michael Katz ("Katz") is the grandson of outside PPVA investors who were among the most significant victims of the Platinum Defendants and their fraudulent schemes. In their SAC, Plaintiffs PPVA and its foreign liquidators, Martin Trott and Christopher Smith[2] baldly and implausibly allege that although Katz was acting solely as a representative of his grandparents and their interest and held no position in Platinum, he nonetheless purportedly aided and abetted the Platinum Defendants in their breach of fiduciary duties of which his grandparents were victims. Exactly how he did so is never explained. This claim against Katz should be dismissed for three reasons.

*First*, Plaintiffs' claim against Katz is barred by *in pari delicto* and the related *Wagoner* doctrine. In the SAC, Plaintiffs describe at great length the fraud and breaches of fiduciary duties that the Platinum Defendants perpetrated on PPVA. They also acknowledge in the SAC that the Platinum Defendants dominated and controlled PPVA. As a result, the Platinum Defendants' bad acts and knowledge are imputed to both PPVA and the Liquidators. The law is clear: Plaintiffs cannot now assert claims against Katz, who they allege was, at most, an outside representative of two investors, for aiding and abetting the very conduct legally imputed to themselves.

---

[1] The "Platinum Defendants" are Platinum, Mark Nordlicht, Murray Huberfeld, David Bodner, Uri Landesman, Bernard Fuchs, David Levy, David Steinberg, Ezra Beren, Naftali Manela, David Ottensoser, Joseph SanFilippo, and Daniel Small. (SAC ¶ 34).

[2] Messrs Trott and Smith are herein referred to as the "Liquidators;" and together with PPVA, they are all referred to as "Plaintiffs."

*Second*, Plaintiffs' SAC fails to allege facts sufficient to state a claim for aiding and abetting breach of fiduciary duty. Despite heightened pleading requirements, it alleges no facts or circumstances showing that Katz—not an officer, director, employee or even an investor in PPVA—had actual knowledge of the Platinum Defendants' misconduct or breaches of fiduciary duty. Unlike other aiding-and-abetting defendants in this case, Katz is not alleged to have held any position with any Platinum or Beechwood entity. The SAC not only fails to allege sufficient facts to infer actual knowledge of wrongdoing, it also does not allege that Katz ever personally benefited from any of the conduct described in the SAC. Also, Plaintiffs do not sufficiently allege causation. Although the law requires them to prove *both* but-for and proximate causation for their alleged losses, they fail to properly allege either.

*Third*, Plaintiffs have no proper basis to claim punitive damages against Katz because their claim for aiding and abetting is barred and inadequately pled and also because they do not allege any outrageous conduct by Katz that warrants imposition of any, let alone punitive, damages.

Accordingly, the sole claim raised against Michael Katz should be dismissed.

## BACKGROUND

### A.    The Platinum Defendants Dominated PPVA and Used It to Commit Fraud

The SAC describes a multi-year, large-scale, complex fraudulent investment scheme perpetrated by the people who ran Platinum, who are defined in the SAC as the "Platinum Defendants:" defendants Platinum, Mark Nordlicht, David Bodner, Murray Huberfeld, Uri Landesman, David Levy, Bernard Fuchs, Naftali Manela, David Ottensoser, Joseph SanFilippo, Daniel Small, and Ezra Beren.[3] (SAC ¶¶ 3, 12, 34). The SAC does not allege that Katz controlled or managed Platinum or PPVA, nor does it allege that he held any inside corporate role as an officer or director

---

[3] Solely for purposes of this motion to dismiss, facts that are properly pleaded in the SAC are presumed to be true, unless contradicted by documentary evidence. *See Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 626 (E.D.N.Y. 2012).

or even employee. (*See generally id.*).

Instead, the SAC alleges that the Platinum Defendants dominated and controlled PPVA, "exercis[ing] day-to-day management over PPVA, its subsidiaries and its assets." (*Id.* at ¶ 269). As alleged, they were "responsible for sourcing, overseeing, managing and valuing PPVA's investments and assets, assessing and determining appropriate levels of risk, [and] operating PPVA's business." (*Id.* at ¶ 12; *see also id.* at ¶¶ 39-120 (describing the roles of the Platinum Defendants)).

Among other things, Plaintiffs allege that from 2013 until 2015, the Platinum Defendants and "Beechwood Defendants" caused PPVA to engage in a series of non-commercial transactions with the "Beechwood Entities" designed to falsely inflate the net value ascribed to PPVA's assets and prioritize the interests of the Beechwood Entities over the interests of PPVA.[4] (SAC ¶ 9). Plaintiffs also allege that by late 2015, the Platinum Defendants further breached their duties to PPVA through a number of transactions, including by transferring or encumbering all or most of PPVA's remaining assets for the benefit of the Beechwood Defendants and others (the "Second Scheme"). (*Id.* at ¶¶ 10-11).

