Ira S. Lipsius
LIPSIUS BENHAIM LAW LLP
80-02 Kew Gardens Road, Suite 1030
Kew Gardens, New York 11415
Telephone: (212) 981-8440
Facsimile: (888) 442-0284
Email: iral@lipsiuslaw.com

*Attorney for Defendants Beechwood Capital Group,
LLC, B Asset Manager LP, B Asset Manager II LP,
Beechwood Re Investments, LLC, Beechwood Re
Holdings, Inc., Beechwood Re (in Official Liquidation)
s/h/a Beechwood Re Ltd., Beechwood Bermuda
International Ltd., BAM Administrative Services,
LLC, Illumin Capital Management LP, BBLN-PEDCO
Corp., BHLN-PEDCO Corp., Mark Feuer,
Scott Taylor, and Dhruv Narain*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                                                                  :
IN RE PLATINUM-BEECHWOOD LITIGATION          :        18-cv-06658 (JSR)
                                                                  :
---------------------------------------------------------------- X
                                                                  :
TROTT, et al.,                                                    :
                                                                  :
                    Plaintiffs,                                   :        18-cv-10936 (JSR)
                                                                  :
        -v-                                                       :
                                                                  :
PLATINUM MANAGEMENT (NY) LLC, et al.,            :
                                                                  :
        Defendants.                                               :
---------------------------------------------------------------- X


### MEMORANDUM OF LAW IN SUPPORT OF THE BEECHWOOD PARTIES' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 4

    A.    The Parties ............................................................................................ 4

    B.    The Collapse of Platinum Partners ...................................................... 5

    C.    PPVA's Claims Against the Beechwood Parties .................................. 5

APPLICABLE LEGAL STANDARD .................................................................. 8

ARGUMENT ....................................................................................................... 8

I.      THE LIQUIDATORS' COMMON LAW TORT CLAIMS, CIVIL RICO CLAIMS, AND DECLARATORY JUDGMENT CLAIMS ARE BARRED BY THE *WAGONER* RULE AND THE DOCTRINE OF *IN PARI DELICTO* ..................... 8

    A.    UNDER THE *WAGONER* RULE, THE LIQUIDATORS LACK STANDING TO PURSUE THEIR CLAIMS AGAINST THE BEECHWOOD PARTIES ................................. 9

    B.    THE LIQUIDATORS' CLAIMS AGAINST THE BEECHWOOD PARTIES ARE ALSO BARRED BY THE *IN PARI DELICTO* DOCTRINE.......................................... 12

II.    THE LIQUIDATORS' CIVIL RICO CLAIM (COUNT 17) IS PREDICATED ON SECURITIES FRAUD AND BARRED BY THE PSLRA ...................................... 13

III.   THE LIQUIDATORS' AIDING AND ABETTING CLAIMS (COUNTS 7 AND 8) SHOULD BE DISMISSED........................................................................ 15

    A.    THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY.................................................................. 16

    B.    THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING FRAUD .............................................................................................. 18

IV.   THE CIVIL CONSPIRACY CLAIM (COUNT 16) IS DUPLICATIVE OF THE AIDING AND ABETTING CLAIMS....................................................... 20

V.    THE UNJUST ENRICHMENT CLAIM (COUNT 14) SHOULD BE DISMISSED ............................................................................................. 20

VI.   THE LIQUIDATORS' DECLARATORY JUDGMENT CLAIMS (COUNTS 20-21) SHOULD BE DISMISSED ...................................................................... 22

VII.  THE LIQUIDATORS' ALTER-EGO ALLEGATIONS AGAINST ILLUMIN (COUNT 18) SHOULD BE DISMISSED.......................................................... 24

VIII. THE LIQUIDATORS' CLAIMS AGAINST BCG AND THE PEDCO ENTITIES SHOULD BE DISMISSED AGAIN ........................................................... 24

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)..................................................................................8

Boudinot v. Shrader,
    2012 WL 489215 (S.D.N.Y. Feb. 15, 2012),
    aff'd in part, 863 F.3d 162 (2d Cir. 2017) ...............................................14

Briarpatch Ltd. LP v. Phx. Pictures, Inc.,
    312 F. App'x 433 (2d Cir. 2009) .............................................................20

Bullmore v. Ernst & Young Cayman Islands,
    861 N.Y.S.2d 578 (Sup. Ct. N.Y. Cty. 2008) ...........................................9

Cobalt Multifamily Inv'rs I, LLC v. Shapiro,
    857 F. Supp. 2d 419 (S.D.N.Y. 2012) .....................................................10

Concord Capital Mgmt., LLC v. Bank of Am., N.A.,
    958 N.Y.S.2d 93 (1st Dep't 2013) ...........................................................11

Cromer Fin. Ltd. v. Berger,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001) .....................................................16

Dexia SA/NV v. Deutsche Bank AG,
    2013 WL 98063 (S.D.N.Y. Jan. 4, 2013) ................................................23

Eurycleia Partners, LP v. Seward & Kissel, LLP,
    910 N.E.2d 976 (N.Y. 2009).....................................................................19

Feirstein v. Nanbar Realty Corp.,
    963 F. Supp. 254 (S.D.N.Y. 1997)...........................................................15

First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004)......................................................................15

Fox Paine & Co. v. Hous. Cas. Co.,
    59 N.Y.S.3d 759 (2d Dep't 2017).............................................................20

Gillespie v. St. Regis Residence Club,
    343 F. Supp. 3d 3323 (S.D.N.Y. 2018).....................................................21

Glob. Minerals & Metals Corp. v. Holme,
    824 N.Y.S.2d 210 (1st Dep't 2006)...........................................................18

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989)...................................................................................................14

*In re 1031 Tax Grp., LLC*,
420 B.R. 178 (Bankr. S.D.N.Y. 2009) .....................................................................10

*In re Allou Distribs., Inc.*,
446 B.R. 32 (Bankr. E.D.N.Y. 2011) ........................................................................20

*In re AlphaStar Ins. Grp. Ltd.*,
383 B.R. 231 (Bankr. S.D.N.Y. 2008) ......................................................................19

*In re Bernard L. Madoff Inv. Sec. LLC.*,
721 F.3d 54 (2d Cir. 2013) ........................................................................................12

*In re Grumman Olson Indus., Inc.*,
329 B.R. 411 (Bankr. S.D.N.Y. 2005) ........................................................................9

*In re Lehr Constr. Corp.*,
551 B.R. 732 (S.D.N.Y. 2016),
*aff'd*, 666 F. App'x 66 (2d Cir. 2016) ..................................................................9, 13

*Kaufman v. Cohen*,
760 N.Y.S.2d 157 (1st Dep't 2003) ...........................................................................18

*Kew Gardens Hills Apartment Owners, Inc. v. Horing Welikson & Rosen, P.C.*,
828 N.Y.S.2d 98 (2d Dep't 2006)..............................................................................20

*Kirschner v. KPMG LLP*,
938 N.E.2d 941 (N.Y. 2010)................................................................................10, 11

*Lefkowitz v. Bank of N.Y.*,
2003 WL 22480049 (S.D.N.Y. Oct. 31, 2003),
*rev'd in part on other grounds*, 528 F.3d 102 (2d Cir. 2007).................................15

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993).........................................................................................8

*New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Europe) B.V.*,
41 N.Y.S.3d 1 (1st Dep't 2016) .................................................................................11