**B.    The Allegations Against Michael Katz**

The SAC alleges that Katz "began taking an active role at Platinum Management beginning in or about January 2016", but fails to provide any facts or specifics regarding exactly what that role was and how Katz was active in such role. (*Id.* at ¶ 126). Rather, it alleges that, in March 2016, Michael Katz began overseeing the "significant" investment of his grandfather, Marcos

---

[4] The "Beechwood Entities" are identified in the SAC as: Beechwood Capital Group, LLC; Beechwood Holdings Re Holdings, Inc.; B Asset Manager LP; B Asset Manager II LP; Beechwood Re Investments, LLC; Beechwood Re Ltd.; BAM Administrative Services LLC; Beechwood Bermuda International Ltd.; Private Bankers Life Annuity Ltc 2, as successor in interest to BBIL ULICO 2014 Trust; Washing National Ltc 2, as successor in interest to BRe WNIC 2013 LTC Primary and BRe WNIC 2013 LTC Sub; Bankers Conseco LIfe Ins. Co. - Ltc 2, as successor in interest to BRe BCLIC Primary and BRe BCLIC Sub; BBLN-PEDCO Corp.; BHLN-PEDCO Corp.; and Beechwood Trust Nos. 1 through 20. (SAC ¶¶ 209-220). The "Beechwood Defendants" are the Beechwood Entities, Mark Nordlicht, Bodner, Huberfeld, Levy, Feuer, Taylor, Manela, Ottensoser, Saks, Beren, Narain, and Illumin Capital Management LP. (*Id.* at ¶ 3).

Katz, with PPVA. (*Id.* at ¶¶ 124, 182).  It claims that, acting in that capacity, Katz purportedly "served as an advisor to Platinum Management;" but it fails to provide any supporting facts or specifics. (*Id.* at ¶ 903).

Plaintiffs make the general allegation that Katz aided and abetted the Platinum Defendants' breach of fiduciary duties by "orchestrating the Agera Transactions in order to transfer PPVA's interest in Agera Energy to the Beechwood Defendants at a significant loss to PPVA." (*Id.* at ¶ 905).  They allege that the "scheme was initiated by Defendant Katz," citing an email Katz allegedly sent Nordlicht that notes, among other things: "I would like to share some thoughts on Agera and a potential sale to an insider." (*Id.* at ¶ 608 & Ex. 82).

Plaintiffs would like to rely on connotations of the word "insider" to suggest illicit dealings, but the cited email makes clear they cannot do so.  In that email, Katz made clear that his reference to "insider" was entirely anodyne.  The email reflects that he was referring to a "strategic buyer" "[h]aving insider knowledge and expertise *in the oil & gas sector*." (*Id.* at Ex. 82). (emphasis added).  The SAC does not provide any facts or specifics to suggest that Katz meant anything improper or unfair to PPVA by suggesting the sale of an energy company to a buyer knowledgeable in the "oil and gas sector."  As importantly, the SAC alleges no facts showing that Katz was suggesting a sale to Beechwood, which is described in the SAC as a reinsurer and is *not* alleged to have been in the oil and gas sector.  (*See id.* at ¶ 8).

Additionally, the SAC does not allege—and Exhibit 82 does not indicate—that Katz was suggesting any transaction that would not be supported by full and adequate consideration.  (*See id.* at ¶ 608 & Ex. 82).  In fact, as indicated by subsequent emails in the same thread that Plaintiffs omitted from Exhibit 82, it is clear that Katz was *not* suggesting any transaction for less than fair market value.  In response to the email attached to the SAC as Exhibit 82, Nordlicht wrote to Katz,

"before we spend time on [your analysis], we need an insider buying at [an] *acceptable price*."[5] (*See* Katz Decl., Ex. A) (emphasis added). Katz responded, "[o]f course" and that the price "should be in line with an *above industry average*." (*Id.*) (emphasis added).

The SAC next alleges that "Nordlicht introduced Katz as an advisor to Platinum Management to oversee the final stages of the Second Scheme." (*Id.* at ¶ 610). That allegation is conclusory and inaccurate, however, because the email on which it is based does not indicate Katz would "oversee" anything, much less the "Second Scheme;" nor does it contain any mention of Beechwood or selling Agera or suggest any nefarious behavior. (*See id.* at Ex. 83).