*Picard v. HSBC Bank PLC*,
454 B.R. 25 (S.D.N.Y. 2011), *amended, In re Bernard L. Madoff Inv. Sec.
LLC*, 2011 WL 3477177 (S.D.N.Y. Aug. 8, 2011),
*aff'd*, 721 F.3d 54 (2d Cir. 2013).........................................................2, 10, 12, 13

*Republic of Iraq v. ABB AG*,
768 F.3d 145 (2d Cir. 2014).......................................................................................13

*Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.*,
    121 F. Supp. 3d 321 (S.D.N.Y. 2015), *aff'd*, 821 F.3d 349 (2d Cir. 2016) ............................18

*Sazerac Co. v. Falk*,
    861 F. Supp. 253 (S.D.N.Y. 1994)........................................................................19

*SCM Grp., Inc. v. McKinsey & Co.*,
    2011 WL 1197523 (S.D.N.Y. Mar. 28, 2011) ......................................................20

*SEC v. Zandford*,
    535 U.S. 813 (2002)..............................................................................................14

*Senior Health Ins. Co. of Pennsylvania v. Beechwood Re Ltd.*,
    345 F. Supp. 3d 515 (S.D.N.Y. 2018) ..................................................................21

*Shearson Lehman Hutton, Inc. v. Wagoner*,
    944 F.2d 114 (2d Cir. 1991)...................................................................2, 9, 10, 19

*SmartStream Techs., Inc. v. Chambadal*,
    2018 WL 1870488 (S.D.N.Y. Apr. 16, 2018).......................................................21

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018).................................................................................16

*Vitale v. Steinberg*,
    764 N.Y.S.2d 236 (1st Dep't 2003) ......................................................................21

*Zohar CDO 2203-1, Ltd. v. Patriarch Partners, LLC*,
    286 F. Supp. 3d 634 (S.D.N.Y. 2017)..................................................................13

## STATUTES

18 U.S.C. § 1964(c) .......................................................................................................13, 14

## OTHER AUTHORITIES

Fed. R. Civ. P. 8(a) .............................................................................................................8

Fed. R. Civ. P. 9(b) .............................................................................................................8

The Beechwood Parties[1] respectfully submit this memorandum of law in support of the Beechwood Individuals' and Beechwood Entities' motion to dismiss the Second Amended Complaint (the "Complaint") by Martin Trott and Christopher Smith, as Joint Official Liquidators (the "Liquidators") and Foreign Representatives of Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) and Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) (collectively, "PPVA"), for failure to state a claim for which relief can be granted under Federal Rules of Civil Procedure 9(b) and 12(b)(6).

The Beechwood Individuals and Illumin move to dismiss the Complaint in its entirety, and the Beechwood Entities move to dismiss all causes of action but the alter ego allegations against them.

## PRELIMINARY STATEMENT

This entire lawsuit is flawed from the outset. The central premise of the Liquidators' sprawling Complaint is that PPVA's *own* former officers, directors, principals, and owners perpetrated a massive fraud involving the fund. The Complaint not only makes those accusations against the individuals who previously controlled PPVA, but goes so far as to sue them for fraud and racketeering, claiming that they falsely inflated the value of the fund's assets and breached other duties. The other defendants named in the action—including the Beechwood

---

[1] The Beechwood Parties are a group of related entities and officers. Namely, they are Beechwood Capital Group, LLC ("BCG"), B Asset Manager LP ("BAM"), B Asset Manager II LP (BAM II), Beechwood Re Investments, LLC ("BRILLC"), Beechwood Re Holdings, Inc. ("BRE Holdings"), Beechwood Re (in Official Liquidation) s/h/a Beechwood Re Ltd. ("BRE"), Beechwood Bermuda International Ltd. ("BBIL"), BAM Administrative Services, LLC ("BAM Admin"), Illumin Capital Management LP ("Illumin"), BBLN-PEDCO Corp., and BHLN-PEDCO Corp. (together, with BBLN-PEDCO Corp., the "PEDCO Entities") (collectively, the "Beechwood Entities"), and officers and former officers of those entities, Mark Feuer, Scott Taylor, and Dhruv Narain (collectively, the "Beechwood Individuals"). This Court previously dismissed BCG and the PEDCO Entities from this case (Dkt. Nos. 276 & 290).

Parties—are being sued only in a secondary capacity, on the theory that they aided and abetted PPVA's principals in carrying out those various torts. The misconduct of PPVA's principals is the primary focus of the action.

The Liquidators' theory of the case runs headlong into the Second Circuit's *Wagoner* rule and the doctrine of *in pari delicto*. Under the *Wagoner* rule, a plaintiff lacks standing to sue third parties for misconduct for which the plaintiff is equally responsible. *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991). Here, the principal wrongdoers are alleged to be PPVA's officers, whose conduct is imputed to PPVA. The Liquidators, who stand in the shoes of PPVA, cannot now sue third-party lenders who allegedly helped PPVA harm itself.

The other doctrine fatal to the Complaint is *in pari delicto*. Like the *Wagoner* rule, the *in pari delicto* doctrine prevents plaintiffs from recovering for misconduct in which they, or the entity they represent, participated equally. *See Picard v. HSBC Bank PLC*, 454 B.R. 25, 37 (S.D.N.Y. 2011) (Rakoff, J.), *amended*, *In re Bernard L. Madoff Inv. Sec. LLC*, 2011 WL 3477177 (S.D.N.Y. Aug. 8, 2011), *aff'd*, 721 F.3d 54 (2d Cir. 2013). Rather than serving as a bar to standing, it is an affirmative defense that can be applied even at the pleading stage, where, as here, its applicability is clear from the face of the complaint. *See id.*

The Complaint is defective for other reasons as well.

First, the Private Securities Litigation Reform Act ("PSLRA") amendment to the civil RICO statute bars recovery for claims predicated on conduct that could form the basis of a securities-fraud claim. Because all of the alleged predicate acts underlying the civil RICO claim against the Beechwood Parties rest on exactly that kind of conduct, the entire civil RICO claim must be dismissed.

Second, the claims for aiding and abetting and conspiracy to commit fraud or breach of fiduciary duty flunk Rule 9(b)'s heightened pleading standard. Although the Complaint runs on for over one thousand paragraphs, its allegations are in many cases either conclusory, irrelevant, or not probative of the underlying claims—sometimes all three simultaneously. Nor can the Complaint plausibly show justifiable reliance by PPVA on its own officers' misstatements. While the Liquidator appears to assert that various PPVA funds were misled, they do not explain who was misled or how they relied on the Platinum officers. Nor can they. The knowledge of Platinum's top management, including both of PPVA's co-chief investment officers, is imputed to PPVA. This imputation is fatal to the Liquidators' aiding and abetting claims because the Liquidators repeatedly allege that these same agents were "involved in every aspect of" the purported schemes. These failures underscore just how desperate the Liquidators are to blame *anyone else* for the fraud that is directly traceable to the party they represent, PPVA.

Third, the claim for unjust enrichment fails because all of the alleged conduct is covered by valid contracts and because the Complaint does not specify how each Beechwood Party allegedly benefitted from the purported misconduct.