Plaintiffs further allege that by "March 27, 2016, Nordlicht, Bodner, Huberfeld, Levy, Bernard Fuchs and Katz began planning an insider sale of Agera to a 'Beechwood led consortium.'" (*See id.* at ¶ 630). This allegation similarly rests on an email thread in which, contrary to the allegation in the SAC, Nordlicht, not Katz, "initiated" the idea of selling Agera to a Beechwood-controlled entity. (*See id.* at Ex. 87). After noting some initial reluctance to sell Agera, Nordlicht wrote "it appear[s] we might get satisfactory type of bid from a beechwood led consortium." (*Id.*). Nothing in the SAC or incorporated email explains what the "consortium" was, suggests that it could constitute an "insider sale," or shows Katz as involved in effectuating an actual sale. Neither the SAC nor the email shows Katz "overseeing" or "planning" any sale, let alone one he knew to be improper. Further, there are no allegations that Katz knew, much less suggested, that any sale of Agera should not be for full and adequate consideration or in any way illicit or improper.

In sum, the SAC makes only conclusory allegations of scienter. It does not allege any facts

---

[5] The Court may consider the full email thread attached as Exhibit A to the Declaration of Michael Katz (the "Katz Decl.") because it is integral to the SAC's allegations against Katz. *See, e.g.*, *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 809 (2d Cir. 1996) (holding that the district court was entitled to consider the full text of documents partially quoted in the complaint because the documents were "integral"); *Dumont v. Litton Loan Servicing, LP*, No. 12-CV-2677-ER-LMS, 2014 WL 815244, at *19 n.34 (S.D.N.Y. Mar. 3, 2014) (same).

showing that Katz had actual knowledge of any breach of fiduciary duty or involvement in the sale of Agera, which occurred in June 2016. (*See id.* at ¶¶ 632-672 (describing Agera sale without mentioning Katz)).  Plaintiffs also do not allege that Katz personally benefited from the "Agera Transactions" (as defined in paragraph 11(v) of the SAC) or from his alleged participation in any breach of fiduciary duty.

## **ARGUMENT**

I.    **Plaintiffs' Claim Against Katz Is Barred by the *In Pari Delicto* Doctrine and the *Wagoner* Rule.**

Plaintiffs' claim against Katz for aiding and abetting breach of fiduciary duty should be dismissed under the doctrine of *in pari delicto* and the related *Wagoner* rule.  "The *in pari delicto* doctrine prevents a party from seeking to recover against others for a wrong in which the party participated or is deemed through 'imputation' to have participated." *In re ICP Strategic Income Fund, Ltd.*, 730 F. App'x 78, 81 (2d Cir. 2018) (citing *Kirschner v. KPMG, LLP*, 15 N.Y.3d 446, 465 (2010)).[6]  It "mandates that the courts will not intercede to resolve a dispute between two wrongdoers." *Kirschner*, 15 N.Y.3d at 464.  "According to the *Wagoner* rule, followed in New York, the *in pari delicto* doctrine applies to successors in interest of wrongdoers, including bankruptcy trustees and foreign liquidators." *In re ICP*, 730 F. App'x at 82; *see also Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) ("[W]hen a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors.").

---

[6] New York law applies to Katz's *in pari delicto* defense. *See In re ICP*, 730 F. App'x at 81-82 (holding that New York law applied to an *in pari delicto* defense when, as here, foreign liquidators brought their case in New York, based on facts alleged to have occurred solely in New York, against a New York resident whose alleged involvement occurred in New York).

The Second Circuit has regularly applied these principles at the pleading stage to bar trustees and liquidators from asserting claims against third parties like Katz for allegedly assisting in misconduct where, as here, the complaint concedes that management actively participated in that same alleged misconduct. *See, e.g.*, *In re ICP*, 730 F. App'x at 81; *In re Bernard L. Madoff Inv. Sec., LLC*, 721 F.3d 54, 64 (2d Cir. 2013) ("*In re BLMIS*"); *Kirschner v. KPMG, LLP*, 626 F.3d 673, 674 (2d Cir. 2010); *In re Mediators, Inc.*, 105 F.3d 822, 825-27 (2d Cir. 1997). The New York Court of Appeals likewise has ruled that "*in pari delicto* may be resolved on the pleadings" because a plaintiff's allegations often will make clear that imputation is appropriate. *Kirschner*, 15 N.Y.3d at 459 n.3.

The *in pari delicto* doctrine and *Wagoner* rule compel dismissal of Plaintiffs' claim against Katz because (a) the Platinum Defendants' bad acts and knowledge are imputed to Plaintiffs, and (b) no exception to those rules apply here.