Finally, the Liquidators' Second Amended Complaint includes claims against BCG and the PEDCO Entities, which have already been dismissed from this case. Because the Liquidators' have not added any new allegations against BCG and because the only new allegation against the PEDCO Entities is identical to what the Liquidators' previously presented to this Court, the claims against those entities should be dismissed again, with prejudice.

# BACKGROUND

## A.    The Parties

This case is one of several actions pending in this Court arising out of the failure of Platinum Partners, formerly a highly regarded and successful hedge-fund manager, whose principals are now subject to various civil and criminal proceedings.[2]  (*See* SAC ¶¶ 299-300.)

The Liquidators bring this suit on behalf of PPVA, one of Platinum's flagship hedge funds.  (*Id.* ¶ 2.)  PPVA was founded in 2003 by Murray Huberfeld, Mark Nordlicht, and David Bodner.  (*Id.* ¶¶ 12, 41, 226.)  David Levy and Mark Nordlicht, at various times, served as co-chief investment officers of the PPVA funds.  (*Id.* ¶¶ 12, 42, 50.)  From the outside looking in, PPVA appeared to be a wild success:  During the time period at the heart of this Complaint (2012 to 2015), PPVA reported annualized returns between 7.15% and 11.6% and a net asset value of nearly $1 billion.  (*Id.* ¶¶ 1, 29.)  By 2016, PPVA reported that its cumulative return from inception was nearly 700%.  (*Id.* ¶ 260.)  Mark Nordlicht, Murray Huberfeld, David Levy, and other officers and employees of Platinum (collectively, the "Platinum Defendants")[3] are all named as defendants in this action.  (*Id.* ¶ 3.)

Distinct from Platinum, the Beechwood Entities are a group of reinsurance companies and asset managers that were formed in 2013.  (*Id.* ¶¶ 8, 28, 357.)  Mark Feuer was the CEO and Scott Taylor was the President of these companies.  (*Id.* ¶ 386.)  Dhruv Narain, beginning in 2016, was a senior executive of BAM.  (*Id.* ¶ 388.)  Over time, Beechwood became one of PPVA's largest creditors.  (*Id.* ¶¶ 303-04.)

---

[2] Factual allegations in the Complaint are taken as true solely for purposes of this motion.

[3] The Liquidators define the term "Beechwood Defendants" as a sprawling list that includes not just the Beechwood Entities and Individuals, but also individuals like Nordlicht and Huberfeld. For the purposes of this motion, the term Beechwood Parties is limited to individuals and entities that do not overlap with the "Platinum Defendants."

### B.    The Collapse of Platinum Partners

In June 2016, news reports first broke about a potential fraud scandal involving Platinum and its principals.  That month, Huberfeld was arrested in connection with the misappropriation of PPVA funds to bribe a pension official in exchange for investing in PPVA.  (*Id.* ¶¶ 13, 70-71, 280.)  In December 2016, Nordlicht, Levy, and other Platinum-related individuals were charged with securities fraud by the U.S. Attorney's Office for the Eastern District of New York and the Securities and Exchange Commission.  (*Id.* ¶¶ 299-300.)  Among other things, the government accused them of engaging in a scheme to defraud investors and prospective investors in Platinum-managed funds through the overvaluation of assets and the concealment of severe cash-flow problems at Platinum's signature funds.  (*See generally id.* Ex. 25.)

Shortly after Huberfeld's arrest in June 2016, PPVA was placed into liquidation.  (*Id.* ¶¶ 15-16.)  Two and a half years later, PPVA's Joint Official Liquidators, appointed by the Grand Court of the Cayman Islands, brought this action against the Beechwood Parties and dozens of other defendants.  Although the government has been investigating Platinum's activities since at least early 2016, none of the Beechwood Parties has been indicted for any conduct or sued by any governmental agency in connection with PPVA's alleged fraud.

### C.    PPVA's Claims Against the Beechwood Parties

At its core, the Complaint describes a large-scale, Ponzi-like scheme designed to prop up PPVA's net asset value and keep the fund afloat.  (*See id.* Ex. 25 ¶ 6.)  The Liquidators maintain that PPVA's investment portfolio was concentrated in illiquid positions (*id.* ¶¶ 20, 26, 307, 319); that this lack of liquidity created problems when investors sought to redeem their investments from the PPVA funds (*id.* ¶ 321); and that, to deal with this problem, the Platinum Defendants relied upon money from new investors to pay redemptions (*id.* ¶ 322).  The Liquidators allege

that PPVA should have been liquidated in 2013, but that as a result of the Platinum Defendants' alleged misconduct, the funds were able to survive for three additional years. (*Id.* ¶ 24.)

The Liquidators allege that the Beechwood Parties assisted the Platinum Defendants in two schemes to defraud, which they call the "First Scheme" and the "Second Scheme." In the First Scheme, which supposedly ran for less than two years, from 2013 to 2015, the Liquidators allege that the Platinum Defendants and the Beechwood Parties caused PPVA to engage in a series of "non-commercial transactions" designed to inflate the net value ascribed to PPVA's assets and to keep Platinum's Ponzi-like scheme alive. (*Id.* ¶ 9.) At the same time, the Liquidators allege that the "non-commercial transactions" comprising the First Scheme prioritized the interests of the Beechwood Entities over the interests of PPVA and enabled Platinum insiders to take proceeds from the sale of PPVA's largest investment, Black Elk. (*Id.*)

As part of the First Scheme, the Liquidators allege that the Platinum Defendants, with help from certain Beechwood Defendants, developed a scheme to "cash out" their investment in Black Elk. (*Id.* ¶¶ 440-515.) Black Elk was an oil and gas company in which PPVA owned a majority of the common equity, as well as preferred equity, and a significant portion of Black Elk bonds. (*Id.* ¶¶ 441-44, 450.) The Liquidators allege that the Platinum Defendants failed to disclose an interest in $72 million in bonds that they controlled ahead of a consent solicitation process designed to permit Black Elk to divert the proceeds from the sale of its assets from the bondholders to a class of preferred equity, which Platinum largely owned. (*Id.* ¶¶ 450, 480, 497, 714.) As a result of this omission, the Liquidators allege, the Platinum Defendants were able to use $98 million from the Black Elk asset sale to pay off preferred equity holders, including PPVA. (*Id.* ¶ 503, Ex. 25 ¶¶ 77-80.) PPVA received $47 million of the proceeds from the

Black Elk scheme (*Id.* ¶ 504), although a portion of this money was subsequently transferred to preferred investors of another Platinum fund. (*Id.* ¶ 505.)