### A.    The Platinum Defendants' Bad Acts and Knowledge Are Imputed to Plaintiffs.

The bedrock of the *in pari delicto* doctrine is the "fundamental principle that has informed the law of agency and corporations for centuries:" namely, that "the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals." *Kirschner*, 15 N.Y.3d at 465. "Agency law presumes imputation even where the agent acts less than admirably, exhibits poor business judgment, or commits fraud." *Id.* Indeed, "all corporate acts—including fraudulent ones—are subject to the presumption of imputation." *Id.* at 466 (emphasis added).

Here, those traditional agency principles apply to impute to Plaintiffs PPVA and the Liquidators all of the Platinum Defendants' acts and knowledge. It is indisputable that the Platinum

Defendants were agents of PPVA. All were founders, principals, owners, officers, and/or employees of Platinum. Further, the SAC describes in great detail the Platinum Defendants' control over PPVA. It alleges that they were "responsible for sourcing, overseeing, managing and valuing PPVA's investments and assets, assessing and determining appropriate levels of risk, [and] operating PPVA's business" and "exercised day-to-day management over PPVA, its subsidiaries and its assets." (SAC ¶¶ 12, 269; *see also id.* at ¶¶ 39-120 (describing the roles of the Platinum Defendants)).

In sum, the acts and knowledge of the Platinum Defendants are clearly imputed under applicable law to Plaintiffs PPVA and the Liquidators. Accordingly, Plaintiffs' one claim against Katz for aiding and abetting the breach of fiduciary duty imputed to Plaintiffs is barred by *in pari delicto* and the *Wagoner* rule.

## B.    No Exceptions Apply.

There are two exceptions to the doctrine of *in pari delicto* and the *Wagoner* rule: the adverse-interest exception and the "insider" exception. Neither exception applies here.

### 1.    The Adverse-Interest Exception

Under the adverse-interest exception, "management misconduct will not be imputed to the corporation if the officer acted entirely in his own interests and adversely to the interests of the corporation." *In re CBI Holding Co.*, 529 F.3d 432, 448 (2d Cir. 2008) (citation omitted). But the *in pari delicto* doctrine "applies even in difficult cases and should not be weakened by exceptions." *Kirschner*, 15 N.Y.3d at 464 (emphasis added; quotation marks and citation omitted). Indeed, the adverse-interest exception is "most narrow" in scope and application. *Kirschner*, 15 N.Y.3d at 466-67. "To come within the exception, the agent must have *totally* abandoned his principal's interests and be acting *entirely* for his own or another's purposes." *Id.* at 466 (quotation marks and citation omitted) (emphasis added).

### (a)    The SAC Alleges No Sole Benefit to the Platinum Defendants.

This narrow exception does not apply here for two reasons. *First*, the exception cannot apply where, as here, there are no facts alleged to show that the Platinum Defendants solely benefited from claimed misconduct. The adverse-interest exception applies only when there is a benefit to the wrongdoer agent but no benefit to the principal corporation. *In re ICP*, 730 F. App'x at 82 (citing *Kirschner*, 15 N.Y.3d at 466-67). In *Kirschner*, the New York Court of Appeals rejected the argument that the exception should apply where "the company received only short term benefits but suffered long term harm," explaining that embracing that reasoning "would 'explode' the exception." 15 N.Y.3d at 470 (citation omitted).

Here, the SAC provides no basis to apply the narrow adverse-interest exception because the SAC alleges no sole benefit to the Platinum Defendants and no personal benefit at all to Katz. Furthermore, the SAC incorporates by reference exhibits that show the Platinum Defendants were trying to help PPVA by increasing its liquidity. (*See, e.g.*, SAC at Ex. 87 (Nordlicht noting, with respect to an Agera sale, that "the liquidity is just too transformative for us to ignore")). It therefore cannot be said that the Platinum Defendants "totally abandoned" PPVA's interests and were acting "entirely" for their own benefit. *See Kirschner*, 15 N.Y.3d at 466 (agent's allegedly "fraudulent conduct" that "enables the business to survive" does not fall within adverse-interest exception, even if it "can be said to have caused the company's ultimate bankruptcy"); *see also New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Europe) B.V.*, 41 N.Y.S.3d 1, 10 (1st Dep't 2016) (actions that "enabled the funds to continue to survive" defeat the adverse-interest exception); *Concord Capital Mgmt., LLC v. Bank of Am., N.A.*, 958 N.Y.S.2d 93, 94 (1st Dep't 2013) (same).