The Second Scheme, which supposedly ran for less than one year, from late 2015 to June 2016, allegedly arose from the Platinum Defendants' desperate attempt to secure liquidity for PPVA. (*Id.* ¶¶ 10-11, 570, 690, 716-17.) In doing so, the Liquidators alleges that the Platinum Defendants, along with other, unidentified defendants, transferred or encumbered "all or nearly all" of PPVA's remaining assets for the benefit of the Beechwood Defendants, unidentified "insiders," and PPCO. (*Id.* ¶ 10.) The Complaint identifies "significant wrongful acts" as part of the Second Scheme, including Platinum's use of a company called Montsant to hide Beechwood's encumbrance of PPVA assets (*id.* ¶¶ 556-67); a side letter by Mark Nordlicht agreeing to use the proceeds of the sale of an asset to pay unrecoverable debt owed to Beechwood (*id.* ¶¶ 568-83); Platinum's March 2016 restructuring of PPVA (*id.* ¶¶ 584-606); a "Security Lockup" where "select redeeming investors and creditors of PPVA" were granted security interests and liens on all assets of PPVA (*id.* ¶¶ 11, 673-762); and the sale of Agera to Beechwood and SHIP. (*Id.* ¶¶ 607-672.)[4]

The Liquidators bring five counts against the Beechwood Parties, for (i) aiding and abetting the Platinum Defendants' breaches of their fiduciary duties; (ii) aiding and abetting the Platinum Defendants' fraud; (iii) unjust enrichment at the expense of PPVA; (iv) conspiracy to engage in tortious conduct against PPVA; and (v) participating in a RICO scheme that injured PPVA. (*Id.* ¶¶ 846-868, 938-47, 960-85.) Though pleaded as "alternative allegations for relief," not a cause of action, the Liquidators also allege that each of the Beechwood Entities was an alter ego of Platinum Management. (*Id.* ¶¶ 986-1000.) Finally, the Liquidators seek to invalidate two

---

[4] Allegations concerning the "Security Lockup" do not appear to involve the Beechwood Parties.

agreements that PPVA entered into with certain of the Beechwood Parties on the grounds that those agreements are void and unenforceable as contrary to public policy.  (*Id.* ¶¶ 1013-28.)

## APPLICABLE LEGAL STANDARD

To survive a motion to dismiss, a complaint must satisfy Rule 8(a) by stating a claim for relief that is plausible on its face. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* at 678 (citation omitted).  Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

The Liquidators' claims based on allegedly fraudulent conduct (*e.g.*, aiding and abetting breach of fiduciary duty, aiding and abetting fraud, and civil RICO) must also be pled with specificity under Rule 9(b).  Fed. R. Civ. P. 9(b) ("In alleging fraud . . ., a party must state with particularity the circumstances constituting [the] fraud . . . .").  To satisfy the specificity requirement, the Liquidator must "(1) specify the statements that [it] contends [are] fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).  Moreover, it is well-settled that a party does not comply with Rule 9(b) when it makes allegations against a group of defendants generally instead of pleading the specifics of a fraud claim against each defendant individually.  *Id.*

## ARGUMENT

I. **THE LIQUIDATORS' COMMON LAW TORT CLAIMS, CIVIL RICO CLAIMS, AND DECLARATORY JUDGMENT CLAIMS ARE BARRED BY THE *WAGONER* RULE AND THE DOCTRINE OF *IN PARI DELICTO***

The Liquidators' aiding and abetting, unjust enrichment, civil conspiracy, civil RICO, and declaratory judgment actions (which are premised on a theory of fraudulent inducement) all

fail under the Second Circuit's *Wagoner* rule and the doctrine of *in pari delicto*. These two related theories are rooted in the simple concept that where parties are alleged to have engaged in equally wrongful conduct, one may not recover from the other. *In re Lehr Constr. Corp.*, 551 B.R. 732, 738 (S.D.N.Y. 2016) (quoting *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 950 (N.Y. 2010)), *aff'd*, 666 F. App'x 66 (2d Cir. 2016). The central premise of the Liquidators' Complaint is that PPVA's own principals were involved in and orchestrated the misconduct for which PPVA is now suing, with the Beechwood Parties playing only a supporting role. Under *Wagoner* and the *in pari delicto* doctrine, this lawsuit cannot proceed.

A.      **UNDER THE *WAGONER* RULE, THE LIQUIDATORS LACK STANDING TO PURSUE THEIR CLAIMS AGAINST THE BEECHWOOD PARTIES**

The *Wagoner* rule provides that, under New York law, a bankruptcy trustee may only "assert claims held by the bankrupt corporation itself," and lacks standing to assert "[a] claim against a third party for defrauding a corporation with the cooperation of management" on behalf of "the guilty corporation." *Wagoner*, 944 F.2d at 118, 120. The rule "derives from the fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation." *In re Grumman Olson Indus., Inc.*, 329 B.R. 411, 423 (Bankr. S.D.N.Y. 2005) (internal marks and citations omitted). "[M]anagement's misconduct is imputed to the corporation, and because [the] trustee stands in the shoes of the corporation, the *Wagoner* rule bars a trustee from suing to recover for a wrong that he himself essentially took part in." *Id.* at 423-24 (citations omitted).

While the *Wagoner* case itself addressed the claims of a Chapter 11 trustee, the rule applies equally to a liquidator who similarly stands in the shoes of the creditors. *See Bullmore v. Ernst & Young Cayman Islands*, 861 N.Y.S.2d 578, 581 (Sup. Ct. N.Y. Cty. 2008) (applying *Wagoner* Rule to claims brought by joint official liquidators of Cayman Islands hedge fund); *cf.*

*Cobalt Multifamily Inv'rs I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 440 (S.D.N.Y. 2012) (applying *Wagoner* Rule to claims brought by court-appointed receiver).

Where a complaint's allegations demonstrate that a trustee or liquidator lacks standing to sue under the *Wagoner* Rule, the complaint should be dismissed on a Rule 12 motion. Because *Wagoner* is framed as a rule of standing, it should be resolved at the earliest opportunity. *Wagoner*, 944 F.2d at 117. Courts accordingly have not hesitated to apply *Wagoner* to dismiss deficient claims on their pleadings. *See, e.g.*, *Picard*, 454 B.R. at 37.

Dismissal is required here. Plaintiffs have sued and alleged fraud against virtually everyone who controlled or had any meaningful position in PPVA's operations, and affirmatively alleged that PPVA's own officers and directors were aware of, and indeed, orchestrated the very fraudulent conduct for which Plaintiffs are seeking to hold the Beechwood Parties responsible. (*See, e.g.*, SAC ¶¶ 12, 48, 54, 73.) The Complaint even touts the fact that the Platinum principals have been sued by the SEC and criminally indicted in the Eastern District of New York for the same underlying conduct. (SAC ¶¶ 299-300.) Thus, from the face of the Complaint, the Liquidators' claims against the Beechwood Parties fall squarely within the *Wagoner* rule. *See Wagoner*, 944 F.2d at 118.

The Liquidators cannot escape this result with conclusory allegations that PPVA's agents were purportedly acting to "enrich themselves." New York recognizes a narrow "adverse interest" exception to the *Wagoner* Rule and the *in pari delicto* doctrine, but that exception does not apply here. *In re 1031 Tax Grp., LLC*, 420 B.R. 178, 199 (Bankr. S.D.N.Y. 2009) (*Wagoner*); *Kirschner*, 938 N.E.2d at 952 (*in pari delicto*). "To come within the exception, the agent must have *totally abandoned* his principal's interests and be acting entirely for his own or another's purposes." *Kirschner*, 938 N.E.2d at 952 (quoting *Ctr. v. Hampton Affiliates, Inc.*, 488

N.E.2d 828, 830 (N.Y. 1985) (emphasis added)).  Where the agent's alleged misconduct "enables the business to survive—to attract investors and customers and raise funds for corporate purposes—this test is not met." *Id.* at 953.

Courts addressing facts similar to those alleged by the Liquidators routinely decline to apply the adverse interest exception. *See New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Europe) B.V.*, 41 N.Y.S.3d 1, 10 (1st Dep't 2016) (adverse interest exception inapplicable where alleged conduct of funds' management "enabled the funds to continue to survive and to attract investors"); *Concord Capital Mgmt., LLC v. Bank of Am.*, N.A., 958 N.Y.S.2d 93, 93 (1st Dep't 2013) (adverse interest exception inapplicable where the alleged scheme "brought millions of dollars into plaintiffs' coffers and allowed plaintiffs to survive for a few years.").