(b)    **The SAC Alleges the Platinum Defendants Exercised Complete Control over PPVA.**

*Second*, the sole actor rule—an exception to the adverse-interest exception—applies.  Under New York's "sole actor rule," when, as here, the agent completely controls the corporation, the corporation and the agent are considered to be "one and the same," and the adverse-interest exception does not apply.  *See In re BLMIS*, 721 F.3d at 64 n.14; *In re Mediators*, 105 F.3d at 827.  It applies "where the corporation bestows upon its agent unfettered control and allows the agent to operate without meaningful supervision."  *Breeden v. Kirkpatrick & Lockhart, LLP*, 268 B.R. 708, 709 (Bankr. S.D.N.Y. 2001).[7]  Here, the SAC alleges that the Platinum Defendants exercised complete control over PPVA, and so the sole actor rule applies. (*See* SAC ¶¶ 12, 39-120, 269 (describing the domination of PPVA by the Platinum Defendants)).

Accordingly, the adverse-interest exception does not apply here.

2.    **The "Insider" Exception**

To the extent there is an "insider" exception to the *in pari delicto* doctrine, it does not apply here.  Some courts have refused to apply *in pari delicto* to claims against insider fiduciaries. *See, e.g.*, *Teras Int'l Corp. v. Gimbel*, No. 13-cv-6788-VEC, 2014 WL 7177972, at *10 (S.D.N.Y. Dec. 17, 2014) ("Claims against insiders for their acts as corporate fiduciaries are not barred by *in pari delicto*[.]") (internal quotations marks and citation omitted).  Others have held that "*Kirschner* does not support the…conclusion that New York law provides for a broad 'insider' exception to the presumption of imputation." *In re Lehr Constr. Corp.*, 551 B.R. 732, 740 (S.D.N.Y.), *aff'd*, 666 F. App'x 66 (2d Cir. 2016).  Significantly, the Second Circuit has expressly declined to address

---

[7] *See also Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 164-65 (2d Cir. 2003) (applying Texas' similar sole actor rule "[w]here, as here, 'the persons dominating and controlling the corporation orchestrated the fraudulent conduct"); *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 381 (S.D.N.Y. 2010) (noting that New York and Florida apply the same legal framework and citing with approval a Florida case stating, "[w]here a corporation is wholly dominated by persons engaged in wrongdoing, the corporation has itself become the instrument of wrongdoing").

whether "New York courts recognize or would recognize" an insider exception. *In re Lehr Constr. Corp.*, 666 F. App'x 66, 70 (2d Cir. 2016).

Since the "insider" exception is not clearly recognized in New York, it cannot authorize Plaintiffs' claims against Katz. Furthermore, even if there were an "insider" exception, it does not apply to Katz because the SAC does not allege that he was an "insider" or fiduciary of PPVA. In *Lehr*, for example, the court found that any insider exception did not apply because the defendant was "not an officer or director, nor did he exert control over Lehr such that he could be considered an insider." 551 B.R. at 744. Similarly, here, the SAC contains no allegation that Katz was an officer or director of PPVA or exercised any control over PPVA. As a result, any "insider" exception to *Wagoner* or *in pari delicto* does not apply.

## II.    Plaintiffs Fail to Adequately Plead the Elements of Aiding and Abetting Breach of Fiduciary Duty Against Katz.

Plaintiffs' sole claim against Katz for aiding and abetting breach of fiduciary duty also fails because Plaintiffs do not adequately plead the elements of the claim. Under Federal Rule of Civil Procedure 12(b)(6), a complaint is required to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). After stripping away any "legal conclusions" and "conclusory statements," the Court, relying on its "judicial experience and common sense," *id.* at 678-79, must dismiss if the remaining factual allegations fail to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 545.

"A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the

breach, and (3) that plaintiff suffered damage as the result of the breach."[8]  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) (quotation marks and citation omitted).  Because Plaintiffs' aiding and abetting claim sounds in fraud, it is subject to the strict pleading requirements of Federal Rule of Civil Procedure 9(b), which requires pleading with particularity.  *See, e.g.*, *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014) ("In asserting claims…for aiding and abetting…a breach of fiduciary duty that involves fraud—a complaint is required to plead the circumstances that allegedly constitute fraud 'with particularity.'") (citing Fed. R. Civ. P. 9(b)).  Moreover, the Liquidators are not entitled to any relaxed pleading requirements because, given their access to over 13 million documents on the Platinum server (*see* Statement in Regard to Initial Conf. ¶ 13, ECF No. 21), they have had every "opportunity to gain knowledge of the pertinent facts."  *See Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987).

Here, Plaintiffs do not sufficiently plead any of the elements of aiding and abetting breach of fiduciary duty, much less with particularity.