The same reasoning applies in this case.  The Liquidators affirmatively allege that PPVA benefited from the Platinum managers' wrongful conduct.  Among other things, they maintain that PPVA was facing a liquidity crises, which created problems when investors sought to redeem their investments from the PPVA funds.  (SAC ¶¶ 20, 26, 307, 319, 321.)  The Liquidators allege that, to deal with this problem, the Platinum Defendants relied upon money from new investors to pay redemptions.  (*Id.* ¶ 322.)  This required them to maintain the pretense that PPVA's net asset value was increasing.  (*See, e.g.*, *id.* ¶ 344.)  According to the Liquidators, these schemes succeeded in this regard, allowing PPVA to survive and attract new investors: PPVA should have been liquidated in 2013, but because of the Platinum Defendants' alleged misconduct, the funds were able to survive for three additional years.  (*Id.* ¶¶ 15, 24.)

The allegations in the SEC Complaint, which the Liquidators attach to the Complaint and incorporate by reference, also make clear that PPVA was the intended beneficiary of its agents' purported misconduct.  (*See, e.g.*, *id.* Ex. 25 ¶ 6 ("[I]n 2014-15, PPVA's liquidity crisis

worsened, and Platinum Management resorted to other schemes *to keep the fund afloat*.") (emphasis added)); *id.* ("[T]he real purpose [of PPVA's] high-interest borrowing was to ease the fund's liquidity constraints"); *id.* ¶¶ 77-79 (PPVA used its power over Black Elk to "plunder its assets for the benefit of PPVA and its affiliates"); *id.* ¶ 80 ([T]he Platinum parties . . . devised a scheme to amend the note indenture to authorize that proceeds [from an asset sale] be paid to holders of Black Elk Class E preferred shareholders, *mostly PPVA*.") (emphasis added); *id.* ¶ 132 (alleging that PPVA's financial condition . . . was so perilous that, contrary to abandoning PPVA, Platinum's principals were making "loans to allow PPVA to meet certain of its financial obligations."); *id.* ¶ 174 (alleging that PPVA received $37 million in proceeds from the Agera transaction).) Thus, far from "totally abandoning" PPVA's interests, the Complaint alleges that the conduct of the Platinum's principals sustained the funds. Under these circumstances, any suggestion that the Platinum principals' conduct was wholly adverse to PPVA is insupportable, and the adverse interest exception should be rejected.

## B. THE LIQUIDATORS' CLAIMS AGAINST THE BEECHWOOD PARTIES ARE ALSO BARRED BY THE *IN PARI DELICTO* DOCTRINE

Even assuming the Liquidators had standing to bring these claims against the Beechwood Parties, their claims would still be barred by the doctrine of *in pari delicto*. "New York law defines the *in pari delicto* defense extremely broadly . . . and the New York Court of Appeals has held that even though it is an affirmative defense, 'in pari delicto may be resolved on the pleadings . . . in an appropriate case.'" *Picard*, 454 B.R. at 37 (quoting *Kirschner*, 938 N.E.2d 941, 958–59, 946 n.3). The Second Circuit has held that "[e]arly resolution is appropriate where (as here) the outcome is plain on the face of the pleadings." *In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d at 65.

That is the situation presented by this lawsuit. *In pari delicto* is triggered by the

Liquidators' own well-pled allegations that PPVA (through its agents) acted wrongfully.

Because the Complaint is replete with allegations of wrongdoing against PPVA's own principals,

*in pari delicto* clearly bars Plaintiffs' recovery. Indeed, because this outcome is plain from the

face of the Complaint, the Court can (and should) apply it now. *See In re Lehr*, 551 B.R. at 737.

Whether the Court applies the *Wagoner* rule or the *in pari delicto* defense, the outcome is

the same: The Court should dismiss the Liquidators' aiding and abetting, unjust enrichment,

civil conspiracy, civil RICO, and declaratory judgment actions as against the Beechwood Parties.

*See Picard*, 454 B.R. at 37 (noting the complaint so obviously pled wrongdoing that it did not

matter whether the court applied the *Wagoner* rule or the *in pari delicto* doctrine).

## II. THE LIQUIDATORS' CIVIL RICO CLAIM (COUNT 17) IS PREDICATED ON SECURITIES FRAUD AND BARRED BY THE PSLRA

As set forth above, the Liquidators' civil RICO claim is barred by the *Wagoner* Rule and

the doctrine of *in pari delicto*. *Republic of Iraq v. ABB AG*, 768 F.3d 145, 162 (2d Cir. 2014)

(affirming district court's dismissal of civil RICO claims on the basis of *in pari delicto*).

However, even if that were not the case, the Court should dismiss the Liquidators' civil RICO

claim for an independent reason: It is barred by the PSLRA.

The Liquidators' civil RICO claim is expressly based on a purported securities fraud,

which cannot serve as a predicate act for civil RICO claims. The PSLRA bars any civil RICO

action predicated on the purchase or sale of securities. 18 U.S.C. § 1964(c). This prohibition is

broad. "[I]f the alleged conduct could form the basis of a securities fraud claim against any party

– be it against, or on behalf of, the plaintiff, defendants or a non-party – it may not be fashioned

as a civil RICO claim." *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d

634, 644 (S.D.N.Y. 2017). The Supreme Court has held that this provision should be interpreted

"not technically and restrictively, but flexibly to effectuate its remedial purposes."  *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (citation omitted); *see also Boudinot v. Shrader*, 2012 WL 489215, at *5 (S.D.N.Y. Feb. 15, 2012), *aff'd in part*, 863 F.3d 162 (2d Cir. 2017).

Still, in their own articulation of the predicate acts for civil RICO, the Liquidators appear to rely exclusively on allegations relating to transactions involving the purchase or sale of securities, including heavy reliance on the alleged Black Elk Scheme (SAC ¶¶ 978), which forms the core of the securities-fraud claims brought by the SEC and the criminal charges filed against the Platinum principals.  (*See id.* ¶¶ 299-300.)  Indeed, almost *every single one* of the alleged predicate acts appears to involve some type of securities transaction, whether it is an investment, a loan, a pledge, or an express offer to purchase a security.  (*Id.* ¶ 978.)  This conduct falls squarely within the PSLRA's exclusion.  18 U.S.C. § 1964(c).  *See Senior Health Ins. Co. of Pennsylvania v. Beechwood Re Ltd.* ("SHIP Action"), No. 18-cv-6658 (JSR), Opinion dated Apr. 22, 2019, at *23-24 (S.D.N.Y. Apr. 22, 2019) (concluding that "SHIP's [civil RICO] allegations are barred by the RICO Amendment insofar as the gravamen of SHIP's mail and wire fraud claims is that Beechwood funneled SHIP's assets to Platinum").

The civil RICO claim also fails because it is too narrow in number of victims, time, and purpose to constitute a continuous pattern of racketeering.  In order to adequately plead the existence of a RICO pattern, the Liquidators must allege facts giving rise to an inference of either "closed-ended" or "open-ended" continuity.  *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240–41 (1989).  The former refers to a "closed period of repeated conduct," while the latter refers to "past conduct that by its nature projects into the future with a threat of repetition."  *Id.* Here, the Liquidators have not adequately alleged either.