### A.    The SAC Does Not Allege Actual Knowledge of Breach of Fiduciary Duty.

Plaintiffs do not adequately allege that Katz had actual knowledge of any breach of fiduciary duty.  "A claim for aiding and abetting a breach of fiduciary duty requires, inter alia, that the defendant *knowingly* induced or participated in the breach." *In re Platinum-Beechwood Litig.*, No. 18-CV-10936 (JSR), 2019 WL 1570808, at *8 (S.D.N.Y. Apr. 11, 2019) (emphasis added) (quoting *Krys v. Butt*, 486 F. App'x 153, 157 (2d Cir. 2012)).  "[T]here must be an allegation that such defendant had *actual knowledge* of the breach of duty." *Id.* (emphasis added); *see also Lerner*, 459 F.3d at 294 (requiring that the aider and abettor had "actual knowledge" of the primary actor's

---

[8] PPVA is a Cayman entity but because Plaintiffs have not given notice of the application of foreign law under Federal Rule of Civil Procedure 44.1, Katz assumes that Plaintiffs bring their aiding and abetting claim under New York law.  Should Plaintiffs provide notice under Rule 44.1, Katz reserves his right to argue that New York law applies or move to dismiss under Cayman law.

breach of duty). "Constructive knowledge of the breach of fiduciary duty by another is legally insufficient." *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (1st Dep't 2003); *see also, e.g.*, *Pigott*, 749 F.3d at 128 ("New York common law… has not adopted a constructive knowledge standard for imposing aiding and abetting liability. Rather, New York courts…have required actual knowledge." (quotation marks and citation omitted)). As stated by a court in this district, the "overwhelming weight of authority holds that actual knowledge is required, rather than a lower standard such as…willful blindness." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 201 n.279 (S.D.N.Y. 2006). Plaintiffs may not rely on general "red flags;" rather, they must allege specific facts that "create a strong inference of actual knowledge" of the relevant breach of fiduciary duty. *Lerner*, 459 F.3d at 294.

The SAC fails to plead facts establishing that Katz had actual knowledge of the Platinum Defendants' alleged breaches of fiduciary duty. The SAC only makes conclusory claims that Katz had knowledge; there are no factual allegations of actual knowledge. (*See* SAC ¶¶ 128, 271, 631, 906). Indeed, there are no allegations that Katz held any position at Platinum, Beechwood, or Agera; had any personal interest in the Agera Transactions; or actually prepared or executed any documents related to the Agera Transactions. *Compare In re Platinum-Beechwood Litig.*, 2019 WL 1570808 at *19-20 (declining to dismiss aiding and abetting claims against defendants who held positions within Platinum or Agera, personally benefitted, and prepared and executed transaction documents). The SAC's failure to allege specific facts as to Katz's actual knowledge renders the aiding and abetting claim against Katz fatally defective. *See, e.g.*, *Krys v. Klejna*, 658 F. App'x 1, 4-5 (2d Cir. 2016) (affirming dismissal of aiding and abetting claim because, while the complaint alleged the defendant knew about transfers, it did not allege that the defendant knew the transfers were unauthorized).

Moreover, the SAC's failure to properly plead actual knowledge of fraud is not surprising given that it alleges no personal benefit to Katz, who is described in the SAC as simply acting as a representative for the interests of his outside-investor grandparents (*see* SAC ¶¶ 124, 182), which "is entirely consistent with normal, lawful business practices," and not indicative of actual knowledge of any fraudulent schemes.  *See Pigott*, 749 F.3d at 131-32 (dismissing aiding and abetting claim because each fact of alleged knowledge was "entirely consistent with normal, lawful business practices").

In sum, the sole count against Katz should be dismissed because the SAC fails to meet the pleading requirement that it allege facts or circumstances showing actual knowledge.  *See, e.g.*, *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 431 F. App'x 17, 19-20 (2d Cir. 2011) (affirming dismissal because the plaintiff did not allege a plausible inference of actual knowledge by the defendant that the primary actor was committing the underlying alleged scheme); *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 286 (E.D.N.Y. 2010) (dismissing aiding and abetting claim for the same reason).