In essence, the Liquidators identify a conspiracy limited to PPVA with the singular purpose "to defraud PPVA, and to obtain money and property from PPVA, through false pretenses, representations, and promises." (SAC ¶ 977.) That accusation identifies a single victim (PPVA) over a period of just over two years—shorter than the "kind of broad-based unlawful activity that RICO was design[ed] to address." *Feirstein v. Nanbar Realty Corp.*, 963 F. Supp. 254, 260 (S.D.N.Y. 1997) (four predicate acts over a three-year period did not satisfy the continuity factor to establish a RICO claim); *Lefkowitz v. Bank of N.Y.*, 2003 WL 22480049 (S.D.N.Y. Oct. 31, 2003) (no closed-ended continuity where complaint alleged that small number of parties engaged in activities with a narrow purpose to defraud directed at one to three victims), *rev'd in part on other grounds*, 528 F.3d 102 (2d Cir. 2007).

The civil RICO claim is even more obviously deficient against Narain, who did not join Beechwood until 2016 and Illumin, which was not formed until December 2016. Only two of the alleged predicate acts occurred in 2016, and those events were separated by less than a year. (SAC ¶ 978.) Where the "alleged predicate acts attributed to [a particular defendant] . . . do not extend over a sufficiently long period of time to satisfy the requirements of closed-ended continuity," a district court should "properly dismiss[]" the substantive RICO claims as well as any related claims alleging conspiracy or improper investment of RICO proceeds. *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181–82 (2d Cir. 2004) (affirming dismissal of the RICO claims because predicate acts which spanned fewer than two years are always insufficient for a closed-end pattern).

## III. THE LIQUIDATORS' AIDING AND ABETTING CLAIMS (COUNTS 7 AND 8) SHOULD BE DISMISSED

The Liquidators assert two duplicative aiding and abetting claims against the Beechwood Parties. First, the Liquidators allege that "the Platinum Defendants breached their fiduciary

duties to PPVA by their actions in connection with the First and Second Schemes."  (SAC

¶ 848.)  They allege that the Beechwood Parties aided and abetted the Platinum Defendants'

breach by participating in various transactions with PPVA that helped further the schemes.  (*Id*.

¶ 452.)  Second, the Liquidators allege that the Beechwood Parties aided and abetted the same

schemes by participating in the same series of transactions with PPVA.  (*Id*. ¶ 863.)  On either of

the bases set forth in Point I—the *Wagoner* Rule or the *in pari delicto* doctrine—the Liquidators'

aiding and abetting claims should be dismissed.  But even if the Liquidators could avoid

dismissal on those grounds, their aiding and abetting claims should be dismissed for failure to

state a claim under Rule 12(b)(6) and 9(b).

### A. THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege:

(1) a breach of fiduciary obligations to another; (2) that the aider and abettor knowingly induced

or participated in the breach; and (3) that the plaintiff suffered damages as a result of the breach.

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018).  "With respect to the second

requirement, although a plaintiff is not required to allege that the aider and abettor had an intent

to harm, there must be an allegation that such defendant had actual knowledge of the breach of

duty. And a person knowingly participates in a breach of fiduciary duty only when he or she

provides substantial assistance to the primary violator."  *Id.*  Under New York law, "[s]ubstantial

assistance requires the plaintiff to allege that the actions of the aider/abettor proximately caused

the harm on which the primary liability is predicated."  *Cromer Fin. Ltd. v. Berge*r, 137 F. Supp.

2d 452, 470 (S.D.N.Y. 2001).

Here, the Complaint is most obviously deficient with respect to the substantial assistance

element.  The Complaint includes the conclusory allegation that the "Beechwood Defendants

substantially assisted and participated in the Platinum Defendants' breaches of their fiduciary obligations in connection with the First and Second Schemes" by engaging in various transactions with PPVA.  (SAC ¶ 852.)  As set forth in the Complaint, these transactions allegedly related to Golden Gate Oil LLC, PEDEVCO Corp., Implant Sciences Corp., Black Elk Energy Offshore Operations LLC, Montsant Partners LLC, Northstar Offshore Group LLC, and Agera Energy LLC.  (*Id.* ¶¶ 413-23, 424-35, 436-39, 440-515, 516-28, 529-50, 556-67, 568-83, 584-606, 607-72.)  But the Complaint does not allege that BRILLC, BRE Holdings, BRE, BBIL, or Illumin had involvement with, let alone provided substantial assistance to, these transactions.

Indeed, for a number of these Beechwood Entities, the only allegations against them concern the identities of their owners or the type of common stock that they owned, but nothing concerning any proximate involvement with these transactions.  (*See, e.g.*, SAC ¶¶ 213, 220, 374-77 (BRE Holdings); *id.* ¶¶ 212, 215, 220, 383-85 (BRILLC); *id.* ¶¶ 216, 220, 375-77 (BBIL)).  The only allegations against BRE, for example, other than those relating to ownership (*id.* ¶¶ 215-16, 220, 374), are that Levy executed its due diligence documents, Levy emailed a draft BRE term sheet to Nordlicht, and Taylor referred to BRE in an email. (*Id.* ¶¶ 362-63, 65.) None of these allegations relate to any of the transactions identified in connection with the First and Second Scheme.  Finally, as to Illumin, the Complaint alleges in a wholly conclusory fashion that it led the marketing and negotiation of and directed various transfers in connection with the Agera sale.  (*Id.* ¶¶ 209, 625, 641, 654, 657.)[5]

---

[5] Some of the Liquidators' allegations are both conclusory and factually impossible.  For example, the Complaint erroneously accuses Illumin of directing AGH Parent to deliver a letter to PGS indicating its intent to exercise certain redemption rights in October 2016.  (FAC ¶ 654.) In fact, Illumin did not exist until December 2016.

Bare allegations such as these fail to satisfy Rule 9(b)'s heightened requirement to plead with particularity their knowing participation in the Platinum Defendants' breaches of fiduciary duty or fraud. *See Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169–70 (1st Dep't 2003) (that one defendant with a fiduciary duty was alleged to have a beneficial interest in other entity defendants merely showed constructive knowledge, "an insufficient basis for aider and abettor liability"); *see also Glob. Minerals & Metals Corp. v. Holme*, 824 N.Y.S.2d 210, 216–217 (1st Dep't 2006) (dismissing aiding and abetting claim where complaint alleged simply that wife knew her husband was a shareholder of a corporation, but did not plead additional facts that would have shown the key element of actual knowledge of his breach). Accordingly, the aiding and abetting breach of fiduciary duty claims should be dismissed as to these entities.

### B. THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING FRAUD

To establish a claim for aiding and abetting fraud, the Liquidators must plead specific facts supporting "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud," *Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.*, 121 F. Supp. 3d 321, 338 (S.D.N.Y. 2015) (quotation omitted), *aff'd*, 821 F.3d 349 (2d Cir. 2016), and in federal court such facts must be pled in compliance with the Rule 9(b) standard. For the reasons discussed in Section A, the Liquidators cannot satisfy the substantial assistance requirement here.

As for the existence of the underlying fraud, the Complaint fails to plead facts establishing PPVA's justifiable reliance on any material misrepresentation or actionable omission by the Platinum Defendants, an essential element of any fraud claim. *See Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009).