### B.    The SAC Does Not Allege Substantial Assistance.

The second element of aiding and abetting breach of fiduciary duty—inducement or participation—is satisfied only when the alleged aider and abettor "provides 'substantial assistance' to the primary violator."  *In re Sharp Int'l Corp.*, 403 F.3d 43, 49-53 (2d Cir. 2005) (citing *Kaufman*, 307 A.D.2d at 126).  Substantial assistance may only be found where the alleged aider and abettor affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.  *Id.* (citing cases).  Since Plaintiffs do not allege that Katz owed them a fiduciary duty, they must allege that Katz committed affirmative acts that furthered breaches of fiduciary duty.  *See id.*

Substantial assistance "means more than just performing routine business services for the

alleged fraudster." *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x 636, 643 (2d Cir. 2012) (quoting *CRT Invs., Ltd. v. BDO Seidman, LLP*, 85 A.D.3d 470, 471 (1st Dep't 2011) (finding no substantial assistance); *see also Weshnak v. Bank of Am., N.A.*, 451 F. App'x 61, 61-62 (2d Cir. 2012) (finding no substantial assistance in part because "Plaintiffs do not sufficiently allege that these services differed from those [the defendant] provided other large commercial customers"). Indeed, "assistance is less likely to be deemed substantial if the defendant was motivated by a lawful goal." *Pereira v. United Jersey Bank, N.A.*, 201 B.R. 644, 671-72 (S.D.N.Y. 1996) (citing *Landy v. Fed. Deposit Ins. Corp.*, 486 F.2d 139 (3d Cir. 1973)). Instead of harboring "lawful motivations," a defendant must associate himself with the tortious venture. *Id.* For example, in *Goldin*, the court held that acts of an alleged aider and abettor were not "wrongful" and did not provide "substantial assistance" when the plaintiff did not allege that the defendant's affirmative acts amounted to fraud or were wrongful or that the defendant had actual knowledge of any wrongful conduct. *Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2003 WL 22218643, at *10 (S.D.N.Y. Sept. 25, 2003).

Here, the Court should dismiss the one count against Katz for allegedly aiding and abetting breach of fiduciary duty by the Platinum Defendants because the SAC does not adequately allege facts showing substantial assistance. Nothing alleged by Plaintiffs against Katz shows him acting as anything other than as a representative of his grandparents who had invested in PPVA. (*See* SAC at ¶¶ 182, 903). At most, the SAC allege "no more than guilt by association," which this Court has already determined is insufficient to sustain an aiding and abetting claim. *See In re Platinum-Beechwood Litig.*, 2019 WL 1570808 at *11.

Even if the SAC properly alleged that Katz suggested the sale of Agera to a Platinum-

related "insider" (it does not), the claim fails because the SAC does not allege that Katz was suggesting a transaction that would be unfair, offensive, illicit, or improper to PPVA. *See, e.g.*, *KDW Restructuring & Liquidation Servs. LLC v. Greenfield*, 874 F. Supp. 2d 213, 222 (S.D.N.Y. 2012) ("Plaintiffs must allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the plaintiffs.") (quoting *Joyce v. Cuccia*, No. 14953, 1997 WL 257448, at *5 (Del. Ch. May 14, 1997)); *In re Karta Corp.*, 342 B.R. 45, 59 (S.D.N.Y. 2006) (rejecting challenge to self-dealing transactions because of the "absence of any evidence that these transactions were anything but arms-length and objectively fair") (applying New York law).  In fact, the opposite is true: the portion of the email thread attached as Exhibit 82 that Plaintiffs omitted shows that Katz was not suggesting any transaction below "an above industry average" price.  *See* Katz Decl., Ex. A; *see also supra* note 5 (noting that the Court may consider the full email thread).

Moreover, it would be implausible for Katz to suggest an unfair transaction that would damage his grandparents' interest when he was acting as their representative with no personal stake in the transaction.  *See, e.g.*, *Pigott*, 749 F.3d at 131-32 (holding that allegations that customers of a fraudulent enterprise knew about the fraud were implausible because if the "customers had known of [the enterprise's] true financial condition, they would have ceased to do business with" the enterprise).  In short, there is no allegation in the SAC that demonstrates any wrongful conduct or motivation by Katz.  The count against Katz should be dismissed because Plaintiffs do not adequately plead substantial assistance.

## C.    The SAC Does Not Allege Causation.

Plaintiffs' claim against Katz fails for the additional reason that they do not properly allege causation.  Plaintiffs must plead and prove that they suffered damages as a result of the alleged breach of fiduciary duty, which requires *both* but-for and proximate causation. *See Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001) (requiring both but-for and proximate

causation). Here, Plaintiffs do not adequately plead either.

*First*, Plaintiffs do not plead that the Agera sale or "Second Scheme Transactions" would not have occurred but-for Katz's alleged involvement. Exhibit 87 of the SAC shows that Katz did not propose selling Agera to Beechwood. On the contrary, the incorporated exhibit shows that was Nordlicht's idea. Accordingly, the SAC fails to meet the "but-for" test, and the sole count against Katz for aiding and abetting should be dismissed.