As explained in Point I above, addressing the *Wagoner* Rule and the doctrine of *in pari delicto*, the knowledge of Platinum's top management is imputed to PPVA. This is fatal to the

PPVA's aiding and abetting claims because the Liquidators allege that PPVA's own agents were involved in "every aspect of the First and Second Schemes." (*See, e.g.*, SAC ¶¶ 12, 48, 54, 73.) Indeed, the Liquidators, standing in the shoes of PPVA, cannot assert claims against the Beechwood Parties for aiding and abetting PPVA in deceiving *itself*. *See In re AlphaStar Ins. Grp. Ltd.*, 383 B.R. 231, 267 (Bankr. S.D.N.Y. 2008) ("[The plaintiff] could not have relied to its detriment on its own misleading financial statements.").

Notably, while the Liquidators appear to assert that PPVA was misled (SAC ¶ 810), they do not explain who at PPVA was misled or how the fund could possibly have relied on any of the alleged misstatements. PPVA is a limited partnership with no employees of its own, only officers. (*Id.* ¶ 38.) The only officers at PPVA whom the Liquidators identify in the Complaint are Nordlicht (co-chief investment officer of PPVA); Uri Landesman (co-chief investment officer of PPVA); Levy (co-chief investment officer of PPVA); David Steinberg (co-chief risk officer of PPVA); and Joseph Sanfilippo (chief financial officer for PPVA), all of whom the Liquidator has accused of fraud. (*Id.* ¶ 12.) Because the Liquidators fail to allege to whom any purported misrepresentations were made, their claims for aiding and abetting fraud should be dismissed. *Sazerac Co. v. Falk*, 861 F. Supp. 253, 260 (S.D.N.Y. 1994) (no justifiable reliance where complaint failed to identify "when or to whom" alleged misrepresentations were made.)[6]

---

[6] If the Liquidators maintain that PPVA's limited partners were misled by purported misstatements by PPVA's officers, then the Liquidators are effectively acknowledging that they lack standing to bring this case. *Wagoner*, 944 F.2d at 118 ("It is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself.")

## IV. THE CIVIL CONSPIRACY CLAIM (COUNT 16) IS DUPLICATIVE OF THE AIDING AND ABETTING CLAIMS

The Liquidators' civil conspiracy claim should be dismissed as duplicative of their aiding and abetting claims. Both causes of action seek to hold the Beechwood Parties secondarily liable for primary torts committed by other defendants, and are therefore duplicative. *In re Allou Distribs., Inc.*, 446 B.R. 32, 60–61 (Bankr. E.D.N.Y. 2011) (collecting cases holding that conspiracy and aiding and abetting claims are duplicative); *Briarpatch Ltd. LP v. Phx. Pictures, Inc.*, 312 F. App'x 433, 434 (2d Cir. 2009) (noting that a claim for conspiracy to breach fiduciary duty is duplicative of an aiding and abetting claim); *Fox Paine & Co. v. Hous. Cas. Co.*, 59 N.Y.S.3d 759, 761 (2d Dep't 2017) (holding that a civil conspiracy claim is duplicative of a claim for aiding and abetting fraud); *Kew Gardens Hills Apartment Owners, Inc. v. Horing Welikson & Rosen, P.C.*, 828 N.Y.S.2d 98, 101 (2d Dep't 2006) (holding that a civil conspiracy claim is duplicative of a claim for aiding and abetting a breach of fiduciary duty).

Even if the Court declines to dismiss the civil conspiracy claims as duplicative, it should find them insufficient under Rule 9(b). Because the Liquidators rely on the same allegations for both civil conspiracy and aiding and abetting, the analysis of the Complaint's failure to meet Rule 9(b)'s heightened pleading standard applies here in equal force. *See* Point III, above.

## V. THE UNJUST ENRICHMENT CLAIM (COUNT 14) SHOULD BE DISMISSED

The Liquidators' unjust enrichment claim fails for two independent reasons. First, it is long settled that an unjust enrichment claim cannot stand where an express agreement governs the rights at issue. *SCM Grp., Inc. v. McKinsey & Co.*, 2011 WL 1197523, at *6 (S.D.N.Y. Mar. 28, 2011) ("Where, as here, it is undisputed that an express and valid contract governs the right at issue, unjust enrichment claims are precluded"); *see also SmartStream Techs., Inc. v. Chambadal*, 2018 WL 1870488, at *7 (S.D.N.Y. Apr. 16, 2018) ("It is well settled that 'the

existence of a valid contract governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter.'") (citation omitted). This is true for both signatories and non-signatories alike. *Vitale v. Steinberg*, 764 N.Y.S.2d 236, 239 (1st Dep't 2003). Here, the Liquidators' unjust enrichment claim is limited to the Second Scheme (SAC ¶¶ 939-40), and each one of the alleged bad acts underlying the claim is connected to a structured agreement, be it the Montsant Assignment Agreement, the Nordlicht Side Letter, the Master Guaranty, or the Agera deal documents. (*See id.* ¶¶ 566, 574, 593, 647.) Accordingly, the Court should dismiss the alternative unjust enrichment claims.

Second, as this Court has noted, merely alleging a general, non-specific benefit is insufficient to plead an unjust enrichment claim. *Senior Health Ins. Co. of Pennsylvania v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 533 (S.D.N.Y. 2018) (allegations that parties were "enriched" were "entirely conclusory" and "not entitled to be assumed true"); *see also Gillespie v. St. Regis Residence Club*, 343 F. Supp. 3d 332, 352–53 (S.D.N.Y. 2018) (dismissing unjust enrichment claim because complaint failed to plead specific facts showing how any single defendant might have profited from the alleged scheme or how the money was diverted to them). In the SHIP Action, this Court explained that "[r]elief for unjust enrichment is 'available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" 345 F. Supp. 3d at 532 (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)). Here, the Liquidators allege that the Beechwood Parties got the "benefit of" these purported schemes. (*See, e.g.*, SAC ¶¶ 943, 945.) But the Complaint contains no well-pled allegations concerning how the Beechwood Individuals were supposedly "enriched" by the First or Second Scheme. Indeed, such allegations are contradicted by the Liquidators

acknowledgment that the Beechwood Parties have largely been left holding the bag for the alleged Platinum fraud. (*See id*. ¶ 304 ("The aggregate amount of proofs of debt filed in the Cayman Liquidation by parties affiliated with Beechwood is $79,146,350.64.").)

## VI. THE LIQUIDATORS' DECLARATORY JUDGMENT CLAIMS (COUNTS 20-21) SHOULD BE DISMISSED

The Liquidators bring declaratory judgment claims concerning two documents, a January 13, 2016 Pledge Agreement signed by Mark Nordlicht (the "January Pledge" or, as PPVA refers to it, the "Nordlicht Side Letter"), and a Master Guaranty Agreement, dated March 21, 2016 (the "Master Guaranty"), claiming that each is void and unenforceable. Mark Nordlicht signed the January Pledge on behalf of PPVA, PPCO, and "each of their affiliates," pledging to use the proceeds from the sale Implant Sciences to BAM as repayment for all indebtedness owed to BAM in connection with a loan to a company called Golden Gate Oil, which BAM had purchased from a PPVA subsidiary. (SAC ¶¶ 568-83, Ex. 74.) The Master Guaranty was an agreement between BAM Admin, PPVA, Golden Gate Oil, and Montsant, which provided BAM Admin with a guaranty from PPVA of amounts owed by Golden Gate Oil and Montsant. (*Id.* ¶¶ 584-606, Ex. 78.)