*Second*, Plaintiffs also fail to plead proximate causation. The Second Circuit's recent opinion in *SPV Osus* is instructive. The plaintiffs there alleged that if the aiding and abetting defendants did not provide support and assistance to funds alleged to have acted as "feeders" to the Madoff Ponzi scheme, the funds would not have collected money from investors, and Madoff's scheme would have stopped much sooner. *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345-46 (2d Cir. 2018). The Second Circuit affirmed dismissal of the plaintiffs' aiding and abetting claim because "[t]he link between the [defendant's] actions (or inactions) and the harm suffered by [the plaintiff] is simply too attenuated to constitute proximate cause." *Id.*

Similarly here, the link between the allegations against Katz and any harm suffered by Plaintiffs is too attenuated to constitute proximate cause. Plaintiffs rely on Katz's emailed March 13, 2016 suggestion to sell Agera, an energy company, to a buyer inside the oil and gas world. That shows no fraud, and there are no facts alleged in the SAC to indicate his supposed involvement went any further. On the contrary, Plaintiffs allege in exhaustive detail (40 paragraphs of the SAC) what happened with Agera Energy after March 13, 2016, and none of the detailed history involved Katz. (*See* SAC ¶¶ 632-672 (describing Agera sale without mentioning Katz)).

Indeed, it appears from the face of the SAC that after March 2016, the Agera sale was structured, negotiated, and completed by numerous Platinum Defendants, but not Katz. (*See id.*).

For example, the SAC alleges that Steinberg, Ottensoser, Michael Nordlicht, Narain and Cassidy, "worked together to prepare the documents by which the various parts of the Agera transaction were accomplished," and Michael Nordlicht and Cassidy "actively participated in the negotiation and closing of the Agera Transactions." (*Id.* at ¶¶ 635-36). But it makes no similar mention – or any mention at all – of participation by Katz.

In sum, the SAC sets forth no facts to show that Katz proximately caused the Agera sale to Beechwood. Absent properly pleaded proximate causation, the sole count against Katz for aiding and abetting should be dismissed for lack of proximate causation.

### III.    Plaintiffs Are Not Entitled to Punitive Damages from Katz.

Plaintiffs' claim for punitive damages against Katz should also be dismissed. *First*, punitive damages cannot lie where, as here, Plaintiffs' one underlying claim against Katz fails for any of the reasons set forth above. *See Rocanova v. Equitable Life Assurance Soc.*, 83 N.Y.2d 603, 616-17 (1994) (providing that "[a] demand for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action such as fraud").

*Second*, Plaintiffs' claim for punitive damages also fails because Plaintiffs do not allege sufficient facts to support the claim. "To obtain punitive damages in ordinary tort actions, a New York plaintiff must show that the defendant committed a tort under 'circumstances of aggravation or outrage, such as spite or malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton.'" *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 448 (E.D.N.Y. 2011) (quoting *Prozeralik v. Capital Cities Commc'ns, Inc.*, 82 N.Y.2d 466 (1993)). "This conduct must be 'aimed at the public generally.'" *Id.* (citing, among others, *Rocanova*, 83 N.Y.2d 603). In *Barbagallo*, for example, the court dismissed a claim for punitive damages because none of the plaintiff's underlying claims, including for aiding and abetting breach of fiduciary duty, "implicates

behavior directed at the public in general, nor are they based on outrageous conduct." *Id.*

Here, Plaintiffs baldly allege that "because Michael Katz acted willingly, grossly, recklessly and wantonly negligent, and without regard for PPVA's rights and interests, the Plaintiffs are further entitled to punitive damages for the misconduct alleged herein." (SAC ¶ 910). This allegation is conclusory and insufficient to support a claim for punitive damages. *See Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 168 (S.D.N.Y. 2003) (noting that a conclusory allegation seeking punitive damages is insufficient). The Court should, therefore, dismiss Plaintiffs' claim for punitive damages against Michael Katz.

## CONCLUSION

Michael Katz is improperly charged with one count of aiding and abetting breach of fiduciary duty. For all the reasons set forth above, Michael Katz respectfully requests that the Court dismiss that sole count.

Dated: April 22, 2019
    New York, New York

THOMPSON & KNIGHT LLP

By: *Stuart J. Glick*
    Stuart J. Glick
      stuart.glick@tklaw.com
    Brittney M. Edwards
      brittney.edwards@tklaw.com
    900 Third Avenue, 20th Floor
    New York, New York 10022
    Tel.: 212-751-3392
    Fax: 214-880-3290

    Nicholas S. Davis
      nick.davis@tklaw.com
    777 Main Street, Suite 3300
    Fort Worth, Texas 76102
    Tel.: (817) 347-1700
    Fax: (817) 347-1799

*Attorneys for Defendant Michael Katz*

- 19 -