The Liquidators' declaratory judgment claims fail for two reasons. First, the Liquidators appear to base their claims that the January Pledge and Master Guaranty are void and unenforceable on an inadequately pled theory that PPVA was fraudulently induced to enter into them. The Complaint, however, does not state a claim for fraudulent inducement because it does not plead the elements of the claim with particularity. Under New York law, to state a claim for fraudulent inducement, a plaintiff must plead "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Dexia SA/NV v. Deutsche Bank AG*, 2013 WL 98063, at *3 (S.D.N.Y. Jan. 4, 2013) (Rakoff, J.)

(quoting *Eurycleia Partners*, 910 N.E.2d at 979). Rule 9(b)'s heightened pleading standard applies. *Id.* at *4. The Complaint fails to meet this standard. It does not identify the material misrepresentation, who made it, or to whom it was made; nor can it allege that PPVA's management justifiably relied on any misrepresentation, because it alleges elsewhere that those same agents were the driving force behind the alleged fraud. (*See, e.g.*, SAC ¶¶ 48, 54, 73) (alleging that Nordlicht, Huberfeld, and Levy were "involved in every aspect of the First and Second Schemes"). It is therefore impossible for fraudulent inducement to serve as a basis for voiding the January Pledge and the March 21, 2016 Master Guaranty Agreement (the "Master Guaranty"), and both claims should be dismissed on that basis alone.

Second, it is astonishing that the Liquidators have come to this Court arguing that the January Pledge is void for lack of consideration. That argument is the subject of a declaratory judgment action filed over a year ago by PPVA's wholly-owned subsidiary, DMRJ, in New York State Court. Exactly like here, that complaint sought a judgment declaring the January Pledge void and unenforceable. It set forth three bases to do so: (1) that Mark Nordlicht lacked authority to bind DMRJ to the agreement; (2) that the Master Guaranty superseded the January Pledge; and (3) that the January Pledge was void for lack of consideration. Defendants moved to dismiss on all three grounds, and after briefing and oral argument, Justice Ramos granted Defendants' motion as to two of them (allowing only the lack of consideration basis to proceed). *DMRJ Group LLC v. B Asset Manager & BAM Administrative Services, LLC*, No. 655181/2017, Transcript of Oral Argument and Decision, dated July 17, 2018 (Sup. Ct. N.Y. Cty. decided Dec. 11, 2018) attached hereto as Exhibit 1 to the Declaration of Ira Lipsius. The parties are still actively litigating that case. By raising the same arguments before this Court, it is clear that the Liquidators are seeking a second bite at the apple.

Even more outrageous, the Liquidators are arguing contradictory positions to the ones they took in state court. Plaintiffs' argument to Justice Ramos that the January Pledge was unenforceable because it was superseded by the Master Guaranty necessarily depended on the position that the Master Guaranty was valid and enforceable. The Liquidators are now arguing the opposite to this Court. Plainly, the Liquidators were unhappy with the outcome they got in the state court, so they thought they would try their luck here. That is patently improper.

## VII. THE LIQUIDATORS' ALTER-EGO ALLEGATIONS AGAINST ILLUMIN (COUNT 18) SHOULD BE DISMISSED

Although the Liquidators include Illumin in their alter-ego allegations in Count Eighteen (SAC ¶¶ 986-1000), those allegations are entirely group-pled and do not support the Liquidators' conclusory claim that Illumin was an alter ego of Platinum. *See Waite v. Schoenbach*, 2010 WL 4456955, at *3 (S.D.N.Y. Oct. 29, 2010) (purely conclusory statement that an entity is an alter ego of another entity is insufficient to survive a motion to dismiss).

## VIII. THE LIQUIDATORS' CLAIMS AGAINST BCG AND THE PEDCO ENTITIES SHOULD BE DISMISSED AGAIN

On March 15, 2019, this Court issued a bottom-line order dismissing all claims against BCG and the PEDCO Entities. (ECF No. 276 at 3.) On March 29, 2019, the Liquidators filed a Second Amended Complaint, which "contains causes of actions and parties subject to dismissal in connection in connection with this Court's March 15, 2019." (ECF No. 285 at iii n.1.) According to the Liquidators, "[t]he Second Amended Complaint includes these parties and claims so as to preserve Plaintiffs' rights during the appeal period and prior to this Court's forthcoming opinion." (*Id.*) Because the Liquidators' allegations against BCG and the PEDCO Entities remain largely unchanged, the claims against those entities should be dismissed again.

As to BCG, the Second Amended Complaint includes no new allegations. To the contrary, the Liquidators have subtracted from their complaint, walking back their spurious

allegation concerning a purported transfer from Platinum Management to BCG. This Court has already held that the Liquidators' remaining allegations concerning (1) BCG's corporate form and principal place of business (SAC ¶ 209), (2) advice that was purportedly provided to BCG (*id.* ¶ 358), and (3) and a company called Alpha Re (*id.* ¶ 359) "have no bearing on liability," (ECF No. 290 at 36). Accordingly, all claims against BCG should be dismissed with prejudice.

As to the PEDCO Entities, the Liquidators have added the allegation that they were "tasked with receiving the PEDEVCO investment from PPVA and its subsidiary, and ultimately transferred their interests in PEDEVCO back to PPVA as part of the fraudulent Agera Transactions." (SAC ¶ 218.) This conclusory allegation is essentially what the Liquidators argued in their prior opposition brief, (ECF No. 223 at 14 (stating that the PEDCO Entities were "entities . . . involved directly in the transactions comprising the First and Second Scheme, including for example, the PEDEVCO transactions")), and at oral argument, (Lipsius Aff. Ex. 2 at 37:19-21 ("We know that they are being used for transactions that we have alleged were fraudulent.")). For the same reasons this Court dismissed this claim before, it should do so again, but this time with prejudice.

## **CONCLUSION**

For the foregoing reasons, the Beechwood Parties respectfully request that the Court enter an order dismissing with prejudice all of the claims asserted against each of the Beechwood Individuals, dismissing all but the alter ego claim against each of the Beechwood Entities, and granting the Beechwood Parties such other and further relief as this Court deems just and proper.

Dated: April 22, 2019  
       Kew Gardens, New York

LIPSIUS BENHAIM LAW LLP

By:    */s/ Ira S. Lipsius*_____
      Ira S. Lipsius
      80-02 Kew Gardens Road, Suite 1030
      Kew Gardens, New York 11415
      Telephone: (212) 981-8440
      Facsimile: (888) 442-0284
      Email: iral@lipsiuslaw.com

*Attorney for Defendants Beechwood Capital Group, LLC, B Asset Manager LP, B Asset Manager II LP, Beechwood Re Investments, LLC, Beechwood Re Holdings, Inc., Beechwood Re (in Official Liquidation) s/h/a Beechwood Re Ltd., Beechwood Bermuda International Ltd., BAM Administrative Services, LLC, Illumin Capital Management LP, BBLN-PEDCO Corp., BHLN-PEDCO Corp., Mark Feuer, Scott Taylor, and Dhruv Narain*